UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST SAINT LOUIS DIVISION

| | |
|---|---|
| **BETH KLJAJIC, KATHLEEN CATES, and FRANCISCO VARGAS, Individually and On Behalf of All Others Similarly Situated**<br><br>                              **Plaintiffs,**<br><br>     **vs.**<br><br>**WHIRLPOOL CORPORATION**<br><br>                              **Defendant.** | **JURY TRIAL DEMANDED**<br><br>Case No. 3:15-cv-00217-DRH/DGW |

## PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs, Beth Kljajic ("Plaintiff Kljajic") and Kathleen Cates ("Plaintiff Cates") and Plaintiff Francisco Vargas ("Plaintiff Vargas"), individually and on behalf of all others similarly situated, (collectively referred to as "Plaintiffs"), and brings this action against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool"), by and through undersigned counsel, to obtain damages, restitution, and injunctive relief for the proposed Class as defined herein from Defendant. Plaintiffs make the following allegations upon information and belief, except as to their own respective actions, the investigation of their counsel, and the facts that are a matter of public record.

## INTRODUCTION

1.     This action is brought to remedy violations of applicable law in connection with Defendant's design, manufacture, sale, and servicing of its self-cleaning ovens sold under the brand "Whirlpool" ("Ovens" or "Oven").

2.     Defendant Whirlpool's Ovens have a design Defect and/or Defects in material or

1

workmanship ("Defect") in that the Ovens' self-cleaning feature – when it being used – causes the Ovens to reach extremely hot temperatures that the Ovens' components are unable to withstand.  Specifically, the tremendous heat generated during the self-cleaning cycle causes the Defendant's Ovens' thermostat, fuses, control panel, motherboard, glass, and/or other components to short, burn out, or otherwise break.  Additionally, Defendant's Ovens often cannot command themselves to unlock after completing a cleaning cycle and are rendered unusable

3.      Indeed, the Whirlpool Ovens are Defective, including but not limited to, one or more of the following reasons, (hereinafter referred to as "Defect," "Defects," or "Defect(s)"): (a) the Ovens lack a proper thermostat that regulates the self-cleaning temperature during self-cleaning; (b) the Whirlpool Ovens lack proper insulation to prevent the excessive heat from damaging component parts during the self-cleaning process; (c) the thermoregulator does not regulate the temperature of the Ovens during the self-cleaning cycle; (d) the Ovens and their component parts cannot withstand the heat generated by the self-cleaning cycle; (e) the Ovens contain insufficient fan cooling near electronics; (f) the Ovens are built with a fuse that is insufficiently thermal tolerant; and/or (g) the Oven's self-cleaning cycle creates temperatures that exceed the heat necessary for an Oven to be self-cleaned.

4.      Defendant Whirlpool has actual knowledge of the Defect in its Ovens. KitchenAid, a division of Whirlpool, created a Facebook page where it was bombarded with complaints about the Defect in the self-cleaning feature of its Ovens.  A few examples of the complaints include, but are not limited to:

> **"Mary Beth Weaver Evans** > **KitchenAid**
> Shame on you KitchenAid! I am sure your customer service supervisor knew about this when he was so rude to me on the phone. I am now on day 14 without an oven!!!
> Whirlpool KitchenAid Self-Cleaning Oven Class Action Lawsuit

Class action lawsuit claims Whirlpool KitchenAid self-cleaning ovens are Defective. January 8, 2012."

**Comments**

**Sara Kohn**
"Thanks for sharing - I have not used my cleaning feature since this happened the first time - shame on me for requesting another product - which surprise is not working properly. ☹
January 10, 2012 at 6:23pm · Like"

**Mary Beth Weaver Evans**
"I was told today that I was being sent a new oven, as they do not know when they will have replacement glass available---production is so far behind. Duh! I am less than pleased with the amount of begging (and yelling) I had to do to get satisfaction. In the end, it was the appliance store that did the most arm twisting. Robin, did you get satisfaction? And Sara, is your new product also KitchenAid? January 10, 2012")

**Holly Gushue**
"We just had this happen to our 3 year old kitchenaid wall oven, we used the self cleaning feature for the first time and now the oven doesn't heat anymore. Seems to be a VERY common issue doing a quick search on the internet. November 17, 2013"

**Sarah Biser**
"DO NOT BUY THE KITCHEN AID DUEL FUEL OVEN. THE COMPUTER control panel breaks apparently because the self cleaning feature overheats the control panel. My oven has been kaput for 5 weeks, and Whirlpool wants to charge me to fix it. We will get a new oven before we put a penny into repairing this oven. DO NOT BUY THIS OVEN. January 7, 2014"

**Barry Jacobs**
"LISTEN TO THE OTHERS. DO NOT BUY ANY KITCHENAID OR WHIRLPOOL OVENS. I don't have a duel oven, but when you run the self cleaning feature, it burns out electrical components that prevent the oven from turning on. The product is Defective and Kitchenaid won't stand behind their product. This is the second time the problem occurred to me. March 17, 2014 at 11:05am."

