IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BETH KLJAJICH, KATHLEEN CATES, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 5980 |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Beth Kljajic ("Kljajic"),[1] Kathleen Cates ("Cates"), and Francisco Vargas ("Vargas"), on behalf of themselves and a class of similarly situated consumers, filed their Amended Class Action Complaint on June 5, 2015, against Defendant Whirlpool Corporation ("Whirlpool"). (R. 13.) Plaintiffs Kljajic and Cates (collectively, "Plaintiffs")[2] allege Whirlpool violated various consumer fraud statutes. Illinois Plaintiff Kljajic alleges violations of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.* ("IDTPA")

---

[1] The parties briefing consistently refers to Plaintiff as "Kljajic" (*see generally*, R.13, R.29, R.38), although there are various other versions of Plaintiff Kljajic's name that Plaintiffs have used throughout this case, e.g., the case heading and original complaint refer to "Kljajich" (*see generally*, R.1), and the Amended Complaint also refers to "Klijajic" (R.13, ¶ 8). The Court's opinion refers to "Kljajic" as used in the Amended Complaint and briefing related to Whirlpool's motion to dismiss, absent any clarification from Plaintiffs.

[2] After Defendant filed its partial motion to dismiss (R.28), Plaintiffs filed a notice of voluntary dismissal regarding Vargas seeking dismissal of each of the claims against Whirlpool as alleged by Vargas, without prejudice, with each party to bear its own costs (*see* R.37). The Court granted Plaintiff's motion and dismissed Vargas. (R.41.) Accordingly, Whirlpool's arguments as to Plaintiff Vargas are denied as moot. (*See* R.38, at 1.)

(Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("FDBPA") (Count II). (*Id.*, ¶¶ 56-79.) Illinois Plaintiff Kljajic further alleges violations under the Uniform Commercial Code—breach of warranty (Count III) and unjust enrichment (Count IV). (*Id.*, ¶¶ 80-101.) South Carolina Plaintiff Cates alleges violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("SCUTPA") (Count V). (*Id.*, ¶¶ 102-113.) Plaintiffs further allege breach of express warranty or in the alternative, unjust enrichment (Counts VI and VII). (*Id.*, ¶¶ 114-131.) Lastly, Plaintiffs allege violations of the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count VIII). (*Id.*, ¶¶ 132-143.) Before the Court is Whirlpool's partial motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Whirlpool is seeking dismissal of the consumer fraud statute violations alleged by Illinois Plaintiff Kljajic under the IDTPA and by South Carolina Plaintiff Cates under the SCUTPA. For the following reasons, the Court grants in part and denies in part Whirlpool's motion.

## BACKGROUND

**I. The Parties**

Plaintiff Kljajic is a citizen of Illinois, residing in the city of Chicago. (R.13, ¶ 7.) Plaintiff Cates is a citizen of South Carolina, residing in the city of Tega Cay. (*Id.*, ¶ 18.) Defendant Whirlpool is a Delaware corporation with its principle place of business in Michigan at 2000 N. M-63 Benton Harbor, Michigan 49022-2692. (*Id.*, ¶ 26.) The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).[3]

---

[3] Plaintiff alleges the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). (R.13, ¶ 28.) A federal court's jurisdiction premised on diversity of citizenship pursuant to 28 U.S.C. § 1332 ordinarily requires complete diversity, however, in the class action context under the Class Action Fairness Act, federal courts may exercise jurisdiction over actions in which any member of the plaintiff class is a citizen of a State different from any defendant, as long as the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A). Here, although the named parties are

2

## II. The Allegations

Viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs allege the following: Whirlpool makes, warrants, advertises, and sells the Whirlpool and KitchenAid ovens subject to this lawsuit ("Ovens"). (R.13, ¶ 27.) Whirlpool has advertised, manufactured, produced, and/or distributed Ovens for several leading retailers in the United States, such as IKEA, Home Depot, Sears, and P.C. Richard & Son. (*Id.*, ¶ 32.) The Ovens all feature a self-cleaning cycle that, at the touch of a button, cleans heavily soiled spots in the oven. (*Id.*, ¶ 31.) Upon activating the self-cleaning feature, the Ovens' doors lock automatically and the Ovens heat to extremely high temperatures. (*Id.*, ¶ 37). These extreme temperatures are sustained for two to four hours, although some Ovens have differing levels of self-cleaning which may involve longer periods of time or higher temperatures during the cycle. (*Id.*)

