# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BETH KLJAJICH & KATHLEEN CATES, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 15 C 5980 |
| WHIRLPOOL CORPORATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Beth Kljajic ("Kljajic") and Kathleen Cates ("Cates"), individually and on behalf of a class of similarly situated consumers, filed their Second Amended Class Action Complaint on October 9, 2015, against Defendant Whirlpool Corporation ("Whirlpool"). (R.49.) Plaintiffs allege Whirlpool violated various consumer fraud statutes. Illinois Plaintiff Kljajic alleges violations of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.* ("IDTPA") (Count I) and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("FDBPA") (Count II). (*Id.*, ¶¶ 55-77.) Illinois Plaintiff Kljajic further alleges violations under the Uniform Commercial Code—breach of warranty (Count III), and nonconformity of goods (Count IV). (*Id.*, ¶¶ 78-99.) South Carolina Plaintiff Cates individually alleges violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("SCUTPA") (Count V). (*Id.*, ¶¶ 100-111.) Plaintiffs further allege breach of express warranty or in the alternative, unjust enrichment (Counts VI and VII). (*Id.*, ¶¶ 112-129.) Lastly, Plaintiffs allege violations of the Magnuson-Moss Federal Warranty Act,

15 U.S.C. § 2301, *et seq.* (Count VIII). (*Id.*, ¶¶ 130-141.) Before the Court is Whirlpool's partial motion to dismiss Plaintiffs' Second Amended Complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Whirlpool asks the Court to dismiss Plaintiff Kljajic's amended IDTPA claim (Count I) because Kljajic has again failed to plead a cognizable future harm. Further, Whirlpool asks the Court to dismiss the claim with prejudice because further amendments would be futile and Kljajic failed to address the infirmity in her claim that the Court identified in its prior order granting Defendant's partial motion to dismiss. (*See* R.51.) For the following reasons, the Court grants Whirlpool's motion.

## BACKGROUND

On September 25, 2015, the Court dismissed Kljajic's IDTPA claim seeking injunctive relief based on her failure to plead "future harm". (R.48, at 8-14.) In so ruling, the Court granted Kljajic "leave to replead her claim for injunctive relief under Count I [IDTPA claim] consistent with this Opinion and counsel's obligations under Rule 11 on or before October 9, 2015." (*Id.*, at 16.) In particular, the Court's Order specified:

> [T]he proper type of harm for Plaintiff Kljajic to allege is not that she is now in possession of a defective Oven that may break again upon use of the self-cleaning cycle, but rather that she will be damaged by Whirlpool's conduct in the future … Plaintiffs' allegations that she now has a potentially defective product … do not suffice as "future harm" under the IDTPA when she is aware of the alleged Defects.

(R.48, at 12-13.)

Pursuant to the Court's Order, Plaintiffs filed a Second Amended Class Action Complaint on October 9, 2015, which included amendments to Kljajic's IDTPA claim. (*See* R.49.) Kljajic amended her complaint to assert allegations relating to the conflicting information Whirlpool delivered to Kljajic as to whether her oven has a defect (R.49, ¶¶ 59, 61) and Kljajic's resulting confusion from Whirlpool's message (*see id.*, ¶¶ 15, 60, 62). Plaintiff Kljajic further alleges that

the ovens have a "poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Ovens." (R.49, ¶ 46; *id.*, ¶ 51.)

## I. Whirlpool Ovens

Viewing the allegations in the light most favorable to Plaintiffs, Kljajic alleges the following: Whirlpool makes, warrants, advertises, and sells the Whirlpool and KitchenAid ovens subject to this lawsuit ("Ovens"). (R.49, ¶ 26.) Whirlpool has advertised, manufactured, produced, and/or distributed Ovens for several leading retailers in the United States, such as IKEA, Home Depot, Sears, and P.C. Richard & Son. (*Id.*, ¶ 31.) The Ovens all feature a self-cleaning cycle that, at the touch of a button, cleans heavily soiled spots in the Oven. (*Id.*, ¶ 31.) Upon activating the self-cleaning feature, the Ovens' doors lock automatically and the Ovens heat to extremely high temperatures. (*Id.*, ¶ 36). These extreme temperatures are sustained for two to four hours, although some Ovens have differing levels of self-cleaning which may involve longer periods of time or higher temperatures during the cycle. (*Id.*)

