**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BETH KLJAJIC and KATHLEEN CATES, Individually and On Behalf of All Others Similarly Situated** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **WHIRLPOOL CORPORATION** <br><br> **Defendant.** | **CASE NO. 1:15-cv-05980** <br><br> **Honorable Judge Amy J. St. Eve** <br><br><br> **JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.  INTRODUCTION ........................................................................................................ 1

II. RELEVANT FACTS .................................................................................................... 2

    A.  THE OVENS AT ISSUE ....................................................................................... 2

    B.  THE DEFECT AT ISSUE ...................................................................................... 3

    C.  PLAINTIFFS' OVENS ......................................................................................... 5

        1.  *Plaintiff Kljajic's Ovens* ........................................................................ 5

        2.  *Plaintiff Cates's Oven* ........................................................................... 6

    D.  WHIRLPOOL'S KNOWLEDGE OF THE DEFECT ................................................... 7

    E.  WARRANTIES BY WHIRLPOOL ......................................................................... 7

        1.  *The Whirlpool warranties' material terms and conditions are identical.* ....................................................................................................... 7

        2.  *The IKEA warranties' material terms and conditions are identical.* ............. 8

III. ARGUMENT ............................................................................................................ 9

    A.  PROPOSED CLASSES ......................................................................................... 9

        1.  *Rule 23(b)(3) Classes* ............................................................................ 9

        2.  *Alternative Rule 23(b)(2) Classes* ......................................................... 10

    B.  LEGAL STANDARD .......................................................................................... 11

    C.  RULE 23(a)'S REQUIREMENTS ....................................................................... 12

        1.  *The Proposed Classes are So Numerous that Joinder of All Members Is Impracticable.* ........................................................................................ 12

        2.  *Common Questions of Law and/or Fact Exist.* ....................................... 14

        3.  *Plaintiffs' Claims are Typical of Those of Classes' Members.* .................... 16

        4.  *Plaintiffs and Counsel Will Fairly and Adequately Protect the Interests of the Classes.* ............................................................................. 17

D.     RULE 23(b)(3)'S REQUIREMENTS ...................................................................18

        1.     *Common Issues of Law or Fact Predominate Over Any Questions Affecting Only Individual Members.* ..............................................19

        2.     *A Class Action Is Superior to Other Available Means for the Fair and Efficient Adjudication of the Controversy.* ...........................28

E.     ASCERTAINABILITY ......................................................................................29

F.     RULE 23(c)(4) REQUIREMENTS .................................................................32

G.     ALTERNATIVE RULE 23(B)(2) REQUIREMENTS .......................................35

        1.     *Legal Standard* .................................................................................35

        2.     *Relief Sought* ...................................................................................36

IV.     CONCLUSION .....................................................................................................36

CERTIFICATE OF SERVICE .........................................................................................38

## TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Am. Isuzu Motors*, 321 Ill. App. 3d 696 (2001) ......................................................25

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...............................................17, 19, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) .........................11, 19

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659 (N.D. Ill. 1996) ...........................................................................................................................12, 15

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ...................................................................33

*Beley v. City of Chicago*, No. 12 C 9714, 2015 WL 8153377 (N.D. Ill. Dec. 7, 2015) ..........15

*Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) ...........................................................................................................25

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ........................17

*Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408 (N.D. Ill. 2012) ...................31

*Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012) ...................................13, 20, 21

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ....................................... *passim*

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...............................22, 28, 32

*Carriuollo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ........................................15

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015).................................................................................................................34

*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) .............................................................24

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)...................................................24, 25

*Day v. Check Brokerage Corp.*, 240 F.R.D. 414 (N.D. Ill. 2007) ...........................................11

*Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252 (S.D.N.Y. 2010) ......................................................................................................................................32

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890 (7th Cir. 1981).................................................................................................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................11, 27

*Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421 (N.D. Ill. 2007).................................................11

*Fournigault v. Indep. One Mortgage Corp.*, 234 F.R.D. 641 (N.D. Ill. 2006)............10, 18, 28

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) ......................................................12

*Gillespie v. Equifax Info. Servs.*, LLC, No. 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008) ......................................................................................................................19

*Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987)...........................................12

*Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523 (E.D. Wis. 2007) ...............................11

*In re Anicom Inc. Sec. Litig.*, No. 00C 4391, 2002 WL 472249 (N.D. Ill. Mar. 27, 2002) ...................................................................................................................................12

*In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599 (7th Cir. 2014)...................14, 22

*In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953 (N.D. Ill. 2007) ...........................26

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997)..................................19

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) .......................27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) ............................................................................................................................20

*IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994 (N.D. Ill. 2008)...........................24

*Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2015 WL 1087897 (N.D. Ill. Mar. 10, 2015) ...................................................................................................................................33

*Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364 (7th Cir. 2012)............24

*Kartman v. State Farm Mut. Auto. Ins. Co..*, 634 F.3d 883 (7th Cir. 2011) ............................33

Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998) ...........................................................11, 14, 15

*King v. Kansas City Southern Indus.*, 519 F.2d 20 (7th Cir. 1975) ..........................................11

*Lau v. Arrow Fin. Servs., LLC*, No. 06-3141, 2007 WL 1502118 (N.D. Ill., May 22, 2007) ...................................................................................................................................14

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989) .....................................................12

*Marshall v. H & R Block Tax Servs. Inc.*, 270 F.R.D. 400 (S.D. Ill. 2010)............................16

*Massie v. Ill. Dep't of Transp.*, No. 96-4830, 1998 WL 312021 (N.D. Ill. 1998)..................12

*McKenzie v. City of Chicago*, 175 F.R.D. 280 (N.D. Ill. 1997)................................................17

*McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. Dec. 8, 2015) .............................32

*Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014) .........25

*Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003) .............................................22

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012)..............11, 13, 19, 31

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)...............................27, 28, 29, 32

*Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) .......................................................................10

*Osada v. Experian Information Solutions, Inc.*, No. 11 C 2856, 2012 WL 1050067
(N.D. Ill. 2012)....................................................................................................................17

*Pappas v. Pella Corp.*, 363 Ill. App. 3d 795 (2006) ................................................................24

*Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002) ..............................16

*Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ........................................... *passim*

*Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413 (1998) ................................................24

*Phillips v. Joint Legislative Committee on Performance and Expenditure Review of
the State of Mississippi*, 637 F.2d 1014 (5th Cir. 1981) ..............................................16, 17

*Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383 (N.D. Ill. 2006) ......................................12

*Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. 2013)...........................................25

Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584 (7th Cir. 1993) .......................10

*Ringswald v. Cty. of DuPage*, 196 F.R.D. 509 (N.D. Ill. 2000) ..............................................12

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992).........................................................10, 17

*Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010).............16

*Saltzman v. Pella Corp.*, 257 F.R.D. 471, 606 F.3d 391 (7th Cir. 2010)...........................16, 35

*Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010)................................................................11

*Smith v. Greystone Alliance LLC*, No. 09 C 5585, 2011 WL 30745 (N.D. Ill. Jan 25.
2011) ..................................................................................................................................28

*Smith v. Nike Retail Servs.*, 234 F.R.D. 648 (N.D. Ill. 2006) ..................................................12

*Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)..........................................................15

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)....................................13, 14, 21

*Tidwell v. Schweiker*, 677 F.2d 560 (7th Cir. 1982) .................................................................16

*Wagner v. NutraSweet Co.*, 95 F.3d 527 (7th Cir. 1996).........................................................16

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .................................................. *passim*

*Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000) ...........................................18

*Young v. Cty. of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr.25, 2007) ..............19

## Statutes

15 U.S.C. § 2310.......................................................................................................................26

6 NEWBERG ON CLASS ACTIONS § 18:7 ...................................................................................32

7A Wright, Miller & Kane, Fed. Prac. & P., § 1778 at 122-23 ...............................................19

7B Wright & Miller Fed. Prac. & P. § 1790.............................................................................32

810 ILCS 5/2-313 .....................................................................................................................25

815 ILCS 505/1.........................................................................................................................23

## Rules

Fed. R. Civ. P. 23......................................................................................................... *passim*

## I.     INTRODUCTION

This class action is brought by Plaintiffs Beth Kljajic and Kathleen Cates ("Plaintiffs") against Defendant Whirlpool Corporation ("Whirlpool" or "Defendant") because its Vision II Platform Wall Ovens ("Class Ovens" or "Ovens") are prone to overheat and lock up when the self-cleaning cycle is used, leaving these Ovens locked and unusable ("Defect"). Just as troubling and beyond the Defect itself, Whirlpool has designed its warranty claims process to string customers along. Whirlpool routinely blames overheating claims on improper installation and other issues so that it may absolve itself from liability for its defective Ovens. All the while, Whirlpool has known that the self-cleaning button on its Ovens, which it advertises as "Easy to Use," is really a self-destruct button.