See  https://m.facebook.com/KitchenAid/posts/229690987109028, last visited June 3, 2015.

5.      Plaintiffs Kljajic and Vargas assert claims on behalf of herself and all others

similarly situated.  Plaintiffs Kljajic and Vargas also assert claims on behalf of themselves and an

3

Illinois subclass under the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq.), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.), and breach of the Uniform Commercial Code (810 ILCS 5/1-101 et seq.)

6.     Plaintiff Cates asserts claims on behalf of herself and all other similarly situated. Plaintiff Cates also asserts claims on behalf of herself and a South Carolina subclass under South Carolina Unfair Trade Practices Act. (S.C. Code Ann. § 39-5-10).

## THE PARTIES

7.     Plaintiff Beth Kljajic is a citizen of the state of Illinois, residing in the city of Chicago.

8.     Plaintiff Klijajic purchased a Whirlpool-manufactured, electric wall oven with a self-cleaning mechanism, model number IBS350PXS, serial number D32650470, built in Whirlpool's Cleveland, Tennessee factory during the 26th week of 2013.

9.      Plaintiff Klijajic paid more for a Whirlpool Oven with a self-cleaning feature than an oven without a self-cleaning feature because she does not have the time to clean an oven herself and needs to rely on time-saving devices like the self-cleaning feature of the Whirlpool Oven.

10.     On or about May 14, 2014, Plaintiff Klijajic moved in to her residence, and in doing so, used the Whirlpool Oven for the first time to cook pizzas for the movers, who helped her move in.  Two days later on May 16, 2014, Plaintiff Klijajic used the self-cleaning feature of the Whirlpool Oven for the first time.   While the Whirlpool Oven was self-cleaning, the temperatures in the Whirlpool Oven got so hot that an Overheat Situation occurred, and the motherboard and other component parts of Plaintiff Klijajic's Whirlpool Oven burnt up, leaving it locked up and no longer usable.

11.     Plaintiff Kljajic contacted Whirlpool over two dozen times, trying to get them to fix the locked and unusable Klijajic Oven.  For the most part, Whirlpool ignored her phone calls and did not come to fix the Klijajic Oven.

12.     Whirlpool eventually sent out A&E Factory Service, a third-party repair service, to fix the Klijajic Oven.  A&E Factory Service made several different attempts to fix Plaintiff Kljajic's Whirlpool Oven without success.  Eventually A&E Factory Service workers told her that they were unable to fix her Oven, and it remained unusable.

13.     Plaintiff Kljajic then made a complaint to the Illinois Attorney General about her Defective Oven, naming Whirlpool as the manufacturer of her Defective Oven.

14.     After she made this complaint against Whirlpool, Whirlpool sent a new Oven with self-cleaning feature to Plaintiff Kljajic.  A&E Factory Service workers installed this new Whirlpool Oven with self-cleaning feature.

15.     The A&E Factory Service workers informed her not to use the self-cleaning feature of the Oven because it would just burn up again, leaving her with a locked and broken Oven.  The A&E Factory Service workers further explained to her that when the self-cleaning component of the Whirlpool Oven is used, the Oven achieves temperatures that are so hot because the cheap insulation and other component parts are not sufficient to prevent an Overheat Situation, that the Oven breaks and locks up.  Because of this advice, Plaintiff Kljajic has never used the self-cleaning feature of her new Whirlpool Oven.

16.     At the time of purchase in May of 2014, Defendant Whirlpool materially omitted to tell Plaintiff Kljajic that the self-cleaning feature of the Whirlpool oven would cause the Oven to break down and lock up because of the Defect.

17.   Plaintiff Kljajic spent time and out-of-pocket money to get Defendant Whirlpool to fix Plaintiff Klijajic's Oven, notably filing a complaint with the Illinois Attorney General against Defendant Whirlpool.

18.   Plaintiff Cates is a citizen of the state of South Carolina, residing in the city of Tega Cay 2014,

19.   Plaintiff Cates purchased a Whirlpool-manufactured, KitchenAid-branded electric wall oven with a self-cleaning mechanism, bearing model number KEBC208KSS, serial number XR1900950, that was built in Whirlpool's Oxford, Mississippi factory during the 19th week of 2004.  Unlock, over not working heating element is malfunction;  not maintaining second time,

20.   Plaintiff Cates purchased a Whirlpool Oven with a self-cleaning mechanism ("Cates' Oven").

21.   When Plaintiff Cates used the self-cleaning feature on the Cates' Oven only twice, and on the second time, Cates' Oven reached temperatures that it could not withstand, causing the fuse to blow and the her oven door to lock up, rendering the Cates' Oven unusable.