Plaintiffs allege that a design defect(s) and/or defect(s) in material or workmanship ("Defect(s)") exist in the self-cleaning feature of the Ovens. The Defect(s) cause the Ovens to reach extremely high temperatures during the self-cleaning cycle--damaging the Ovens' components and rendering them inoperable due to e.g., a subsequent failure of the door to unlock after completion of the cleaning cycle. (*Id.,* ¶ 2.) The extreme heat generated in the self-cleaning cycle damages the Ovens' thermostat, fuses, control panel, motherboard, glass, and/or other oven components. (*Id.*) Specifically, Plaintiffs allege a non-exhaustive lists of reasons for the Defect(s) in the Ovens including that: (a) the Ovens lack a proper thermostat that regulates the self-cleaning temperature during self-cleaning; (b) the Ovens lack proper insulation to

---

completely diverse, Plaintiffs filed their Amended Class Action Complaint on behalf of named Plaintiffs in addition to those "similarly situated" and further allege upon information and belief that the matter in controversy exceeds $5,000,000, exclusive of costs and interests. (*See* R.13, ¶¶ 5, 6, 28.) Whirlpool does not dispute the allegations regarding jurisdiction.

prevent the excessive heat from damaging component parts during the self-cleaning process; (c) the thermoregulator does not regulate the temperature of the Ovens during the self-cleaning cycle; (d) the Ovens and their component parts cannot withstand the heat generated by the self-cleaning cycle; (e) the Ovens contain insufficient fan cooling near electronics; (f) the Ovens are built with a fuse that is insufficiently thermal tolerant; and/or (g) the Ovens' self-cleaning cycle creates temperatures that exceed the necessary temperatures for self-cleaning. (*Id.*, ¶ 3.)

According to Plaintiffs, Whirlpool had actual knowledge of the defects as a result of a Facebook page created by Whirlpool's KitchenAid division. (*Id.*, ¶ 4.) On the KitchenAid Facebook page, Plaintiffs allege that Whirlpool was "bombarded" with complaints about the Defect(s) in the self-cleaning ovens. (*Id.*) The Facebook comments date back to January 8, 2012, and include complaints about the Ovens and replacement products that do not function properly. (*Id.*) Plaintiff also alleges that Whirlpool was aware of the Defect(s) as early as 2006 as evidenced by discussion boards on numerous home and garden websites. (*Id.*, ¶¶ 40, 43.) Indeed, Defendant tells consumers that the part is not defective, but it will offer "15 to 30% off a new product if [] bought [] in the next 30 days." (*Id.*, ¶ 44.)

Plaintiffs further allege that Whirlpool provides each purchaser of the Ovens a one-year factory warranty for parts and labor. (*Id.*, ¶ 33.) Additionally, Whirlpool provides a five-year warranty for certain specified parts if they become defective due to faulty workmanship. (*Id.*) Plaintiffs allege that the five-year warranty does not effectively cover the damage resulting from the self-cleaning cycle because consumers often do not use the self-cleaning feature during the first year, since the users have not yet heavily soiled the Ovens. (*Id.*, ¶ 35.)