Plaintiffs allege that a design defect(s) and/or defect(s) in material or workmanship ("Defect(s)") exist in the self-cleaning feature of the Ovens. The Defect(s) cause the Ovens to reach extremely high temperatures during the self-cleaning cycle—damaging the Ovens' components and rendering them inoperable due to e.g., a subsequent failure of the door to unlock after completion of the cleaning cycle. (*Id.,* ¶ 2.) The extreme heat generated in the self-cleaning cycle damages the Ovens' thermostat, fuses, control panel, motherboard, glass, and/or other components. (*Id.*) Specifically, Plaintiffs allege a non-exhaustive list of reasons for the Defect(s) in the Ovens including that: (a) the Ovens lack a proper thermostat that regulates the self-cleaning temperature during self-cleaning; (b) the Ovens lack proper insulation to

prevent the excessive heat from damaging component parts during the self-cleaning process; (c) the thermoregulator does not regulate the temperature of the Ovens during the self-cleaning cycle; (d) the Ovens and their component parts cannot withstand the heat generated by the self-cleaning cycle; (e) the Ovens contain insufficient fan cooling near electronics; (f) the Ovens are built with a fuse that is insufficiently thermal tolerant; and/or (g) the Ovens' self-cleaning cycle creates temperatures that exceed the necessary temperatures for self-cleaning. (*Id.*, ¶ 3.)

## II. Plaintiff Kljajic

Plaintiff Kljajic purchased a Whirlpool-manufactured, electric wall oven with a self-cleaning mechanism, model number IBS350PXS, serial number D32650470, built in Whirlpool's Cleveland, Tennessee factory during the 26th week of 2013. (R.49, ¶ 8.) Kljajic paid more for a Whirlpool Oven with a self-cleaning feature than one without because she relies on time-saving devices. (*Id.*, ¶ 9.) Almost a year later, on May 16, 2014, Kljajic used the self-cleaning feature of her Whirlpool Oven for the first time. (*Id.*, ¶ 10.) During the self-cleaning cycle, the temperatures in the Whirlpool Oven got so hot that an overheat situation occurred, and the motherboard and other component parts burnt up, leaving the Oven locked up and no longer usable. (*Id.*) Kljajic made over two dozen service requests, which were for the most part ignored. (*Id.*, ¶ 11.) Whirlpool sent a third-party repair service, A&E Factory Service, which made several unsuccessful attempts to fix Kljajic's Oven. (*Id.*, ¶ 12) After Kljajic made a complaint about her Oven to the Illinois Attorney General—naming Whirlpool as the manufacturer of her defective Oven—Whirlpool sent her a new Oven, with a self-cleaning feature. (*Id.*, ¶¶ 13, 14). Kljajic alleges that the technician from A&E Factory Service who installed her new Oven advised her not to run the self-cleaning cycle because the Oven would just burn up and lock, again leaving her with an unusable oven. (*Id.*, ¶ 15.) The A&E technician

4

specifically explained that the self-cleaning component of the Whirpool Oven's cheap insulation and other component parts is not sufficient to prevent the Oven's high temperatures from causing an overheat situation where the oven breaks and locks up. (*Id.*) Kljajic has never used the self-cleaning feature of her new Oven. (*Id.*) Kljajic alleges that Whirlpool materially omitted telling her that the self-cleaning feature would cause the Oven to break down and lock up because of the Defect(s). (*Id.*, ¶ 16).