Indeed, Whirlpool conceals at the point-of-sale that its Ovens are prone to overheat and lock up when the self-cleaning feature is used, rendering the oven unusable unless costly and timely repairs are made. In fact, Whirlpool has issued approximately 16 Technical Service Pointers to Whirlpool-authorized servicers regarding Vision II Platform Ovens locking up during or after the self-clean cycle without giving notice to Plaintiffs or the putative class members. Incredibly, as the two inspections of Plaintiffs' Ovens have shown in this case, the self-cleaning features of Whirlpool's Ovens not only do not work when tested, but do not, according to Whirlpool's own repairmen and internal communications, work after Whirlpool installs replacement parts. As the evidence in this case has shown, even though Whirlpool does not know how to fix the problem with the self-cleaning feature in these Ovens, it is denying responsibility for the problem.  Plaintiffs' class action is a continuation of what Plaintiff Beth Kljajic started with the Illinois Attorney General -- forcing Whirlpool to take responsibility for its defective Ovens, remedy the damages it has caused Plaintiffs and the Classes, and give notice to consumers and the public at large about the inherent dangers of these Class Ovens.

1

For the reasons stated herein, Plaintiffs respectfully submit to the Court that the classes and subclasses proposed below warrant certification under Rule 23(b)(3), as to common issues under Rule 23(c)(4), or under Rule 23(b)(2).

## II.    RELEVANT FACTS

### A.    The Ovens At Issue

██████████████████████████████████████████████████████████████████████

████████ *See* Ex. 6, Deposition of Paul Taylor ("Taylor Depo.") at 113:1-17, 225: 2-5; *see also* Ex. 13, Whirlpool's Expert Report of Paul Taylor ("Taylor Expert Report") at ¶ 9 ("████████ ████████████████████████████████████████"). ████████████████████████████████

████████████████████████ *See id.*; Ex. 4, 30(b)(6) Deposition of Whirlpool Corp. Through Valerio Hammes ("Hammes Depo.") at 99:22. Whirlpool's expert, Paul Taylor, compared differences in the Ovens to differences in cars built on the same platform:

> Like cars you have sister vehicles.  You might have a, you know, a Ford and a Lincoln that would share a common platform where a lot of it is the same, but then they put better, you know, quality upholstery in a Lincoln and they may have more electronics in a Lincoln than in the Ford.

Ex. 6, Taylor Depo. at 113:11-16.

In addition to using the same chassis**,** all Ovens on the Vision II Platform use the same self-cleaning feature. "The Self-Cleaning cycle uses very high temperatures, burning soil to a powdery ash." Ex. 22, Cates Oven Use & Care Guide ("Cates Oven Guide") at 20; Ex. 23 Kljajic Oven Use & Care Guide ("Kljajic Oven Guide") at 12. Organic components will begin to break down at 400 degrees centigrade[1]. Ex. 4, Hammes Depo. at 102:20-24. However, ████████████

---

[1] 400 degrees Centigrade is 752 Fahrenheit.

████████████████████████████████████████████████

Ex. 8, E-mail from Deborah Swann at 1. *See also* Ex. 20, UL Laboratory Data Package at 4

("████████████████████████████████████████"). Given these

extremely high temperatures during self-cleaning, appropriate venting of the super-heated air is

critical to maintain safe operation of the Ovens.

Whirlpool's Ovens are available in 24-inch, 27-inch, and 30-inch sizes and are marketed

as "Easy-to-clean, both inside and out." *See* Ex. 21, Whirlpool Cooking Brochure at 3.

Marketing materials also promise "Stylish design. Simple cleanup. Consistent Cooking." *Id.* at 6.

Of import, oven cleaners cannot be used on the Ovens. Ex. 22, Cates Oven Guide at Use & Care

Guide at 4, 21; Ex. 23, Kljajic Oven Guide at 3, 13. Yet when an Oven's self-cleaning feature

causes overheating, the owner is told the only way to prevent a recurrence is not to use the self-

cleaning mechanism. *See* Ex. 3, Deposition of Kathleen Cates ("Cates Depo.") at 129:16-22; Ex.

2, Deposition of Beth Kljajic ("Kljajic Depo.") at 86:25-87:10. They are not told that

information, however, at the time of sale. *See*, *e.g.*, Ex. 9, E-mail from Agneta Nicholl ("Nicholl

E-mail") at 1 (complaining that "████████████████████████████████████

██████").

**B.      The Defect At Issue**

████████████████████████████████████████████████

█████████████████████ Ex. 11, de Richemond Rebuttal Report at 1; *see also* Ex. 10, Plaintiffs'

Expert Report of Albert de Richemond ("de Richemond Report") at 11-13. ███████████████

████████████████████████████████████████ Ex. 10, de Richemond Report at

---

[2] 855 degrees Fahrenheit is 457 degrees Centigrade.

13; Ex. 11, de Richemond Rebuttal Report at 3. ███████████████████

████████████████████████████████████████████████████████

███ [3] Ex. 10, de Richemond Report at 12. ████████████████████████

███████████████████ Ex. 11, de Richemond Rebuttal Report at 3-4. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████. Ex. 7, E-mail from Curt Klepzig at 4.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 11, de Richemond Rebuttal Report at 2. ████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ *Id.*

██████████████████████████ *Id.* Unfortunately, █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.*

Put another way, ████████████████████████████████████████

██████████████ Ex. 12, Plaintiffs' Expert Report of Nozer Singpurwalla at 1. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[3] ████████████████████████████████████████████████████

██████████████████████ Ex. 10, de Richemond Report at 12.

███████████████████████████████ *Id.* Whirlpool's Oven fail when they perform one of their most basic, and heavily advertised, functions.

### C.     Plaintiffs' Ovens

Plaintiffs' Ovens both manifested the defect identified by their experts (1) when Plaintiffs attempted to use the self-cleaning function and (2) when the Ovens were inspected by the parties' experts.

#### 1.     *Plaintiff Kljajic's Ovens*

Plaintiff Kljajic purchased her Oven on August 12, 2013.  *See* Ex. 24, Kljajic IKEA Invoice. She only used the Oven one time before running the self-cleaning function.  Ex. 2, Kljajic Depo. at 201:16-24. The servicer sent by Whirlpool said that the oven had overheated, that all the Ovens did that, and not to use the self-cleaning feature again. *Id.* at 86:25-87:10. The servicer was not able to fix Plaintiff Kljajic's oven on the first service visit. *Id.* at 87:11-17. "Sometimes the wrong parts had been sent. Sometimes no parts had been sent.  He said it wasn't fixable anyway." *Id.* at 87:15-17. Kljajic was given a new Oven ("Second Oven") but again was told not to use the self-cleaning feature because it would break the oven. *Id.* at 179:20-21, 198: 21-23. Kljajic has not tried running the self-clean on the Second Oven because of what the servicers told her. *Id.* at 182:6-12.