22.   Plaintiff Cates made numerous attempts to contact Whirlpool about the locked-up and damaged Cates' Oven, and when she finally got through to Whirlpool, Whirlpool denied that there was a problem with the self-cleaning function of Cates' Oven.

23.   Plaintiff Cates then paid out-of-pocket to have repairmen attempt to fix Cates' Oven.  The repairmen unlocked Cates' Oven and attempted to make it usable again.

24.    After the repairmen's best efforts to fix Cates' Oven, it is still damaged.  The self-cleaning feature of the Cates' Oven does not work, and the Cates' Oven takes a long time to heat up, and it has a difficult time maintaining a uniform heat while cooking food.

25.   Plaintiff Vargas is a citizen of the state of Illinois, residing in the city of Cahokia,

Illinois. Plaintiff Vargas purchased a Whirlpool Oven with a self-cleaning feature, and the self-cleaning feature does not work because it overheated during the self-cleaning process, causing damage to component parts of Vargas' Whirlpool Oven.

26.     Whirlpool Corporation is a Delaware corporation with its principal place of business in Michigan at 2000 N. M-63 Benton Harbor, Michigan 49022-2692.

27.     Whirlpool makes, warrants, advertises, and sells the Whirlpool and KitchenAid Ovens subject to this lawsuit (the "Ovens").

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § l332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendant are citizens of different states.

29.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendant does substantial business throughout this district, and Plaintiff Vargas is a resident of this Court. Venue is also proper, because Defendant is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

30.     Defendant Whirlpool holds itself out to the public as a manufacturer of gas and electric ovens that deliver "exceptional results," as advertised prominently on Defendant's Whirlpool and KitchenAid website.

31.     Each of these Ovens has a self-cleaning capability that purportedly allows the consumer, with the touch of a button; to clean heavily soiled spots in the Oven. In conjunction with each sale, Defendant warranted that the Defective Ovens were free from Defects.

7

32.     Defendant has advertised, manufactured, produced, and/or distributed Ovens for several leading retailers in the United States, such as IKEA, Home Depot, Sears, P.C. Richard & Son.

33.     Whirlpool provided Plaintiffs and each owner of the subject Ovens with a one-year factory warranty for parts and labor and a five-year warranty for specified parts if they become Defective because of workmanship.

34.     The Ovens feature a self-cleaning capability that, even upon the first or second use, damages the control panel as a result of excessive heat requiring costly repairs in order to begin reusing the Oven.

35.     The damage resulting from the self-cleaning cycle is not covered by the 5-year warranty.  However, consumers often do not use the self-cleaning feature during the first year, since the Oven has not yet been heavily used and dirtied.

36.     Whirlpool intended for customers to believe its Ovens were and are of first-rate quality (compared with other ovens) and listed its self-cleaning as one of its notable features, despite Whirlpool's knowledge that these statements were misleading due to its omission of material facts about the Defect(s) in its Ovens.

37.     The self-cleaning cycle begins by pressing a button on the control panel, which is directly above the Oven door.  The Oven door then locks automatically and the Oven heats to extremely high temperatures.  The self-cleaning cycle lasts from two to over four hours.  Some Oven models have the additional ability to self-clean at different levels, and thus for longer period of times or at higher temperatures, depending on the level of cleaning desired.

38.     This extreme heat from the self-cleaning cycle ultimately damages the control panel, without which the Oven cannot operate, beyond repair after only one or two uses.

39.     Defendant Whirlpool has concealed the material fact of the Whirlpool Oven's Defect(s) from Plaintiffs, a Defect(s) which can cause the Ovens to become unusable after one or two uses of the self-cleaning cycle.   These Defects deny customers use of the self-cleaning feature of the Ovens.

40.     Whirlpool has been aware of these Defects since well before the class period, as early as 2006[1], but continues to manufacture and sell these Ovens with a self-cleaning feature.

41.     In light of Whirlpool's knowledge of the problems associated with, and the serious nature of the Defect at issue, Whirlpool knew, or should have known, that it was selling the Ovens to consumers with a value that was substantially diminished.

42.     Plaintiffs and Class members reasonably expected that the Ovens would not contain a Defect or Defects that would substantially impair the Ovens' performance and use. Plaintiffs and Class members also reasonably expected that the Ovens would not require extensive and expensive repairs (or the purchase of extended or third party warranties to continuously attempt to fix problems inherent in the Ovens) as a result of the Defect or Defects, which Defects were known to Whirlpool at the time of sale.   If Whirlpool had not misrepresented and concealed material information regarding the Defective nature of the Ovens, Plaintiffs and other members of the Class would not have purchased the Ovens at premium prices and on the terms offered.