### III. Plaintiff Kljajic

Plaintiff Kljajic purchased a Whirlpool-manufactured, electric wall oven with a self-cleaning mechanism, model number IBS350PXS, serial number D32650470, built in Whirlpool's Cleveland, Tennessee factory during the 26th week of 2013. (*Id.*, ¶ 8.) Plaintiff Kljajic paid more for a Whirlpool Oven with a self-cleaning feature than one without because she relies on time-saving devices. (*Id.*, ¶ 9.) Almost a year later, on May 16, 2014, Plaintiff Kljajic used the self-cleaning feature of her Whirlpool Oven for the first time. (*Id.*, ¶ 10.) During the self-cleaning cycle, the temperatures in the Whirlpool Oven got so hot that an overheat situation occurred, and the motherboard and other component parts burnt up, leaving the Oven locked up and no longer usable. (*Id.*) Plaintiff Kljajic made over two dozen service requests, which were for the most part ignored. (*Id.*, ¶ 11.) Whirlpool sent a third-party repair service, A&E Factory Service, which made several unsuccessful attempts to fix Kljajic's Oven. (*Id.*, ¶ 12) After Plaintiff Kljajic made a complaint about her Oven to the Illinois Attorney General—naming Whirlpool as the manufacturer of her defective Oven—Whirlpool sent her a new oven, with a self-cleaning feature. (*Id.*, ¶¶ 13, 14). Plaintiff Kljajic alleges that the technician from A&E Factory Service who installed her new Oven advised her not to run the self-cleaning cycle because the Oven would just burn up and lock, again leaving her with an unusable oven. (*Id.*, ¶ 15.) The A&E technician specifically explained that the self-cleaning component of the Whirpool Oven's cheap insulation and other component parts is not sufficient to prevent the Oven's high temperatures from causing an overheat situation where the Oven breaks and locks up. (*Id.*) Kljajic has never used the self-cleaning feature of her new Oven. (*Id.*) Plaintiff Kljajic alleges that Whirlpool materially omitted to tell her that the self-cleaning feature would cause the Oven to break down and lock up because of the Defect(s). (*Id.*, ¶ 16).

## IV. Plaintiff Cates

Plaintiff Cates purchased a Whirlpool-manufactured, KitchenAid-branded electric wall oven with a self-cleaning mechanism, built in Whirlpool's Oxford, Mississippi factory during the 19th week of 2004. (*Id.*, ¶ 19.) Plaintiff Cates alleges that the second time she used the Oven's self-cleaning feature, it reached temperatures that it could not withstand, causing a fuse to blow and the Oven door to lock up—rendering it unusable. (*Id.*, ¶ 21.) Plaintiff Cates alleges that after several attempts to reach Whirlpool, the company denied that a problem existed with the self-cleaning function of her oven. (*Id.*, ¶ 22.) She then paid an independent repairman to attempt to fix the Oven. (*Id.*, ¶ 23.) Despite the repairman's efforts, Plaintiff Cates' Oven is still damaged. (*Id.*, ¶ 24.) Namely, the Oven's self-cleaning feature does not work, the Oven takes a long time to heat up, and it does not maintain uniform heat. (*Id.*)

## V. Alleged Misrepresentations

Plaintiffs allege that Whirlpool intended for customers to believe its Ovens were and are of first-rate quality compared to other ovens on the market. (*Id.*, ¶ 36.) Whirlpool listed its self-cleaning cycle as one of its notable features, despite its knowledge of the misleading nature of these statements due to an omission of material facts about the Defect(s). (*Id.*) Whirlpool has concealed the material facts of the Defect(s) from Plaintiffs—Defect(s) which deny customers of the self-cleaning feature and can render the Ovens unusable after one or two uses. (*Id.*, ¶ 39.) Plaintiffs and class members reasonably expected that the Ovens would not contain a Defect(s) that would substantially impair the Ovens' performance and use, and that the Ovens would not require extensive and expensive repairs (or the purchase of extended warranties). (*Id.*, ¶ 42.) Absent the misrepresented and concealed material information regarding the Defect(s), Plaintiffs would not have purchased the Ovens at premium prices and on the terms offered. (*Id.*) To date,

6

Defendant continues to conceal material information from users, consumers, and the public regarding the Ovens. (*Id.*, ¶ 45.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A district court's analysis under Rule 12(b)(6) "rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather

than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).[4]

## ANALYSIS

Whirlpool's motion seeks dismissal of the following claims: (1) claims on behalf of all Plaintiffs arising under the IDTPA; (2) claims on behalf of Plaintiff Vargas arising under the FDBPA; (3) claims on behalf of Plaintiff Vargas alleging various breaches of express and implied warranty; and (4) claims on behalf of Plaintiff Cates arising under the SCUTPA. For the reasons discussed below the Court grants in part and denies in part as moot Whirlpool's motion.