### III. Alleged Misrepresentations

Plaintiffs allege that Whirlpool intended for customers to believe its Ovens were and are of first-rate quality compared to other ovens on the market. (*Id.*, ¶ 35.) Whirlpool listed its self-cleaning cycle as one of its notable features, despite its knowledge of the misleading nature of these statements due to an omission of material facts about the Defect(s). (*Id.*) Whirlpool has concealed the material facts of the Defect(s) from Plaintiffs—Defect(s) which deny customers of the self-cleaning feature and can render the Ovens unusable after one or two uses. (*Id.*, ¶ 38.) Plaintiffs and class members reasonably expected that the Ovens would not contain a Defect(s) that would substantially impair the Ovens' performance and use, and that the Ovens would not require extensive and expensive repairs (or the purchase of extended warranties). (*Id.*, ¶ 41.) Absent the misrepresented and concealed material information regarding the Defect(s), Plaintiffs would not have purchased the Ovens at premium prices and on the terms offered. (*Id.*) To date, Defendant continues to conceal material information from users, consumers, and the public regarding the Ovens. (*Id.*, ¶ 44.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A district court's analysis under Rule 12(b)(6) "rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

Under Rule 8(a)(2),[1] a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details

---

[1] The Court analyzes Kljajic's IDTPA claim under Rule 8(a)(2) because it is based on Whirlpool's deceptive trade practices which create a likelihood of confusion or misunderstanding, not based in allegations sounding in fraud. *See Cassetica Software, Inc. v. Computer Scis. Corp.,* No. 11 C 2187, 2011 WL 4431031, at *2 (N.D. Ill. Sept. 22, 2011) (*citing* 815 Ill. Comp. Stat. 510/2(12)) ("Claims under the [IDTPA] are not automatically subject to Rule 9(b) because the Act provides relief for a variety of unfair or deceptive trade practices, some of which do not amount to fraud but which create a likelihood of confusion or misunderstanding").

about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

**ANALYSIS**

Plaintiff Kljajic seeks injunctive relief under 815 ILCS 5110/3 based on Whirlpool's alleged violation of the IDTPA. Whirlpool argues that Kljajic has not cured the pleading deficiencies the Court identified in its earlier ruling and has again failed to plead a factual basis for future harm, necessary to support an IDTPA claim for injunctive relief. (*See* R.52, at 4-5.) The Court agrees.

In order to maintain a consumer action under the IDTPA, "the consumer must 'allege facts which would indicate that he is 'likely to be damaged' in the future.'" *Popp v. Cash Station, Inc.*, 244 Ill.App.3d 87, 99, 184 Ill. Dec. 558, 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992) (citations omitted). Indeed, as the Illinois courts have noted, "[t]he problem in most consumer actions under the [IDTPA] is the inability to allege facts indicating the likelihood of damage in the future." *Id.*, at 99 (*citing Brooks v. Midas International Corp.,* 47 Ill.App.3d 266, 275, 5 Ill. Dec. 492, 361 N.E.2d 815 (in a consumer action under the IDTPA, "[o]rdinarily the harm has already occurred")).

Kljajic argues, on the one hand, that Whirlpool Ovens have a defect that causes her—and the class members—Oven to malfunction. On the other hand, Kljajic argues that she is confused because Whirlpool's contradictory statements make her uncertain as to whether the defect exists and without clarity, there is a risk that her Oven will fail in the future if she attempts to use the defective self-cleaning cycle. Plaintiff's arguments improperly twist the legal issue of future