As a part of discovery in this matters, ██████████████████████████████ ███ Ex. 13, Taylor Expert Report at ¶ 83. ██████████████████████████████ ██████████████████████████████████████████ *Id.* at ¶¶ 85-87. ███████ ███████████████████████████████ *Id.* at ¶ 87.





*Id*.

*Id*. at ¶¶ 88-89.

*Id*. at ¶¶ 88-90.

*Id*. at ¶ 90.

### 2.    *Plaintiff Cates's Oven*

Plaintiff Cates purchased her Oven in August of 2004. Ex. 3, Cates Depo. at 117:19-20. After using the self-cleaning function once every few years, Plaintiff Cates's oven locked up after using the self-cleaning function in July 2014. *Id*. at 112:17-20, 117:22-25, 118:1-7. The repairman told Plaintiff Cates "that the problem was frequent, that it was not unusual, and he knew exactly the part to replace and what it needed." *Id*. at 127:14-19. "His advice was not to use the self-cleaning function again." *Id*. at 129:16, 19-22.



Ex. 13, Taylor Expert Report at ¶¶ 70, 72.

*Id*. at 72.

*Id*.

*Id*. at ¶¶ 74-75.

*Id*. at ¶¶ 75-76.

### D. Whirlpool's Knowledge of the Defect

██████████████████████████████████████████████████████████ *See*

Ex. 18, Whirlpool Timeline; Ex. 19, Technical Service Pointers. ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. 15, Whirlpool's First Supp. Responses to Plaintiffs' First Set of Interrogatories ("Whirlpool

Supp. Responses") at 35. To this day, Whirlpool continues to deny the existence of a defect in

the Class Ovens. *See* Ex. 3, Cates Depo. at 128:12-16 (testifying that Whirlpool told her it was a

unique problem). However, to date, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████ Ex. 10, de Richemond Report at 12. Furthermore, when the Ovens are serviced after a

self-cleaning failure, Plaintiffs and the putative class members are told the only way to prevent a

recurrence is not to use the self-cleaning mechanism. *See*, *e.g.*, Ex. 3, Cates Depo. at 129:16-22;

Ex. 2, Kljajic Depo. at 86:25-10. Class Members are not told that information, however, at the

time of sale. *See*, *e.g.*, Ex. 9, Nicholl E-mail (complaining that "████████████████████

████████████████████████████████").

### E. Warranties By Whirlpool

#### 1. *The Whirlpool warranties' material terms and conditions are identical.*

Whirlpool provided virtually identical warranties on all of the Ovens.[4] All of the

warranties cover "defects in materials or workmanship." *See* Ex. 16, Whirlpool Limited

Warranties (issued between 1997 and 2009). They further cover factory specified parts and repair

---

[4] As is discussed in Section II.E.2 *supra*, the warranty on Ovens sold through IKEA is for a
period of five years.

labor to correct defects in materials. *Id*. The warranties are all provided by Whirlpool Corporation and service must be provided by Whirlpool's designated or authorized service company. *Id*. Finally, the majority of the limited warranties covering the Class Ovens, including the Cates' Oven, are for a period of one year from date of purchase. *Id*.

### 2. *The IKEA warranties' material terms and conditions are identical.*

A subgroup of Ovens, including Plaintiff Kljajic's Oven, are covered by a five year limited warranty. Ex. 17, IKEA Warranties. The Warranties on IKEA-Branded Ovens also cover "defects in materials or workmanship." *Id*. The warranties similarly cover factory specified parts and repair labor to correct defects in materials. *Id*. The limited warranty is provided by Whirlpool Corporation and the service must be provided by Whirlpool's designated service company.[5] *Id*.

---

[5] Whirlpool disputes who is responsible for the limited warranty in Ikea Branded Products. Although the terms of the warranty indicate Whirlpool is responsible for executing service, Ikea's website provides no clarity:

> **Who will execute the service?**
> This limited warranty is provided by Whirlpool Corporation (hereafter ""Whirlpool""). Service must be provided by a Whirlpool designated service company.

> **Who will execute the service?**
> The IKEA service provider will provide the service through its own service operations or authorised service partner network.

*See*, http://www.ikea.com/ms/en_US/customer-service/about-our-products/warranties/index.html.

Additionally, Ikea warranty materials provide, ""This means *we* can offer you a free five year limited warranty against defects in materials and workmanship that covers IKEA kitchen appliances." (emphasis added).

## III.    ARGUMENT

### A.    Proposed Classes

Pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, Plaintiff

Kljajic asks this Court to certify the following classes:[6]

#### 1.    *Rule 23(b)(3) Classes*

All individuals residing in the States identified in Exhibit 1 who purchased a Whirlpool Oven with a self-cleaning mechanism (the "Multi-State Class").

All individuals residing in the States identified in Exhibit 1 who purchased a Whirlpool Oven sold by IKEA with a self-cleaning mechanism (the "IKEA Multi-State Class").

Plaintiff Kljajic seeks to pursue claims for breach of express warranty and violation of the

Magnuson-Moss Warranty Act ("MMWA") on behalf of the Multi-State Class and IKEA Multi-

State Class. Because the elements of the breach of express warranty and MMWA claims are

materially the same in these states, common issues of law and fact exist with respect to these

classes.  *See* Ex. 1, Table of Breach of Express Warranty State Law Survey.

All individuals who purchased a Whirlpool Oven with a self-cleaning mechanism in the state of Illinois (the "Illinois Class").

All individuals who purchased a Whirlpool Oven sold by IKEA with a self-cleaning mechanism in the state of Illinois (the "IKEA Illinois Class").

Plaintiff Kljajic seeks to pursue claims for violation of the Illinois Consumer Fraud Act

("ICFA") and the MMWA as well as breach of implied warranty, breach of express warranty,

and unjust enrichment on behalf of the Illinois Class and IKEA Illinois Class.

---

[6] Excluded from each of these Classes are (1) Whirlpool, any entity in which Whirlpool has a controlling interest or which has a controlling interest of Whirlpool, and Whirlpool's legal representatives, assigns, and successors; (2) the judges to whom this case is assigned and any member of the judge's immediate family; and (3) any person or entity with claims for personal injury, wrongful death, or emotional distress.

Plaintiff Cates asks this Court to certify the following class:

> All individuals who purchased a Whirlpool Oven with a self-cleaning mechanism in the state of South Carolina (the "South Carolina Class").

Plaintiff Cates seeks to pursue a claim for unjust enrichment on behalf of the South Carolina Class.

### 2.      Alternative Rule 23(b)(2) Classes

Finally, Plaintiffs also ask the Court, in the alternative, to certify the following injunctive classes:

> All individuals residing in the States identified in Exhibit 1 who purchased a Whirlpool Oven with a self-cleaning mechanism (the "Injunctive Multi-State Class").

> All individuals residing in the States identified in Exhibit 1 who purchased a Whirlpool Oven sold by IKEA with a self-cleaning mechanism (the "Injunctive Multi-State IKEA Class").

They seek to pursue breach of express warranty and MMWA claims on behalf of the Injunctive Multi-State Class and Injunctive Multi-State IKEA Class. As with the proposed Rule 23(b)(3) Multi-State Classes, the elements of the breach of express warranty and MMWA claims are materially the same in these states. Ex. 1, Table of Breach of Express Warranty State Law Survey.

Finally, Plaintiffs asks this Court, in the alternative, to certify all issues subject to common proof in accordance with Rule 23(c)(4).

For the reasons set forth in Section III.B and C *infra*, these Classes satisfy the requirements of Rule 23(a) and 23(b). Common issues predominate for all these claims, and their elements are capable of proof through the presentation of common evidence. Certification of Plaintiffs' claims for class-wide treatment is therefore appropriate.