43.     As described above, Whirlpool is aware of the Defects in the self-cleaning cycle that require costly repairs and ultimately result in the destruction of the Ovens.   Plaintiffs and many members of the Class have alerted Defendant to the Defects with the self-cleaning cycle. Indeed, many members of the Class have posted their experiences with the Defective Ovens on

---

[1] See, http://ths.gardenweb.com/discussions/2320528/kitchenaid-ovens-problems-when-cleaning
Last viewed June 3, 2015.

the Internet, including, but not limited to, postings appearing in on-line forums: GardenWeb Forums,[2] Facebook[3], and ConsumerAffairs[45].

44.     In fact, Defendant tells consumers that the part is not Defective, but it will offer "15 to 30% off a new product if [] bought [] in the next 30 days."[6]

45.     To this day, Defendant continues to conceal material information from users, consumers, and the public.

46.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and members of the Class could not have reasonably discovered the true, latent Defective nature of the Oven Self-Cleaning feature until shortly before this class action litigation was commenced.

## TOLLING OF STATUTES OF LIMITATIONS

47.     Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Ovens, that the Defect(s) is(are) based on a poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Ovens.

48.     As a result of this active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

---

[2] *See*, http://ths.gardenweb.com/discussions/2320528/kitchenaid-ovens-problems-when-cleaning. Last viewed June 3, 2015.
[3] *See*, https://m.facebook.com/KitchenAid/posts/229690987109028.  Last viewed June 3, 2015
[4] See, http://www.consumeraffairs.com/homeowners/kitchenaid_wall_ovens.html. Last viewed: June 3, 2015
[5] *See*, http://www.consumeraffairs.com/homeowners/whirlpool_ranges.html?page=2.  Last viewed: June 3, 2015
[6] *See*, http://www.consumeraffairs.com/homeowners/whirlpool_ranges.html?page=2.  Last viewed: June 3, 2015

49. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves the following class:

> Any and all individuals who purchased, at retail price and for personal use, a Whirlpool Oven with a self-cleaning mechanism (the "Class").

50. <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>. The Class is comprised of over 100 people and possibly thousands of individuals who were Defendant's customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown. The identity of the Class members is ascertainable and can be determined based on Defendant's records.

51. <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(a) Whether the Ovens have the Defect(s);

(b) Whether the Ovens have the Defect because the thermoregulator does not regulate the temperature of the Ovens during the self-cleaning cycle;

(c) Whether the Ovens are Defectively built with insufficent fan cooling near electronics;

(d) Whether the Ovens are built with a fuse that is insufficiently thermal tolerant;

(e) Whether the Ovens have the Defect because the Ovens and their components are not designed to withstand the temperatures ordinarily reached during the Oven's self-cleaning cycle;

(f) Whether the Ovens have the Defect because the Oven's self-cleaning cycle creates temperatures that exceed the heat necessary for an Oven to be self-cleaned;

(g) Whether the Defendant engages in unfair and/or deceptive trade practices by omitting the material fact that when you use the self-cleaning cycle on the Oven it will create temperatures so hot that the Oven will be locked up with its components damaged;

(h)     Whether the Defendant engages in unfair and/or deceptive trade practices by representing that its Oven has a working self-cleaning cycle;

(i)     Whether Defendant engages in unfair and/or deceptive trade practices by selling an Oven with a Defective Therm-O-Disc;

(j)     Whether the Ovens have the Defect because of the Ovens' cheap insulation that fails to prevent its components from overheating when in self-cleaning mode;

(k)     Whether Whirlpool knew or should have known about the Defect(s) in its Ovens before making it available for purchase and use by Plaintiffs and the Class;

(l)     Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Ovens;

(m)    Whether Defendant breached its duties to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Ovens;

(n)     Whether Defendant breached its duty to Plaintiffs and the Class by failing to promptly withdraw the Defective Ovens from the marketplace or take other appropriate remedial action;

(o)     Whether the Ovens failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class;

(p)     Whether Defendant's Oven fails to perform as advertised or warranted;

(q)     Whether Defendant breached its express warranties to Plaintiffs and the Class by selling Defective Ovens to Plaintiffs and the Class and then refusing to cover the full costs associated with repairing, removing, and/or replacing the Ovens;

(r)     Whether Defendant breached its implied warranties to Plaintiffs and the Class by advertising, marketing, and selling Ovens not of merchantable quality, or unfit for its intended purpose, and then refusing to cover the full costs associated with repairing, removing, and/or replacing the Defective Ovens;

(s)     Whether Plaintiffs and the Class are entitled to compensatory and/or actual damages, including but not limited to the cost to repair the Ovens, remove and replace the Oven, as well as damages from the diminution of value of Class members' Ovens;

(t)     Whether Whirlpool concealed material facts from its communications and disclosures to Plaintiffs and the Class regarding the Defect in the Ovens;

(u)     Whether Whirlpool has engaged in deceptive acts or practices in connection with the sale of the Ovens;

(v)     Whether Whirlpool breached its warranty and/or extended warranties; and

(w)     Whether, as a result of Whirlpool's conduct, Plaintiffs and the Class have suffered damages; and if so the appropriate amount thereof; and

(x)     Whether Plaintiffs are entitled to treble damages and/or punitive damages or other relief.