At the outset, the Court denies as moot Whirlpool's motion seeking dismissal of Counts I-III, IV, and VI-VIII as alleged by Plaintiff Vargas because pursuant to Plaintiffs' voluntarily dismissal of Vargas from this action, the Court dismissed his claims with prejudice. (*See supra*, n. 1; *see also generally* R. 13; R.29, at 4, 6-9.)

**I.      Plaintiff Kljajic's Illinois Uniform Deceptive Trade Practices Act Claim (Count I)**

The Court first turns to Plaintiff Kljajic's allegations that Whirlpool violated the IDTPA. Plaintiff Kljajic seeks actual and punitive damages in addition to injunctive relief. Whirlpool has challenged Plaintiff's claim on two bases. First, Whirlpool contends Plaintiff Kljajic is improperly pursuing damages under the IDTPA because the Act only provides for injunctive

---

[4] Defendants also reference Rule 9(b) governing the pleading standards for alleging fraud or mistake. (*See* R.29, at 5.) Defendants' argument regarding Plaintiffs' failure to plead with the particularity required for a fraud claim, however, is limited to the claims brought by Plaintiff Vargas. (*See* R.29, at 7-8.) Because all claims by Plaintiff Vargas were dismissed with prejudice pursuant to Plaintiffs' notice of dismissal, the Court does not address the applicability, if any, of Rule 9(b) to Plaintiffs' remaining claims. (*See supra*, n. 3; R.41.)

relief. Second, Whirlpool contends that even an injunction under the IDTPA is improper because Plaintiff Kljajic has failed to allege sufficient future harm. The Court agrees with Whirlpool on both points.

The IDTPA prohibits deceptive trade practices and unfair competition. *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013) (citing *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.,* 392 Ill. App. 3d 1, 330 Ill. Dec. 826, 909 N.E.2d 848, 857 (1st Dist. 2009)); *see also Aliano v. Louisville Distilling Co., LLC*, __ F.Supp.3d __, No. 15 C 00794, 2015 WL 4429202, at *4 (N.D. Ill. July 20, 2015) ("*Louisville Distilling*") (*citing Popp v. Cash Station, Inc.*, 224 Ill. App. 3d 87, 98, 184 Ill. Dec. 558, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992)) (explaining that the purpose of the IDTPA is "the enjoining of trade practices which confuse or deceive the consumer"); *accord Robinson v. Taylor Motor Credit Corp.*, 315 Ill. App. 3d 1086, 1098 (2000), *aff'd in part, rev'd in part on other grounds,* 201 Ill.2d 403 (2002) (citations omitted). In order to obtain relief under the IDTPA, a plaintiff must demonstrate that a defendant engaged in any of twelve enumerated types of deceptive conduct listed in Section 510/2. *See* 810 ILSC 510/2; *see also Popp*, 244 Ill. App. 3d at 98. In this case, Plaintiff Kljajic generally alleges violations of 815 ILCS 510 *et seq.*, but makes particular reference to 815 ILCS 510/2(a)(12) which states:

> § Deceptive trade practices.
>
> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
> …
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(12). This District, as well as numerous Illinois State courts, have noted, that although the IDTPA allows an individual consumer to obtain injunctive relieve, the primary

9

focus of the IDTPA is to prevent unfair competition among competitors. *See Robinson*, 315 Ill. App. 3d at 1098 ("The [IDTPA] was not intended to be a consumer protection statute but, rather, was intended to prohibit unfair competition"). The IDTPA "provides both consumers and business competitors with a means to address and remedy a company's deceptive trade practices." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 9, 909 N.E.2d 848, 857 (2009) (citations omitted). Although the IDTPA does not permit a party to recover monetary damages, it does allow an injured party to obtain "injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/3; *see also LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F.Supp.2d 708, 715 (N.D. Ill. 2011). To be eligible for injunctive relief under the IDTPA, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future. *Kensington's Wine Auctioneers*, 392 Ill. App. 3d at 9 (citations omitted); *see also Robinson*, 315 Ill. App. 3d at 1098 (citing *Popp*, 244 Ill. App. 3d at 98-99).