7

harm into a simple matter of personal confusion, arguing that Kljajic does not know whether she can actually use her Oven or if she should call a repairman and if she does, she is concerned additional damages will be caused to her Oven and underlying real property that without the necessary clarity, she cannot avoid. (*See* R.54, at 2.) Specifically, Kljajic alleges confusion as to "whether or not she can use the self-cleaning function of her Whirlpool Oven", based on the mixed messages she is receiving from Whirlpool. (*See* R.49, ¶¶ 59-63.) These arguments fail to cure Plaintiff's pleading deficiency for "future harm" under the IDTPA. Regardless of any mixed messages from Whirlpool, Kljajic is, at a minimum, aware of a risk that her Oven is defective and at a maximum, aware that a defect exists. Indeed, as Kljajic alleges, she ran the self-cleaning cycle in the first Whirlpool Oven that she owned and it resulted in damaging the Oven warranting a replacement. (*See* R.49, ¶¶ 10-12.) This awareness disables her claim under the IDTPA because she cannot allege "future harm". Plaintiff's arguments relate to the potential for harm that she alleges could occur if the defect is present, not harm that could occur in the future from Whirlpool's deceptive conduct—statements or misrepresentations about its Ovens' self-cleaning cycle. Plaintiff's awareness—even of a risk that a defect exists—still arms her with the knowledge she needs to avoid any future harm from Whirlpool's allegedly deceptive practices. Kljajic can, therefore, invoke her power as a consumer to avoid choosing Whirlpool's products. *See Glazewski v. Coronet Ins. Co.*, 108 Ill. 2d 243, 253, 483 N.E.2d 1263, 1267 (1985) ("The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it"); *see also Greisz v. Household Bank (Illinois),* 8 F.Supp.2d 1031, 1044 (N.D. Ill. 1998), *modified* (Aug. 6, 1998), *aff'd sub nom. Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012 (7th Cir. 1999) (granting the defendant's motion to dismiss the plaintiff's

IDTPA claim because the plaintiff "is fully aware of the allegedly inadequate disclosures" contained in the agreements and statements).

Plaintiff argues that under Illinois law, "an IDTPA claim for injunctive relief can be stated even when a plaintiff is aware of Defendant's deceptive conduct if plaintiff is likely to be damaged by defendant's conduct in the future that 'creates a likelihood of confusion or misunderstanding.'" (R.54, at 1.) Kljajic asserts that her situation is more like the line of cases where future harm is properly alleged, than the alternative. In support of her position, Plaintiff relies on *Brennan v. AT&T Corp.*, No. 04-CV-433-DRH, 2006 WL 306755 (S.D. Ill. Feb. 8, 2006) and attempts to distinguish her situation from *Popp v. Cash Station, Inc.*, 244 Ill.App.3d 87, 184 Ill. Dec. 558, 613 N.E.2d 11509 (Ill. App. Ct. 1992). Plaintiff's reliance on *Brennan* is misplaced, however, because the district court there found that the plaintiff, aware of the defendant's alleged deceptive trade practice, "cannot easily avoid the improper charges by refusing to do business with [the defendant]." *Id.*, at *5. Indeed, the *Brennan* plaintiff allegedly received the improper charges on her bill when she was neither affiliated with nor a customer of the defendant. *Id.* This is inapposite to the situation here.[2] When Kljajic bought the Whirlpool Oven she now alleges is defective (or is unsure of whether it is defective), she was a Whirlpool customer and Kljajic can make the decision to avoid Whirlpool and refuse to do business with it again.

Similarly, in *Glazewski v. Coronet Ins. Co.*, the Illinois Supreme Court found that the plaintiffs "are not persons who are 'likely to be damaged' by defendants' conduct in the future"

---

[2] Kljajic's reliance on *Zapka v. Coca-Cola Co.*, No. 99 c 8238, 2000 WL 804688 (N.D. Ill. June 21, 2000), is similarly unhelpful. The district court in *Zapka*, did not address "future harm" in an IDTPA claim, but instead considered a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.*, at *1. Even if the analysis of "future harm" is comparable between the two consumer fraud statutes, however, the *Zapka* court provided no explanation beyond conclusory statements as to why there was a possibility of future harm to the plaintiff. *Id.*, at *2.