### B.    Legal Standard

To obtain class certification, putative class representatives must demonstrate four prerequisites for certification under Rule 23(a) and at least one basis for certification under Rule 23(b). *See*, *e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *Fournigault v. Indep. One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006). A "district court has broad discretion to determine whether certification of a class action lawsuit is appropriate." *Olson v. Brown*, 594 F.3d 577, 584 (7th Cir. 2010). Having moved to certify the class, Plaintiffs bear "the burden of demonstrating that [class] certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993).

In determining whether to certify a class, the Court does not inquire into the merits of plaintiff's claims unless and "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2552 n.6 (2011); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). Thus, courts should consider only law and facts germane to certification and must avoid questions about the merits that do not relate to certification. *Amgen*, 133 S. Ct. at 1195; *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). "Any consideration of the merits at the class certification stage also runs the risk of supplanting the jury as the finder of fact." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 823 (7th Cir. 2012).

In making a determination on class certification, "Rule 23 should be liberally interpreted in favor of the maintenance of class actions." *Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523, 524 (E.D. Wis. 2007) (citations omitted). *See also Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 427 (N.D. Ill. 2007) *modified*, 242 F.R.D. 434 ("We note that Rule 23 is to be liberally

11

construed and that we should err in favor of maintaining a class action.") (citing *King v. Kansas City Southern Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). To the extent there are material doubts about the facts, they should generally be resolved in favor of certification. *See*, *e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007).

### C. Rule 23(a)'s Requirements

The four threshold requirements of Rule 23(a) are numerosity (the class must be so large that "joinder of all members is impracticable"); commonality (there must be common questions of law or fact); typicality (the representatives' claims must be "typical" of those of the class); and adequacy of representation (the representatives must fairly and adequately protect the interests of the class). Fed. R. Civ. P. 23(a)(1)-(4); *see also Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). As demonstrated below, the proposed Classes satisfy each of these prerequisites.

#### 1. The Proposed Classes are So Numerous that Joinder of All Members Is Impracticable.

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. Cty. of DuPage,* 196 F.R.D. 509, 512 (N.D. Ill. 2000) (citing *Massie v. Ill. Dep't of Transp.,* No. 96-4830, 1998 WL 312021, at *2 (N.D. Ill. 1998) (certifying class of 53); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996) (certifying class of 18)). In this context, "impracticable" does not mean "impossible," but refers only to the difficulty or inconvenience of joining all members of the class. *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) (citation omitted).

Although a court cannot rely on pure speculation regarding class size, plaintiffs need not "specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954,

957 (7th Cir. 1989). Plaintiffs are not required to specify the precise number of class members as long as they make a good-faith estimate. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662 (N.D. Ill. 1996). "While a plaintiff need not identify each class member or even provide an exact number of class members to satisfy th[is] element . . . he or she is required to offer at least a good faith estimate as to the class size." *Smith v. Nike Retail Servs.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) (citations omitted); *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 399 (N.D. Ill. 1987) (good faith estimate permissible); *In re Anicom Inc. Sec. Litig.*, No. 00C 4391, 2002 WL 472249, at *1 (N.D. Ill. Mar. 27, 2002) ("Plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good-faith estimates, and the court is entitled to make 'common sense assumptions' in order to support a finding of numerosity.") (internal citations omitted).

Furthermore, numerosity can be met even though the defect has not manifested itself. Indeed, paying more for a product than its value with a defect constitutes a cognizable financial injury. *See, Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *cert. granted and judgment vacated*, 133 S. Ct. 2768, 186 L. Ed. 2d 215 (2013), *opinion reinstated by* 727 F.3d 796, 802 (7th Cir. 2013) ("*Butler II*"), *cert. denied*, 134 S. Ct. 1277, 188 L. Ed. 2d 298 (2014). "[T]here is a distinction 'between class members who were not harmed and those who could not have been harmed.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014) (quoting *Messner*, 669 F.3d at 825).

Here, ███████████████████████████████████████████████

Ex. 25, Product Shipment Database. ██████████████████████████████████

████████████████████████████████ *Id*. ████████████████████████████████

████████████████████████████████████████████████████████████

13

██████ Ex. 28, Supplemental Service Bench Database. ███████████████

███████████████████████████████████████████████████

Ex. 29, ONTRAC and BEX Databases.[7] ████████████████████████████

███████████████████████████████████████████████████

*Id.*

From this evidence, it is clear that the numerosity requirement is satisfied, with far more than 40 individuals in each of the proposed Classes and a more likely number for each proposed Class in the thousands.

### 2. Common Questions of Law and/or Fact Exist.

Parties seeking class certification must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The plaintiff must establish that class members have suffered the same injury, and that their claims depend on a common contention that is capable of class-wide resolution. *Dukes*, 131 S. Ct. at 2551.

The commonality standard is not high. *Lau v. Arrow Fin. Servs., LLC*, No. 06-3141, 2007 WL 1502118 (N.D. Ill., May 22, 2007) *14 (citation omitted). The Supreme Court has explained that, "'for purposes of Rule 23(a)(2), even a single common question will do.'" *Suchanek*, 764 F.3d at 755 (quoting *Dukes,* 131 S. Ct. 2541, 2556 (2011)). "'What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 131 S. Ct. at 2551) (alteration omitted). "The critical point is 'the need for conduct common to members of the class.'" *Id.* at 756 (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.* ("*IKO Roofing*"), 757 F.3d 599, 602 (7th Cir. 2014)); *see*

---

[7] ███████████████████████████████████████████████████
█████████████████████████████████████

*also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed class"). As such, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members" —as is true here— "there is a common question." *Suchanek*, 764 F.3d at 756 (citing *Pella Corp. v. Saltzman* ("*Pella II*"), 606 F.3d 391, 394 (7th Cir. 2010) (common questions whether product sold to all class members was inherently defective, whether defendant knew of this defect, and whether the product warranty covered the defect).

In the instant case, Plaintiffs allege a common course of conduct stemming from a common set of operative facts. Namely, all Ovens share the same inherent Defect (they are prone to failure during the self-cleaning cycle), and Defendant uniformly warranted, both expressly and impliedly, against the Defect. Moreover, Whirlpool knew or had imputed knowledge about the Defect and concealed the Defect from Plaintiffs and the putative class members, and this Defect uniformly impacts each putative class member's Oven. Plaintiffs also maintain that Whirlpool promised to (1) provide a self-cleaning oven free from defect and failed to honor that promise and (2) promised to pay for factory-specified parts and repair labor to correct defects in materials or workmanship. Common evidence will show that Whirlpool failed to honor these promises. Additionally, each of the Ovens failed to include a disclosure that the Ovens were prone to overheat and lock up when the self-cleaning cycle was used, rendering the Oven inoperable without costly repairs and labor. Finally, each Oven came equipped with a self-cleaning button, which, similar to the sticker in *Carriuollo v. General Motors Co*, is a misrepresentation prohibited by ICFA. 823 F.3d 977, 987 (11th Cir. 2016) (holding that under FDUPTA, a misleading sticker arguably was the direct cause of actual damages for the certified class). Any one of these common issues is sufficient to satisfy the Rule 23(a) commonality requirement.

In addition to factual questions, the classes share common legal claims as set forth more fully in Section III(D)(1) below.

### 3. *Plaintiffs' Claims are Typical of Those of Classes' Members.*

Next, "the claims or defenses of the representative parties" must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Beley v. City of Chicago*, No. 12 C 9714, 2015 WL 8153377, at *5 (N.D. Ill. Dec. 7, 2015) (citing *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)). Because commonality and typicality are closely related, a finding of commonality generally results in a finding that typicality also exists. *Arenson*, 164 F.R.D. at 664; *see also Keele*, 149 F.3d at 595 (acknowledging typicality is "closely related to the commonality requirement"). As such, "[t]he typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary." *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 627 (M.D. Fla. 2010); *see also Tidwell v. Schweiker*, 677 F.2d 560, 586 (7th Cir. 1982); *Phillips v. Joint Legislative Committee on Performance and Expenditure Review of the State of Mississippi*, 637 F.2d 1014, 1024 (5th Cir. 1981). Where class members and class representatives purchase the same defective products, they advance the same legal theories regarding those products, and the typicality requirement is satisfied. *See Saltzman v. Pella Corp.* ("*Pella I*"), 257 F.R.D. 471, 479 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (finding typicality where class members and class representatives advanced consistent legal theories arising out of defective windows that were prone to rotting).