52.     <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiffs' claims are typical of those of the Class in that Plaintiffs, like all Class members, have the Ovens installed in their respective structures and are subject to losses from the failure of the Ovens.  Plaintiffs have experienced problems with the Ovens consistent with those experienced by Class members.  Plaintiffs have suffered damages in the form of costs to replace and repair the Ovens, as well as the diminution of value of the underlying real property, and such damages are consistent with those suffered by Class members.

53.     <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.     Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs are represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

54.     <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiffs and members of the Class have suffered irreparable harm as a result of

Defendant's bad faith, fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Amended Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendant continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Amended Complaint, and Defendant would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55.     Plaintiffs and the Class do not anticipate any difficulty in the management of this litigation.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/1 ET SEQ.)**
**(ASSERTED ON BEHALF OF PLAINTIFFS KLJAJIC AND VARGAS AND THE**
**ILLINOIS-SUBCLASS)**

56.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

57.     Pursuant to 815 ILCS 510/1, *et seq*., a person likely to be damaged by an unfair trade practice of another may be granted injunctive relief upon terms that the court considers reasonable.

58.     In pertinent part, pursuant to 815 ILCS 510/2(a)(12), a person engages in an unfair trade practice when, in the course of his or her business, vocation, or occupation the

person… engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

59.     In particular, in violation of 815 ILCS 510 *et seq.*, Defendant, through its employees, agents and representatives engaged in conduct which creates a likelihood of confusion or misunderstanding by:

(a) advertising that the Oven has a self-cleaning function, but the self-cleaning function does not work after one or a few uses;

(b) selling an Oven that bears a self-cleaning button, but the self-cleaning mechanism does not work after one or a few uses; and

(c) selling an Oven that Defendant promises is free from defects in material and workmanship and the Oven contains Defects.

60.     In violation of ILCS 510 *et seq.*, Defendant represents that the Ovens have "characteristics" (the ability to self-clean), "uses" (self-cleaning), or "benefits" (the ability to self clean) that the Oven does not have.

61.     In violation of ILCS 510 *et seq.*, Defendant represents that the Ovens are of a particular standard, quality, or grade or that the Ovens are a particular style or model – namely, that the Oven model contains a functioning self-cleaning mechanism – and the Ovens do not have a functioning self-cleaning mechanism.

62.     In violation of ILCS 510 *et seq.*, Defendant represents that the Oven that is free from defects in material and workmanship and the Oven contains Defects.

63.     In violation of ILCS 510 *et seq.*, Defendant advertises the Ovens with a self-cleaning mechanism with intent not to sell them as advertised;

64. Each of the aforementioned actions and failures to act of Defendant constitute an unfair trade practice within the meaning of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

65. As a result of each of the aforementioned unfair trade practice, Defendant has directly, foreseeably, and proximately caused damages to Plaintiffs Kljajic and Vargas and the Class.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, ET SEQ.)
## (ASSERTED ON BEHALF OF PLAINTIFF KLJAJIC, VARGAS, AND THE ILLINOIS-SUBCLASS)

66. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

67. At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA"). Section 2 of the ICFA provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 CS 505/2 (footnotes omitted).

68. Plaintiffs Kljajic, Vargas, and other members of the Illinois Class, as purchasers of the Ovens, are consumers within the meaning of the ICFA given that Defendant's business

activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

69. Section 2 of the ICFA, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce…"

70. Defendant's misrepresentations about the Ovens having a functioning self-cleaning mechanism, as well as its failure to disclose the fact that the self-cleaning Ovens contain Defects, rendering the Ovens, including the self-cleaning function, unusable, are deceptive and/or unfair acts or practices prohibited by the ICFA.

71. Defendant intended to be deceptive and/or unfair to Plaintiff Kljajic and the Illinois Sub-Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiffs Kljajic, Vargas, and other members of the Illinois Class would not have purchased the Oven.

72. Defendant's practice of creating and approving Oven-related marketing and advertising statements that contained false and misleading representations is both an unfair act and deceptive practice prohibited by the ICFA.

73. Defendant further made false and misleading representations by placing a self-cleaning button on the Oven and any floor models and advertisements when the Oven does not contain a self-cleaning mechanism that lacks Defects.