      **A.**      **The IDTPA Does Not Support A Claim Of Actual Or Punitive Damages**

First, Whirlpool argues that Plaintiff Kljajic is precluded from damages under the IDTPA. The IDTPA does not support a claim of actual or punitive damages, however, as the "only remedy under the [IDTPA] is injunctive relief." *See Nara v. Polatsek*, No. 1–11–2504, 2012 WL 6962887, at*13 (Ill. App. Ct. Oct. 5, 2012) (*citing* 815 ILCS 510/3); *Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 251–52, 91 Ill. Dec. 628, 483 N.E.2d 1263 (Ill. 1985) (finding that a plaintiff could not recover damages under the IDTPA); *see also Aliano v. WhistlePig, LLC*, No. 14 C 10148, 2015 WL 2399354, at * 4-5 (N.D. Ill. May 18, 2015) ("*WhistlePig*") (citations omitted) ("[T]he only remedy under the [IDTPA] is injunctive relief'"); *LG Elecs.*, 790 F.Supp.2d at 710 (explaining that the IDTPA "provides only for injunctive relief").

Consequently, Plaintiff Kljajic may not pursue actual or punitive damages under the IDTPA and the Court, therefore, dismisses her claim for damages in Count I with prejudice.

### B. Plaintiff Kljajic Has Not Sufficiently Alleged Future Harm

Second, Whirlpool argues that Plaintiff Kljajic has failed to sufficiently plead a likelihood of future harm as required by IDTPA. Plaintiff Kljajic alleges that she will likely be damaged by Whirlpool's conduct in concealing the material fact that the Ovens' Defect(s) may render them unusable after one or two uses of the self-cleaning cycle. (R. 38, at 6.) Plaintiff Kljajic's argument seems to rest on the basis that she now has a new Oven that she has not and cannot use the self-cleaning cycle at the risk of damaging her Oven, and that Whirlpool continues to conceal the Defects and manufactures the Ovens with a self-cleaning feature. Thus, according to Plaintiff, because Whirlpool has taken the position that its Ovens do not have the alleged Defect, both Kljajic and the Illinois subclass are likely to suffer damage in the future if they purchase another self-cleaning Whirlpool oven or accept another self-cleaning Whirlpool oven as part of a warranty claim. To support her position, Plaintiff Kljajic argues that Whirlpool should not get the "benefit of a doubt" of her lack of future harm because "people buy numerous ovens throughout their life and Whirlpool has such a large market share." (*Id.* at 7.)

To maintain an action seeking injunctive relief under the IDTPA, "a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Reid*, 964 F. Supp. 2d at 918 (citations omitted) ("While the [IDTPA] 'primarily focuses on acts between competitors, a cause of action under [the IDTPA] can be stated and injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future"). Indeed, a "[l]ack of future damages is a problem in 'most' IDTPA consumer actions because once a plaintiff is aware of the truth behind the

11

deceptive marketing, it can simply refrain from purchasing the product." *WhistlePig*, 2015 WL 2399354, at *4 (*citing Popp*, 244 Ill. App. 3d at 99); *Robinson*, 315 Ill. App. 3d at 1099; *Reid*, 964 F.Supp.2d at 918 (citations omitted) ("The problem inherent in such consumer actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damages.' Ordinarily, the harm has already occurred, thus precluding a suit for injunctive relief"); *see also Robinson*, 315 Ill. App. 3d at 1099 (*citing Glazewski*, 108 Ill. 2d at 253) ("The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it. Thus the plaintiffs are not persons who are 'likely to be damaged' by defendants' conduct in the future"); *Smith v. Prime Cable of Chi.*, 276 Ill. App. 3d 843, 860, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995) (*citing Brooks v. Midas Int'l Corp.* (1977), 47 Ill. App. 3d 266, 275, 5 Ill. Dec. 492, 361 N.E.2d 815) (explaining that in a consumer action under the Deceptive Trade Practices Act, injunctive relief rare because "ordinarily the harm has already occurred")).