where the defendants allegedly sold underinsured-motorist coverage that had no value based on the statutory definition of "underinsured". 108 Ill.2d 243, 247, 91 Ill. Dec. 628, 483 N.E.2d 1263 (1985). Because the plaintiffs knew how to avoid the problems associated with the coverage, they could not allege "future harm" under the IDTPA. *Id.*, 108 Ill.2d at 253. Indeed, the additional cases cited by Kljajic affirmed dismissal of the IDTPA claims where, as here, the plaintiff knew of the alleged deceptive trade practices. *See e.g., Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 860, 213 Ill. Dec. 304, 658 N.E.2d 1325 (Ill. App. Ct. 1995) (affirming dismissal of an IDTPA claim where the plaintiffs had knowledge of alleged deceptive practice acts and, therefore, "could not show a likelihood of future damage from the [defendant's] acts"); *Brooks*, 47 Ill.App.3d at 275 ("Although he asks that defendant be enjoined from advertising its mufflers in a deceptive manner, he has already made his purchase. Whatever harm plaintiff may suffer from the advertisements has already occurred. The trial court, therefore, was correct in ruling that such practices by defendant are not likely to damage plaintiff").

Kljajic further attempts to distinguish her situation from *Popp v. Cash Station, Inc.*, 244 Ill.App.3d 87, 184 Ill. Dec. 558, 613 N.E.2d 11509 (Ill. App. Ct. 1992). In *Popp*, the Illinois Appellate Court found that the plaintiff, aware that the defendants' ATM system provided inadequate security, failed to plead future harm relying on the threat to her personal security. 244 Ill.App.3d at 99. This case is not distinguishable from *Popp*, however, because Kljajic is aware of Defendant's deceptive practices—statements and misrepresentations regarding the Ovens' self-cleaning cycle—and she can act in the future to avoid that risk based on her awareness.

In addition, Kljajic knows the alleged problems with the Ovens. Attributing Whirlpool's statements denying those problems as a basis for confusion that equates to future harm would effectively negate the consumer requirement for future harm, because a defendant's denial of the alleged deceptive conduct is likely present in every case. Indeed, allowing such a situation would mean that for every IDTPA claim, a plaintiff could successfully allege future harm if the defendant did not admit the deceptive act. This does not fall within the meaning of "future harm" under the IDTPA.

In order to obtain relief under the IDTPA, a plaintiff must demonstrate that a defendant engaged in any of twelve enumerated types of deceptive conduct listed in Section 510/2. *See* 810 ILSC 510/2; *see also Popp*, 244 Ill. App. 3d at 98. In this case, Kljajic generally alleges violations of 815 ILCS 510 *et seq.*, but makes particular reference to 815 ILCS 510/2(a)(12) which states:

> § Deceptive trade practices.
>
> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
> …
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(12). Injunctive relief under the IDTPA, however, includes a separate and distinct requirement. Specifically, a plaintiff seeking injunctive relief also must show that the defendant's conduct will likely cause it to suffer damages in the future. *Kensington's Wine Auctioneers*, 392 Ill. App. 3d at 9 (citations omitted); *see also Robinson*, 315 Ill. App. 3d at 1098 (citing *Popp*, 244 Ill. App. 3d at 98-99). Kljajic's confusion as to whether a defect exists in her Oven does not equate to a finding of future harm because her confusion includes awareness of the problem—and she can avoid the problem in the future. *See e.g., Reid v. Unilever U.S., Inc.*,

11

964 F.Supp.2d 893, 918 (N.D. Ill. 2013) (dismissing the plaintiff's allegations under the IDTPA for a defective hair product where the plaintiff alleged that the defendant continued to advise consumers that the product was safe to use even after it had been discontinued by the defendants "because of consumer 'confusion'").

Because Kljajic cannot, in an individual capacity, bring a cause of action under the IDTPA because of the lack of likely future damage, she cannot do so as a representative of a class. *See Popp*, 244 Ill. App. 3d at 99. In addition, because Kljajic did not dispute Whirlpool's request to dismiss Count I with prejudice, the Court does so here.

## CONCLUSION

For these reasons, the Court grants Whirlpool's partial motion to dismiss regarding Count I of Plaintiffs' Second Amended Class Action Complaint and dismisses Plaintiff Kljajic's claim for injunctive relief under the IDTPA with prejudice.

Dated: December 10, 2015                    ENTERED

                                                                   _____
                                                                   AMY J. ST. EVE
                                                                   United States District Court Judge