The typicality requirement is satisfied where Plaintiffs' claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D.

211, 213 (N.D. Ill. 2002). Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). "The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole." *Marshall v. H & R Block Tax Servs. Inc.*, 270 F.R.D. 400, 405 (S.D. Ill. 2010). Establishing typicality "simply requires a showing . . . that others suffer from similar grievances." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981).

As with commonality, the uniformity of the Defect in the Class Ovens alone – namely, that the Oven has a defect which makes it prone to overheat and lock up when the self-cleaning cycle is used – is sufficient to show that Plaintiffs have met the typicality requirement.

### 4. *Plaintiffs and Counsel Will Fairly and Adequately Protect the Interests of the Classes.*

A class representative must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if this element is satisfied, courts in the Seventh Circuit use a three-pronged inquiry: (1) the representatives must "fairly and adequately protect the interests of the class," (2) the named representative must have "a sufficient interest in the outcome to ensure vigorous advocacy," and (3) "counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct prolonged litigation vigorously." *McKenzie v. City of Chicago*, 175 F.R.D. 280, 287 (N.D. Ill. 1997). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor* ("*Amchem*"), 521 U.S. 591, 625 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58, n.13, (1982)).

A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. *See Rosario,* 963 F.2d at 1018. A plaintiff's "factual background need not be identical to the other class members for him to adequately represent them." *Osada v. Experian Information Solutions, Inc.*, No. 11 C 2856, 2012 WL 1050067, at *6 (N.D. Ill. 2012). And by submitting to a deposition and producing documents, a proposed class representative has satisfied "the duties associated with a role the Seventh Circuit has labeled 'nominal.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (citing *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1080 (7th Cir. 2013)).

Each prong of the adequacy test has been met here. More particularly, no actual or potential conflicts exist between Plaintiffs and the Class members in this case. Plaintiffs have retained several law firms with substantial experience in class action and complex litigation to investigate and pursue claims in this case. *See* Ex. 31, Firm Resumes. Plaintiffs' discovery responses, document productions, and deposition testimony demonstrate that they have suffered the same problems as all putative class members who purchased Whirlpool's defective Ovens. *See supra* Section II.C. Plaintiffs and each Class member therefore have similar interests in establishing liability against Whirlpool. Also, by pursuing this litigation in one forum, Plaintiffs necessarily advance the common interests of all other Class members.

### D. Rule 23(b)(3)'s Requirements

Plaintiffs seek certification of several classes pursuant to Fed. R. Civ. P. 23(b)(3), which requires that there be (1) "questions of law *or* fact common to the members of the class predominate over any questions affecting only individual members" and that (2) "a class action is superior to other available means for the fair and efficient adjudication of the controversy." *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000). The objective behind these

two requirements is to promote economy and efficiency in actions that primarily involve monetary damages. *See* Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes. In making this determination, courts consider "the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." *Id*.

### 1. Common Issues of Law or Fact Predominate Over Any Questions Affecting Only Individual Members.

"Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Fournigault*, 234 F.R.D. at 646. "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class . . . [T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen*, 133 S. Ct. at 1191. In other words, the common questions need not be dispositive of the entire action because "predominate" under Rule 23(b)(3) does not equate with "determinative." Nor must those common questions be identical among the class. 7A Wright, Miller & Kane, Fed. Prac. & P., § 1778 at 122-23, *cited with approval by In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 287 (S.D. Ohio 1997).

Instead, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requirement "is satisfied when common questions represent a significant aspect of a case and can be resolved

for all members of a class in a single adjudication." *Messner,* 669 F.3d at 815. "When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Gillespie v. Equifax Info. Servs.*, LLC, No. 05 C 138, 2008 WL 4614327, at *6 (N.D. Ill. Oct. 15, 2008) (quoting *Young v. Cty. of Cook*, No. 06 C 552, 2007 WL 1238920, *7 (N.D. Ill. Apr.25, 2007)).

Significantly, in the *Butler I* and *Butler II* decisions, the Seventh Circuit held that the requirement of 23(b)(3) predominance had been met in a factually similar case involving a defective Whirlpool appliance that was prone to failure. *Butler I*, 702 F.3d 359.

The Seventh Circuit has held that predominance is satisfied where "[t]here is a single, central, common issue of liability: whether the [defendant's] washing machine was defective" and that "[e]ach defect [was] central to liability." *Butler II*, 727 F.3d at 801-802. Predominance is not destroyed by design changes because any buyer who purchased an Oven that experienced a failure after self cleaning "was harmed by a breach of warranty alleged in the complaint." *Id*. at 800. "Complications [that] arise from the design changes and from separate state warranty laws, [] can be handled by the creation of subclasses." *Id*.[8]

Likewise, as to the control-unit claim, the Seventh Circuit in *Butler II* also found predominance because the defendant knew about the problem with the central control unit, yet

---

[8] Similar to the facts in *Butler I* and *Butler II*, in *Glazer v. Whirlpool Corp.* (*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*), the Sixth Circuit upheld the district court's determination that liability questions common to the Ohio class—whether the alleged design defects in the Duets proximately caused mold to grow in the machines and whether Whirlpool adequately warned consumers about the propensity for mold growth—predominated over any individual questions. 722 F.3d 838, 859 (6th Cir. 2013). The Sixth Circuit further held that "'[a]s in *Amgen*, the certified liability class 'will prevail or fail in unison,' *id*. at 1191, for all of the same reasons we discussed [] in conjunction with the Rule 23(a) prerequisites of commonality and typicality.'" *Id*.

charged each owner of a defective machine hundreds of dollars to repair the central control unit,
and that after the defect was corrected in 2005, Sears continued to ship machines containing the
earlier-manufactured, defective units. *Id.* at 799. Furthermore, in *Butler I* and *Butler II*, the
Seventh Circuit held that individual factual damages issues do not provide a reason to deny class
certification when the harm to each plaintiff is too small to justify resolving the suits
individually:

> A class action is the more efficient procedure for determining liability and
> damages in a case such as this, involving a defect that **may have imposed costs
> on tens of thousands of consumers yet not a cost to any one of them large
> enough to justify the expense of an individual suit**. If necessary a determination
> of liability could be followed by individual hearings to determine the damages
> sustained by each class member [...]. But probably the parties would agree on a
> schedule of damages [...]. The class action procedure would be efficient not only
> in cost, but also in efficacy, if we are right that the stakes in an individual case
> would be too small to justify the expense of suing, in which event denial of class
> certification would preclude any relief.

*Butler I*, 702 F.3d at 362 (emphasis added).

In addition, the Seventh Circuit has rejected the argument class certification is precluded

where many class members suffered no injury:

> [Defendants] argued that most members of the plaintiff class had not experienced
> any mold problems. But if so, we pointed out, that was an argument not for
> refusing to certify the class but for certifying it and then entering a judgment that
> would largely exonerate Sears– a course it should welcome, as all class members
> who did not opt out of the class action would be bound by the judgment.

*Id*. at 799.

Predominance does not involve "counting noses" or "bean counting." *Id*. at 801. It would

be "incorrect" to decide predominance based on "whether there are more common issues or more

individual issues, regardless of relative importance." *Id*. Instead, "[a]n issue 'central to the

validity of each one of the claims' in a class action, if it can be resolved 'in one stroke,' can

justify class treatment." *Id*. (quoting *Dukes*, 131 S. Ct. at 2551). What "predominance requires"

21

is "a qualitative assessment." *Id*. The fundamental issue is practical: "the 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Duke*, 131 S. Ct. at 2566 (quoting *Amchem*, 521 U.S. at 623).