74. Defendant intended to be deceptive and unfair to Plaintiffs Kljajic and the Class members by unlawfully representing that the Ovens had a working self-cleaning mechanism and

therefore Plaintiffs Kljajic, Vargas, and the Illinois Class could use the self-cleaning mechanism to clean its Oven. Defendant's intent is evidenced by; *inter alia*, its prominent marketing and advertising of the Products as having a self-cleaning mechanism and by having a self-cleaning button on the Ovens themselves. Defendant continued to make this misrepresentation after they knew the self-cleaning mechanism would break after one or a few uses and render the Oven unusable.

75.    Defendant intended that Plaintiffs Kljajic, Vargas and the Illinois Sub-Class rely on its misrepresentations as to the ability of the Oven to self-clean and cook foods when purchasing them, and Defendant omitted to disclose to or notify Plaintiffs Kljajic, Vargas, and the Illinois Sub-Class of the fact that the self-cleaning mechanism would break after one or a few uses, rendering the Oven unusable - even after they knew of the Oven contained Defects.

76.    Plaintiffs Kljajic, Vargas, the Illinois Sub-Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Ovens after seeing the advertisements, the marketing, and/or seeing the self-cleaning button on the Oven floor models. Indeed, Defendant made no attempt to inform consumers that the Oven did not contain a functioning self-cleaning mechanism or that the self-cleaning mechanism would break after one or a few uses, rendering the Oven unusable, until long after Plaintiffs Kljajic, Vargas, and the Illinois Sub-Class members made their purchases of the Ovens and long after Defendant knew of the problems associated with the Oven's self-cleaning mechanism.

77.    The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

78.    As a direct and proximate result of the foregoing, Plaintiffs Kljajic, Vargas, and the Illinois Sub-Class members have been damaged in an amount to be determined at trial,

including compensatory damages, including: (a) the cost to repair the Oven, (b) the cost to remove the oven; (c) the cost to replace the Oven, and (d) diminution of value of Class members' Ovens, and (e) other miscellaneous incidental and consequential damages.

79.     Plaintiffs Kljajic, Vargas, and the Illinois Sub-Class members seek damages, together with appropriate punitive damages, attorneys' fees, and costs of suit pursuant to the ICFA.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (810 ILCS 5/1-101 ET SEQ.)
### (ASSERTED ON BEHALF OF 62. PLAINTIFF KLJAJIC, VARGAS, AND THE
### ILLINOIS-SUBCLASS)

80.     Plaintiffs Kljajic, Vargas, and the Illinois Sublcass repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

81.     Plaintiffs Kljajic, Vargas, and the Illinois Sublcass purchased Defendant self-cleaning Ovens at venues that posted Defendant's advertisements and/or signage stating that the Ovens had a self-cleaning function.

82.     Defendant's advertisements and signage state that the Ovens have a self-cleaning function.

83.     Defendant's advertisements, signage, and self-cleaning buttons on the product, including, but not limited to any floor models, gave rise to an express warranty.

84.     By virtue of its advertisements, website, the buttons on the Ovens themselves, and overall media reach, Defendant and other sellers of Defendant's Ovens expressly warranted the self-cleaning Oven as containing a self-cleaning mechanism when the Ovens contain a self-cleaning mechanism that works, if at all, a few times.

85.     At all relevant times there was in full force and effect the Illinois Uniform Commercial Code, 810 Ill. Comp. Stat. 5/1-101, *et seq.* (the "UCC").

86.     Section 2-313 of the UCC (810 Ill. Comp. Stat. 5/2-313) provides, in pertinent part:

Express Warranties by Affirmation, Promise, Description, and Sample.

(1) Express warranties are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he has a specific intention to make a warranty.

87.     The descriptions and representations that the self-cleaning Oven had a self-cleaning mechanism were the bases of the bargains between Plaintiff Kljajic, Plaintiff's Class, and Defendant and its authorized retailers when Plaintiff Kljajic and the class members purchased the products.

88.     Defendant failed to deliver on the basis of the bargain between it, the Plaintiff Kljajic, and the class members as the Ovens sold by Defendant do not have a functioning self-cleaning mechanism, or at best, works only a few times and renders the oven unusable.

89.     There was a Defect or Defects in the Ovens warranted because the self-cleaning mechanism, when used, renders the Oven unusable.

90.     Defendant was notified of its breach via notice as indicated herein.

91.     Defendant did not effectively repair or replace the Ovens.

20

92.     Plaintiffs Kljajic, Vargas, and the Illinois Sublcass would not have purchased the Ovens had they been advised that the self-cleaning mechanism did not work at all, or at best, for a few times.

93.     Plaintiffs Kljajic and the Illinois Sublcass made a demand on Defendant revoking acceptance, individually and on behalf of all others similarly situated, and demanded Defendant to refund the entire purchase price to the class.