Here, Plaintiff's arguments fail. First, Plaintiff Kljajic confuses the type of harm that a party may allege under the IDTPA. "To state a cause of action for injunctive relief, a plaintiff must minimally allege that he is likely to be damaged by another's *deceptive trade practice*." *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 46, 563 N.E.2d 1031, 1036 (1990)) (citations omitted) (emphasis added); *see also Reid,* 964 F.Supp.2d at 918 ("While the [IDTPA] 'primarily focuses on acts between competitors, a cause of action under [the IDTPA] can be stated and injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged *by the defendant's conduct in the future*.'") (emphasis added). Thus, the proper type of harm for Plaintiff Kljajic to allege is not that she is now in possession of a defective Oven that may break again upon use of the self-cleaning cycle, but rather that she will be damaged by Whirlpool's conduct in the future. Put differently, Kljajic must allege that

12

Whirlpool's deceptive trade practices will cause her damage in the future. Plaintiffs' allegations that she now has a potentially defective product, or that she could again purchase another defective oven, however, do not suffice as "future harm" under the IDTPA when she is aware of the alleged Defects. Indeed, "'[t]he problem in most consumer actions under the [IDTPA] is the inability to allege facts indicating the likelihood of damage in the future.'" *Howard v. Chi. Transit Auth.*, 402 Ill. App. 3d 455, 462, 341 Ill. Dec. 684, 931 N.E.2d 292, 299 (Ill. App. Ct. 2010) (quoting *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 99, 613 N.E.2d 1150, 1157 (1992)). This problem arises because "[o]rdinarily, the harm has already occurred, thus precluding a suit for injunctive relief." *Brooks v. Midas–Int'l Corp.,* 47 Ill. App. 3d 266, 5 Ill. Dec. 492, 361 N.E.2d 815, 821 (Ill. App. Ct. 1977).

In *WhistlePig,* this District addressed the exact same problem that hinders Plaintiff in the present case. 2015 WL 2399354. The plaintiffs in *WhistlePig* brought a claim under the IDTPA alleging that the defendants deceived them because the defendant's whiskey was not distilled at a premier location as advertised. *Id.* at *2. The court determined that because the plaintiff knew of the true source of the defendant's whiskey, it "cannot be misled about it in the event it decides to make future purchases." *Id.* at *4. The court reasoned that "the lack of future damages is a problem in 'most' [IDTPA] consumer actions because once a plaintiff is aware of the truth behind the deceptive marketing, it can simply refrain from purchasing the product." *Id.*; *see also, Popp*, 244 Ill. App. 3d at 99 (since the plaintiff "is now aware" that the defendants' system provides what she considers to be inadequate security, "[t]here can be no confusion in the future arising from defendants' alleged non-disclosure in marketing their services.").

Here, even construing the facts in Plaintiff Kljajic's favor, the broad speculation regarding future customer behavior and Whirlpool's market share is insufficient to state a

13

facially plausible claim for relief under the IDTPA. Plaintiff Kljajic, and others similarly situated, are now armed with knowledge of the alleged defect in the Whirlpool Ovens and are by no means bound to purchase an oven manufactured by Whirlpool. Indeed, Plaintiff can avoid Whirlpool products in the future should she choose to do so. Because Plaintiff Kljajic cannot show a likelihood of future damage from Whirlpool's alleged deceptive acts, her claim under the IDTPA fails. *See e.g., WhistlePig*, 2015 WL 2399354, at *5 (finding the plaintiffs "rank speculation regarding future customer behavior [] insufficient to state a facially plausible claim for relief under the IDTPA"); *Reid*, 964 F.Supp.2d at 918 (dismissing the plaintiff's claim under the IDTPA because the plaintiff had already purchased the alleged defective hair product and was now aware of the alleged defect); *see also Glazewski*, 108 Ill. 2d at 253 (explaining where the plaintiff knew of the problems, and as a result of that knowledge could avoid damage in the future, the plaintiffs were not eligible for injunctive relief and failed to state a cause of action under the IDTPA); *Smith*, 276 Ill. App. 3d at 860 (affirming dismissal of the plaintiffs' claim under the IDTPA where it was not reasonably likely for the plaintiffs to be damaged by the defendants' actions in the future).