The Seventh Circuit further explained that the Court's analysis in *Comcast* is of limited significance because in most cases "there is no possibility" that "the damages [sought] could be attributed to acts of the defendants that are not challenged on a class-wide basis." *Butler II*, 727 F.3d at 800. Just as in *Butler II*, the classes proposed by Plaintiffs are comprised of buyers of a product (Ovens) prone to problems (failure of the Oven when the self cleaning cycle is used), and the damages are the result of purchasing such a machine. There are not "multiple theories" of damages that included theories that were inconsistent with the wrong alleged. *Id*.

Finally, though *Butler I* and *Butler II* involved consumer warranty claims, the same rationale for the efficiency of and certifying a class action is utilized in deceptive trade practices class actions. *Suchanek*, 764 F.3d at 759-60 (citing *Butler I* and *Butler II*). The importance of the class action device in vindicating the rights of consumers is one reason why the Supreme Court held that "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud," among others. *See Amchem*, 521 U.S. at 625; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

Issues such as improper installation and individual variances in the defect manifesting likewise do not defeat predominance. *Pella II*, 606 F.3d at 392; *see also IKO Roofing*, 757 F.3d at 601 (reversing because district court mistakenly held class could not be certified because different plaintiffs had different experiences with sub-standard roofing tiles).

"[T]here is an economy to class treatment of the question whether the [the products] suffer from a basic design defect, the resolution of which has the

potential to eliminate the need for multiple, potentially expensive expert testimony and proof that would cost considerably more to litigate than the claims would be worth to the plaintiffs."

*Pella II*, 606 F.3d at 394. Where there are common issues and the accuracy of the resolution of those issues "is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Id.* (citing *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003).

Here, numerous questions of fact and law predominate. The questions of fact include the following:

    (i)    Whether the Ovens are prone to fail when the self-cleaning feature is used;

    (ii)    Whether Whirlpool knew or should have known that the Ovens are prone to fail when the self-cleaning feature is used;

    (iii)    Whether Whirlpool uniformly failed to disclose, concealed, and/or misrepresented that the Ovens had a design defect that make the Ovens prone to fail when the self-cleaning feature is used;

    (iv)    Whether the Ovens are defectively designed and/or manufactured such that they are not suitable for their intended use;

    (v)    Whether Whirlpool was unable to repair the Ovens consistent with Defendant Whirlpool's warranty obligations;

    (vi)    Whether Plaintiffs and Class members damaged by purchasing Ovens with a defect that makes the Ovens prone to fail when the self-cleaning feature is used;

    (vii)    Whether Whirlpool failed to provide replacement Ovens that did not suffer from the defect; and

    (viii)    Whether the Ovens are likely to fail before their intended useful life as a result of their defective design and/or manufacture.

The questions of law that predominate are as follows:

    (i)    Whether Whirlpool violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA");

(ii)     Whether Whirlpool engaged in unfair or deceptive acts or practices when it concealed the defective nature of the Ovens from Plaintiffs and the Class;

(iii)    Whether Whirlpool breached express and implied warranties;

(iv)    Whether Whirlpool violated the Magnuson Moss Act; and

(v)     Whether Whirlpool was unjustly enriched.

In this case, Plaintiffs and the Class Members' damages are the result of a common cause – specifically, Whirlpool's self-cleaning oven is prone to fail when the self-cleaning feature is used. *Butler II*, 727 F.3d at 801 (holding that class certification is appropriate where "[t]here is a single, central, common issue of liability: whether the [product] is defective"). Given that Plaintiffs are pursuing the certification of multiple classes, the predominance of common issues is discussed for each class as follows for ease of reference:

**Multi-State Express Warranty Claim**:[9] Common evidence of the existence of a Defect, that the Defect existed when the Oven left Whirlpool's control, that the product warranty covers the defect, that Whirlpool failed to repair the Defect, and that the warranty fails of its essential purpose.

**Multi-State MMWA Claim**:[10] Common evidence of the existence of a Defect, and that the Defect existed when the Oven left Whirlpool's control; that the product warranty covers the

---

[9] *See*, *e.g.*, *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) (holding that the predominance requirement was met because plaintiff and class received the same allegedly defective product, and all had the same express warranty claim that the car did not conform to the written warranty).

[10] Ex. 1, Table of Breach of Express Warranty State Law Survey. Even if complications arise from separate state warranty laws, those differences can be handled by the creation of subclasses. *Butler II*, 727 F.3d at 802 (7th Cir. Ill. 2013) (citing *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364 (7th Cir. 2012)).

Defect, that Whirlpool failed to repair the Defect, and that the warranty fails of its essential purpose.

**Illinois ICFA Claim**:[11] Common evidence of the existence of a Defect, that the Defect existed when the Oven left Whirlpool's control, that Whirlpool knew or should have known of the Defect as early as 2000, that Whirlpool concealed the Defect at the point-of-sale and throughout the ownership of the Ovens, that Whirlpool failed to disclose that the Oven's self-cleaning button instead of a self-destruct button, and that Whirlpool is unable to fix the Oven's Defect; and evidence of diminished value of the Oven.

**Illinois Breach of Implied Warranty Claim**:[12] Common evidence of the existence of a Defect, and that the Defect existed when the Oven left Whirlpool's control.

_____

[11] "Illinois courts have held that 'an omission or concealment of a material fact in the conduct of trade or commerce' by a manufacturer can constitute consumer fraud." *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1002 (N.D. Ill. 2008) (citing *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 799 (2006). Plaintiffs are not required to prove the existence of a common law duty to disclose or actual reliance. *Id.* (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996); *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 421 (1998)). "Concealment is actionable where it is employed as a device to mislead." *Id.* (*citing Connick*, 174 Ill. 2d at 505. *See also Pappas*, 363 Ill. App. 3d at 805 (""[P]laintiffs allege that Pella, even though aware of a material defect, never notified its customers that the aluminum clad wood windows were defective. In effect, plaintiffs allege they relied on Pella's concealment by silence. Requiring anything more would eviscerate the spirit and purpose of the Consumer Fraud Act."); *see also Connick.*, 174 Ill. 2d at 505 (allowing consumer fraud claim to go forward where plaintiff alleged that Suzuki committed consumer fraud violation based on a material omission by Suzuki).

[12] In Illinois, "[i]n order to prove a breach of an implied warranty of merchantability, plaintiff must prove [1] that [the product] was defective and [2] that the defect(s) existed when the [product] left defendant's control." *Alvarez v. Am. Isuzu Motors*, 321 Ill. App. 3d 696, 702-03 (2001). *See also Butler II*, 727 F.3d at 797-98 (reversing district court denial of class certification of suit based on the breach-of-warranty laws of six states arising from alleged defects in Kenmore-brand Sears washing machines sold in overlapping periods beginning in 2001 and 2004 because common question included whether the Sears washing machine was defective); *Pella II*, 606 F.3d at 394 (common questions whether product sold to all class members was inherently defective, whether defendant knew of this defect, and whether the product warranty covered the defect).

**Illinois Breach of Express Warranty Claim**:[13] Common evidence of existence of a Defect, that the Defect existed when the Oven left Whirlpool's control, that the product warranty covers the defect, that Whirlpool failed to repair the Defect, and that the warranty fails of its essential purpose.