94.     Defendant's failure to refund the entire purchase price to Plaintiff and the members of the class has caused Plaintiff and the class members damage in the full amount of the purchase prices.

**FOURTH CAUSE OF ACTION**
**UNIFORM COMMERCIAL CODE**
**NONCONFORMITY OF GOODS**
**(ASSERTED ON BEHALF OF PLAINTIFF KLJAJIC, VARGAS, AND THE ILLINOIS-SUBCLASS)**

95.     Plaintiffs Kljajic, Vargas, and the Illinois Sublcass repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

96.     Section 2-301 of the UCC provides that the seller is obligated to transfer and deliver the contracted goods in accordance with the contract.  According to the UCC's Official Comments under 2-301, in order "to determine what is in 'accordance with the contract' under this Article usage of trade, course of dealing and performance, and the general background of circumstances must be give due consideration in conjunction with the law meaning of the words used to define the scope of the conditions and duties."  810 ILL. COMP. STAT. 5/2-301, Official Comments.

97.     "Contract" is defined under UCC 1-201(11) as the total legal obligation which results from the parties' agreement as affected by the UCC and other applicable rules of law. 810 Ill. Comp. State 5/1-301.

98.     "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing and usage of trade or course of performance as provided in the UCC. 810 Ill. Comp. Stat. 5/1-201(3).

99.     Under the conditions that Plaintiffs Kljajic, Vargas, and the Illinois Sublcass purchased Defendant's Ovens as set forth herein, the general background and implication for the circumstances was (and continues to be) that such Oven contained a functioning self-cleaning mechanism.

100.     Defendant failed to sell Plaintiffs Kljajic, Vargas, and the Illinois Sublcass non-Defective self-cleaning Ovens, and thus, Defendant failed to transfer or deliver conforming goods as required by the UCC.

101.     Defendant's breach proximately caused damage to Plaintiff Kljajic and the members of the class.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SOUTH CAROLINA**
**UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE ANN. § 39-5-10, ET SEQ.)**
**(ASSERTED ON BEHALF OF PLAINTIFF CATES**
**AND THE SOUTH CAROLINA CLASS MEMBERS)**

102.     Plaintiff Cates repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

103.     Defendant has repeatedly and willfully engaged in unfair and deceptive acts and practices in the conduct of trade or commerce within the meaning of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq.

22

104.    In particular, Defendant's misrepresentations about the self-cleaning mechanism, Defendant placing a self-cleaning button on the models, as well as its failure to disclose that the self-cleaning mechanism causes the Oven and the self-cleaning mechanism unusable, are deceptive and/or unfair acts or practices prohibited by the SCUTPA.

105.    Defendant intended to be deceptive and unfair to Plaintiff Cates and the Class members by unlawfully representing that the self-cleaning Oven could be used to cook and that the oven contained a self-cleaning mechanism that could be used.

106.    Defendant's intent is evidenced by, *inter alia*, its prominent advertising of the Products as having a self-clean cycle and by putting a self-clean button on the Oven and floor models of the Oven.

107.    Defendant continued to make this misrepresentations, and continues to make these misrepresentations, after Defendant knew of the Defects in the self-cleaning Oven and problems associated with use of the Oven's self-clean cycle.

108.    Plaintiff Cates and the South Carolina Sub-Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Ovens after seeing the product, which bore a self-cleaning button, or after seeing advertisements describing the Oven as having a self-cleaning option.

109.    Indeed, Defendant made no attempt to inform consumers that the Oven's self-cleaning mechanism would break after one or a few uses and, in some instances, render the Oven unusable.

110.    Defendant's violations of SCUTPA occurred in the ordinary course of business, affect the public concern, and are capable of repetition.

111. Defendant's actions are a willful and knowing violation of § 39-5-10 *et seq*., with disregard for the rights of Plaintiff Cates and the public interest.

112. As a direct and proximate result of the foregoing, Plaintiff Cates and the South Carolina Class have been damaged in an amount to be determined at trial, including (a) the cost to repair the Oven, (b) the cost to remove the oven; (c) the cost to replace the Oven, and (d) diminution of value of Class members' Ovens, and (e) other miscellaneous incidental and consequential damages.

113. Because Defendant knowingly and willfully engaged in unfair and deceptive acts and practices, which proximately caused Plaintiff Cates injuries, Plaintiff Cates is entitled to recover treble damages, attorney fees, and costs pursuant to SCUTPA, S.C. Code Ann. § 39-5-140 (2006).

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
## (ASSERTED ON BEHALF OF ALL PLAINTIFFS AND THE CLASS)

114. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

115. Whirlpool warranted that all of the Ovens were free from Defects in material or workmanship at a time when it knew that these Ovens suffered from a serious Defect or Defects and, nevertheless, continued to market and sell these Ovens with this express warranty.