     Finally, the same reasoning applies to Plaintiff Kljajic's argument that she will suffer some future harm if she accepts a warranty replacement part or product. Taking all of these facts as true, Plaintiff Kljajic now knows of the alleged Defect(s) and thus is also aware that a risk exists if she accepts the same oven as a warranty replacement it may contain the same Defect(s). The Court, therefore, grants Whirlpool's motion in this regard and dismisses Plaintiff's claim for injunctive relief under the IDTPA (Count I) without prejudice.

## II.  Plaintiff Cates' South Carolina Unfair Trade Practices Act Claim (Count V)

Whirlpool further challenges Plaintiff Cates' claim under the SCUTPA.  Namely, Whirlpool challenges Cates' claim as brought "on behalf of herself and a South Carolina subclass".  (*See* R.13, ¶¶ 6, 102-113 (Count V).)  Whirlpool maintains that Plaintiff Cates cannot bring a SCUTPA claim on behalf of a class.  The Court agrees.

SCUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice . . . may bring an action *individually, but not in a representative capacity*, to recover actual damages."  S.C. Code Ann. § 39-5-140(a) (emphasis added).  Given the statute's explicit bar against class action claims, courts have routinely struck down class action suits brought under SCUTPA.  *See Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 122, 678 S.E.2d 430, 434 (2009) ("[C]ourts have recognized that class action suits may not be brought pursuant to SCUTPA"); *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320, at *3 (D.S.C. Nov. 13, 2013) ("SCUTPA claims may not be maintained in a class action law suit"); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig.*, No. 3:11-CV-02784-JMC, 2013 WL 1316562, at *9 (D.S.C. Mar. 27, 2013) ("South Carolina's statutory consumer fraud claims based on deceptive trade practices may not proceed in a representative capacity").

Plaintiff argues that the Court has not yet conducted a choice-of-law analysis to determine whether South Carolina law will apply to the South Carolina subclass.  Plaintiff thus maintains that dismissal of the claim brought under SCUTPA is inappropriate at this stage.  Even though the Court has not conducted a choice-of-law analysis, Plaintiff's claim under SCUTPA is premised on a South Carolina statute which the Court would interpret under South Carolina law.

South Carolina law clearly precludes a class action claim under SCUTPA. Consequently, regardless of any outcome in a choice-of-law analysis, Plaintiff Cates could not possibly allege, or prove, a set of facts that would entitle her, or those similarly situated to her, to relief for a class action claim brought under SCUTPA. The Court, therefore, dismisses the class action claim in Count V of Plaintiffs' Amended Class Action Complaint with prejudice.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Whirlpool's Rule 12(b)(6) partial motion to dismiss. Specifically, the Court grants Whirlpool's motion regarding Count I of Plaintiffs' Amended Class Action Complaint and dismisses Plaintiffs' claim for damages under the IDTPA with prejudice and dismisses Plaintiffs' claim for injunctive relief under the IDTPA without prejudice. The Court further grants Whirlpool's motion regarding Count V and dismisses the class action allegations with prejudice. The Court also denies as moot Whirlpool's motion seeking dismissal of Counts I, II, III, IV, VI, and VIII against Plaintiff Vargas. The Court grants Plaintiff Kljajic leave to replead her claim for injunctive relief under Count I consistent with this Opinion and counsel's obligations under Rule 11 on or before October 9, 2015.

**Dated: September 25, 2015**           ENTERED

_____
AMY J. ST. EVE
United States District Court Judge