**Illinois Unjust Enrichment Claim**:[14] Common evidence of existence of a Defect, that the Defect existed when the Oven left Whirlpool's control, that the product warranty covers the

---

[13] An express warranty is created where (1) the seller makes an affirmation of fact or promise; (2) that relates to the goods being sold; and (3) becomes part of the basis of the bargain between the parties. See 810 ILCS 5/2-313; *see also*, *e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905 (N.D. Ill. 2013). To maintain an express or implied warranty claim under Illinois law, a plaintiff ordinarily must be in privity of contract with the defendant. *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *5 (N.D. Ill. Nov. 13, 2014). However, an exception exists under Illinois law making a manufacturer may be liable to a buyer for breach of an express warranty for representations or promises made on the manufacturer's documents or other materials. *Id.* In *Bietsch v. Sergeant's Pet Care Prods., Inc.*, the defendant's statements made directly on the Pur Luv Treats packaging were sufficient to allow the plaintiffs to maintain their express warranty claims under Illinois. No. 15 C 5432, 2016 WL 1011512, at *6 (N.D. Ill. Mar. 15, 2016) (citing *Mednick*, 2014 WL 6474915, at *5 (buyer not required to give notice where it alleged seller knew defect ran to all goods); *see also Daffin*, 458 F.3d at 554 (holding that the predominance requirement was met because plaintiff and class received the same allegedly defective product, and all had the same express warranty claim that the car did not conform to the written warranty).

[14] A consumer may bring suit under the MMWA against any supplier, warrantor, or service contractor who fails to comply with an obligation under a written warranty or service contract. *See* 15 U.S.C. § 2310(d)(1) (emphasis added). Under the Act, a written warranty is:

> (A) Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time; or

> (B) Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6). There is no requirement under the MMWA that the consumer demonstrate privity with the warrantor to bring an express warranty claim. *Id.*; *see also In re McDonald's*

Defect, that Whirlpool failed to repair the Defect, that Whirlpool knew or should have known of the Defect as early as 2000, that Whirlpool concealed the Defect at the point-of-sale and throughout the ownership of the Ovens, that Whirlpool failed to disclose that the Oven's self-cleaning button instead of a self-destruct button, and that Whirlpool is unable to fix the Oven's Defect; and evidence of diminished value of the Oven, and that Whirlpool profited from this wrongful conduct.

**South Carolina Unjust Enrichment Claim**:[15]   Common evidence of the existence of a Defect, that the Defect existed when the Oven left Whirlpool's control, that the product warranty covers the Defect, that Whirlpool failed to repair the defect, that Whirlpool knew or should have known of the Defect as early as 2000, that Whirlpool concealed the Defect at the point-of-sale and throughout the ownership of the Ovens, that Whirlpool failed to disclose that the Oven's self-cleaning button was instead a self-destruct button, that Whirlpool is unable to fix the Oven's Defect, that the Oven has a diminished value as a result of the Defect, and that Whirlpool profited from this wrongful conduct.

---

*French Fries Litig.*, 503 F.Supp.2d 953, 958 (N.D. Ill. 2007) ("A written warranty as defined under the MMWA does not require privity"). Also, the notice requirement does not apply if the manufacturer knew of the defect at the time of sale. *See Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F.Supp.2d 833, 837 (N.D. Ill. 2008) ("Direct notice is not required [if] the seller has actual knowledge of the defect of the particular product"). Even if there is a notice requirement, a defendant must show that the plaintiff's failure to provide notice caused defendant some prejudice. *Wright v. Brooke Group Ltd.*, 114 F. Supp. 2d 797, 830 (N.D. Iowa 2000).

[15] A South Carolina unjust enrichment class has been certified when the common issue of whether drivers were employees could be determined from the Operating Agreement and corporate documents, without reference to individual circumstances. *In re FedEx Ground Package Sys., Empl. Practices Litig.*, 273 F.R.D. 424, 473 (N.D. Ind. 2008).

## 2. A Class Action Is Superior to Other Available Means for the Fair and Efficient Adjudication of the Controversy.

Plaintiffs must also demonstrate that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. *Id.*

Manageability is a central question in the superiority analysis. Fed. R. Civ. P. 23(b)(3)(D); *see also Eisen*, 417 U.S. at 164 (noting that manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit"). But it is a "well-settled presumption" that courts should not refuse to certify a class merely on the basis of manageability concerns. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (noting that failure to certify a class action under Rule 23(b)(3) solely on manageability grounds is generally disfavored)).

The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' and the other Class members' claims. Here, there are many potential claimants in this case, and their Ovens all suffer from the Defect at issue. Class treatment of the issues common to those claims would be significantly more efficient than adjudicating them on individual bases. Every person who purchased an Oven will still have to obtain in every instance identical discovery, depose the same fact witnesses, retain experts to opine on the same issues, and brief the same legal challenges. Requiring every claimant to engage in that exercise on an

individual basis would result in an immeasurable waste of resources by all involved without producing significant benefits. *See Smith v. Greystone Alliance LLC*, No. 09 C 5585, 2011 WL 30745 at * 2 (N.D. Ill. Jan 25. 2011) (citing *Carnegie*, 376 F. 3d at 661). In addition, individual litigation would present the potential for varying, inconsistent, and contradictory results while magnifying the delay and expense to all parties and to the court system, resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation involving identical legal and factual issues. Thus, absent a class action, it would be difficult, if not impossible, for the individual Class members here to obtain effective relief.

### E.    Ascertainability

In addition to the above factors, numerous courts also have recognized two "implicit" prerequisites: 1) that the class definition is drafted to ensure that membership is "capable of ascertainment under some objective standard;" and 2) that all class representatives are in fact members of the proposed class. *See*, *e.g.*, *Fournigault,* 234 F.R.D. at 644-45. "[C]ourts have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind. In addressing this requirement, courts have sometimes used the term 'ascertainability.'" *Mullins*, 795 F.3d at 657. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*. at *4. The Seventh Circuit recently rejected the heightened ascertainability requirement promulgated by other courts, finding that it "goes much further than the established meaning of ascertainability and in our view misreads Rule 23." *Id*. at 662.

There are three purposes of the ascertainability requirement. First, it prevents vagueness, which "is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Id*. at 660 (citation omitted).

Thus, the class definition must "identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id*. (citation omitted). Next, ascertainability requires that the class is defined by objective, rather than subjective criteria, or "in terms of conduct . . . rather than a state of mind." *Id*. (citation omitted). Finally, a class should not be "defined in terms of successes on the merits," where "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id*. (citation and quotation marks omitted).

Here, the class definitions identify particular groups (individuals who purchased, at retail price and for personal use, a Whirlpool Oven with a self-cleaning mechanism), harmed during a particular time frame (1998 to present), in a particular location (in multiple states, in Illinois, or in South Carolina), in a particular way (breach of express warranty, implied warranty, Magnuson Moss, unfair or deceptive trade practices, and unjust enrichment). Next, the Classes are defined by objective criteria, namely the purchase of a Class Oven. Finally, the Classes are not "defined in terms of successes on the merits," but by whether they purchased the Oven. As a result, the definitions meet the requirements as set forth in *Mullins*. *Id*. at 660.

In the instant case, Whirlpool's own records provide numerous objective criteria for ascertaining the class, including: (1) Whirlpool's Shipment database; (2) Whirlpool's Siebel and/or eCRM Database; (3) Service Bench Claim database; (4) Whirlpool's ONTRAC and/or BEX Claims Database; and (5) customer records and affidavits.[16]

---

[16] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Ex. 15, Whirlpool Supp. Responses at 9.

a. **Whirlpools' Product Shipment Data Database**

███████████████████████████████████████████████████████████

██████████████████████████████████████████ *See* Ex. 25, Product Shipment

Database.

b. **Whirlpool' Siebel Database, Service Bench Databases, and eCRM database**

Whirlpool maintains a call center database. Ex. 5, Deposition of Jennifer Karber

("Karber Depo.") at 23:11-21. █████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████ ███████████████████████████████ *Id.*; Ex. 26, Siebel

Database; Ex. 27, Service Bench Database; Ex. 28, Supplemental Service Bench Database; Ex.

30, eCRM Database.

c. **Whirlpool's Service Bench Databases**

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

Ex. 27, Service Bench Database; Ex. 28, Supplemental Service Bench Database. ████████

███████████████████████████████████████████████████████████

██████████████████ *Id.*

———————————————————————————————————————

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████

*Id.* at 16.

### d. **ONTRAC and BEX Claims Databases**

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Ex. 29, ONTRAC and BEX Claims

Databases; Ex. 5, Karber Depo. at 23:21. ████████████████████████████████

███████████████████████████████████████████ *Id.*

### e. **Customer Records and Affidavits**

Finally, class members who currently possess the Oven, warranty information, sales

receipt, and/or product manuals identifying the model and/or serial numbers of the Class Oven

purchased, along with an affidavit identifying state of residence, if necessary, may submit such

documentation to evidence membership in one of the Classes.

In the instant case, there is no question that the class is readily and fully ascertainable.

Numerous sets of objective data exist identifying the model numbers and serial numbers of ovens

purchased by the Classes. Because the Classes are ascertainable, there is no requirement that

Plaintiffs attach names to the ovens at this point in the process. *Boundas v. Abercrombie & Fitch*

*Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012). Whether or not every single individual has a

valid claim has no bearing whatsoever on whether the class is ascertainable. "Defining a class so

as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is

more of an art than a science. Either problem can and often should be solved by refining the class

definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at

825.

### F. **Rule 23(c)(4) Requirements**

Plaintiffs respectfully request, in the alternative, to proceed under Rule 23(c)(4), which

provides that "[w]hen appropriate, an action may be brought or maintained as a class action with

respect to particular issues." Fed. R. Civ. P. 23(c)(4).  *See*, *e.g.*, *McMahon v. LVNV Funding,*

*LLC*, 807 F.3d 872, 876 (7th Cir. Dec. 8, 2015) ("It is well established that, if a case requires determinations of individual issues of causation and damages, a court may 'bifurcate the case into a liability phase and a damages phase.'") (quoting *Mullins*, 795 F.3d at 671); *Butler II*, 727 F.3d at 800 (noting this is a "sensible way to proceed"); *Carnegie*, 376 F.3d at 661 ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.").

For particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues. Regardless of whether an action as a whole satisfies Rule 23(b)(3)'s predominance requirement, courts may employ Rule 23(c)(4) to certify a class on a particular issue." *Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 256 (S.D.N.Y. 2010); *see also* 6 NEWBERG ON CLASS ACTIONS § 18:7 ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4)."); 7B Wright & Miller Fed. Prac. & P. § 1790 ("Subdivision (c)(4) is particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action . . . The theory of Rule 23(c)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member.")).

The purpose of Rule 23(c)(4) is to promote judicial economy by litigating common issues to the class and the proper inquiry under the Rule is whether resolution of a common issue would materially advance the disposition of the litigation as a whole. *See Butler II*, 727 F.3d at 800. Here, the resolution of any of the common issues, particularly the common questions relating to

Whirlpool's liability under each of Plaintiffs' claims, would materially advance the disposition of the litigation as a whole. *Id*. Indeed, making any of these determinations on a class wide basis instead of re-determining these issues at each individual hearing would "further the goals of efficiency and uniformity in decision-making that underlie Rule 23." *Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2015 WL 1087897, *7 (N.D. Ill. Mar. 10, 2015); *see also Kartman v. State Farm Mut. Auto. Ins. Co..*, 634 F.3d 883, 895 (7th Cir. 2011) ("A damages class may be certified under Rule 23(b)(3) and particular issues identified for resolution on a class-wide basis pursuant to Rule 23(c)(4)."); *Pella II*, 606 F.3d at 394 ("A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments."); *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008) (observing that "Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues'").

Several of the common factual and legal issues, especially those relating to Whirlpool's liability, are not only "separate and severable" from other individualized issues, such as damages, but also from one another, and the resolution of these issues, as well as the common proofs used to resolve the issues, will be the same across the class. Therefore, "holding a single proceeding to resolve the common issues 'in one stroke' would be most efficient and materially advance the litigation because subsequent courts would be spared from having to adjudicate the common issues 'anew in each case.'" *Jacks*, 2015 WL 1087897. at *7 (quoting *Butler II*, 727 F.3d at 801)

Here, since common issues like "whether the Ovens contain a defect in that the Ovens are prone to fail when the  self-cleaning cycle is used," "whether the defect existed at the time it left Defendant's control," and "whether Defendant concealed the defect from Plaintiffs and the

proposed class" predominate, particular issues identified for resolution on a class-wide basis can be certified pursuant to Rule 23(c)(4) and resolved on a classwide basis.

### G.     Alternative Rule 23(b)(2) Requirements

#### 1.     Legal Standard

Rule 23(b)(2) allows for certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015).

> "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."

*Dukes*, 131 S. Ct. at 2557 (internal citation omitted).

Plaintiffs can seek certification of a class under Rule 23(b)(2) and seek class-wide injunctive relief on those claims that are not susceptible to class certification under Rule 23(b)(3). *See*, *e.g.*, *Pella II*, 606 F.3d at 395 (approving certification of a class under Rule 23(b)(2)). Just as in *Pella*, class members here who have not had to get their Ovens serviced because the self-cleaning feature has not failed and broken their Ovens, but might in the future, are properly members of such a class. "Such purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty

to replace the [Ovens] when they manifest the defect, or final equitable relief." *Id*. at 392. Also, as in *Pella*, "[i]f the district court finds in favor of the class and enters all six declarations, the cumulative effect will be an entitlement to have their [Ovens] replaced [or serviced], and the (b)(2) class will benefit uniformly from the declarations." *Id.*

### 2.    *Relief Sought*

The relief sought on behalf of the (b)(2) subclasses is not duplicative of the monetary damages sought on behalf of the putative (b)(3) class members, whose Ovens have already manifested defects and who "are properly members of the (b)(3) class because they require the award of damages to make them whole." *Id*. Moreover, to the extent some (b)(2) class members seek money damages "arising from the alleged defect," their claims "will not be barred by *res judicata*." *Pella I*, 257 F.R.D. at 483. Instead, they "are properly members of the (b)(3) class because they require the award of damages to make them whole." *Pella II*, 606 F.3d at 395. Thus, none of the due process concerns raised in *Dukes* exist here. There is simply no possibility "that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from." *Dukes*, 131 S. Ct. at 2559. As a result, the requirements of Rule 23(b)(2) are met.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification, certifying the Classes defined herein, appointing Plaintiffs Beth Kljajic and Katherine Cates as Class Representatives, and appointing their retained counsel Michael Flannery of Cuneo Gilbert & LaDuca LLP and Jasper Ward of Jones Ward PLC as Class Counsel.

Dated: October 3, 2016                    Respectfully submitted,

*/s/ Michael J. Flannery*
Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314-226-1015
Email:  mflannery@cuneolaw.com

Charles J. LaDuca
Katherine Van Dyck
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., Suite 200
Washington, DC 20016
Telephone:  202-789-3960
Email: charles@cuneolaw.com
Email: kvandyck@cuneolaw.com

Corey D. Sullivan
SULLIVAN LAW LLC
1814 E Eagle Bay Drive
Bloomington, Indiana 47401
Telephone: 314-971-9353
Email: sullivcd@gmail.com

Francis Joseph Flynn , Jr.
LAW OFFICE OF FRANCIS J. FLYNN, JR.
6220 W. 3rd Street, #415
Los Angeles, CA 90036-3173
Telephone:  855-805-9005
Email: francisflynn@gmail.com

Jasper D. Ward IV
Alex C. Davis
(Seeking Pro Hac Vice Admission)
JONES WARD PLC
312 S. Fourth Street 6th Floor
Louisville, KY 40202
Telephone: 502-882-6000
Email: jasper@jonesward.com
Email: alex@jonesward.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2016, I caused the foregoing to be served through the Court's ECF system, to be served on all counsel of record who are participants in the Court's CM/ECF system.


*/s/ Michael J. Flannery*
Michael J. Flannery