116. Whirlpool also sold extended warranties to Plaintiffs and some members of the Class even though it had no intention of remedying the serious Defect(s) in material and workmanship inherent in the Ovens and has continued to market and sell extended warranties with respect to the Ovens despite the serious Defects in the Ovens.

117. Whirlpool has breached its express warranties, as set forth above, including its

extended warranties, by supplying the Ovens in a condition which does not meet the warranty obligations undertaken by Whirlpool and by failing to remedy the Defect and/or repair or replace Defective parts inherent in the Ovens.

118.     Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its warranty, even though it knows of the inherent Defect(s) in the Ovens.

119.     In addition, Whirlpool has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the Defect(s) in the Ovens.

120.     Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

121.     Whirlpool has failed to provide to Plaintiffs or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Ovens to Plaintiffs and members of the Class.

122.     As a result of Whirlpool's breach of warranty, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(ALTERNATIVE COUNT TO BREACH OF CONTRACT)**
**(ASSERTED ON BEHALF OF ALL PLAINTIFFS AND THE CLASS)**

123.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs of this Amended Complaint as if fully set forth herein.

124.     A party is unjustly enriched when it retains a benefit to the detriment of anther party against fundamental principles of justice, equity, and good conscience.

25

125.     Defendant represented to a class of consumers that its Ovens had a functional self-cleaning mechanism.     Defendant Ovens contain a self-cleaning button on the Ovens themselves.

126.     Defendant made such representations in order to increase the sales of its products.

127.     Defendant's representation was false in that that the subject Ovens do not contain a self-cleaning mechanism that functions more than one or a few times.

128.     Defendant's advertising materials do not inform consumers, including Plaintiffs and the class, that the Ovens do not have a functioning self-cleaning mechanism.

129.     Defendant has reaped millions of dollars in profits as a result of its collection of money from consumers based on its false advertising campaign.  That Defendant amassed such earnings, and retains such benefit to the detriment of Plaintiffs and the class members, and violates the fundamental principles of justice, equity, and good conscience.

130.     Defendant has been and continues to be unjustly enriched through its above-described conduct.

131.     Defendant should be required to disgorge the monies it has unjustly obtained to the detriment of Plaintiffs and the class members.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT**
**15 U.S.C. 2301, ET SEQ.**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

132.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

133.     The Ovens constitute "consumer products," as defined in 15 U.S.C. §2301.

134.     Plaintiffs and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

135.    Defendant is a "supplier" of the Ovens as defined in 15 U.S.C. §2301.

136.    Defendant is a "warrantor" as defined in 15 U.S.C. §2301.

137.    Defendant supplied a "written warranty" regarding the Class Vehicles, as defined in 15 U.S.C. §2301(6).

138.    As suppliers and in connection with the sale of the Ovens, Defendant made "implied warranties" arising under State law regarding the Ovens, as defined in 15 U.S.C. §2301(7).

139.    The warranties made by Defendant pertained to consumer products costing the consumer more than five dollars, *see* 15 U.S.C. §2302(e).

140.    Plaintiffs invoke federal jurisdiction for their claims stated under this Count pursuant to the Class Action Fairness Act.

141.    Defendant violated the Magnuson-Moss Federal Warranty Act by its failure to comply with the express and implied warranties it made to Plaintiffs and other Class members. *See*, 15 U.S.C. §2301, *et seq*.

142.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

143.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.  Plaintiffs, and the other Class members, sustained injuries and damages as a proximate result of Defendant's violation of its written and/or implied warranties, and are entitled to legal and equitable relief against Defendant, including economic damages, rescission or other relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves, pray for judgment against Defendant granting the following relief:

a.      An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Class;

b.      All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

c.      Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

d.      An order (1) requiring Whirlpool to immediately cease its wrongful conduct as set forth above; (2) enjoining Whirlpool from continuing to conceal material information about the Defect; and (3) requiring Whirlpool to refund to Plaintiffs and all members of the Class the funds paid to Whirlpool for the Defective Ovens, and/or repairs resulting from the Defect;

e.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

f.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

Date: June 5, 2015                By:    s/Corey D. Sullivan
                                         Corey D. Sullivan
                                         SULLIVAN LAW LLC
                                         1814 E Eagle Bay Drive
                                         Evansville, Indiana 47725
                                         Tele: 855-571-3789
                                         Email: corey@druginjurylegal.com

                                         Jasper D. Ward IV
                                         JONES WARD PLC

312 S. Fourth Street 6th Floor
Louisville, KY 40202
Phone: 502-882-6000
Email: jasper@jonesward.com

James G. Onder
Onder, Shelton, O'Leary & Peterson, LLC
110 E. Lockwood Avenue
St. Louis, Missouri 63119
Tele: 314-963-9000
> onder@onderlaw.com

**ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASSES**