# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **BETH KLJAJIC AND KATHLEEN CATES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**PLAINTIFFS,**<br><br>**VS.**<br><br>**WHIRLPOOL CORPORATION,**<br><br>**DEFENDANT.** | **CASE NO. 1:15-CV-05980-ASE**<br><br>**Honorable Amy J. St. Eve** |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.      PLAINTIFFS SATISFY RULE 23(b)(3) ....................................................... 2

      A.     The Defect ................................................................................................ 2

            1.     Whether the Ovens contain the same Defect is a single, overriding, and central common issue. ........................................................... 2

            2.     Plaintiffs need only prove the Ovens do not function as intended. ............ 6

            3.     Plaintiffs offer common evidence in support of their claims. ..................... 8

      B.     The Warranty Claims ............................................................................. 10

            1.     Privity is not required. ............................................................................. 11

            2.     Notice is not required. ............................................................................. 14

      C.     The ICFA Claim. ................................................................................... 14

            1.     Reliance cannot defeat certification of Plaintiff Kljajic's ICFA claim. ..................................................................................................... 15

            2.     Materiality and causation will be proven on a class-wide basis. ............... 16

            3.     Whirlpool's authority is distinguishable. .................................................. 18

      D.     The Magnuson-Moss Warranty Act Claims ......................................... 18

      E.     Unjust Enrichment ................................................................................. 19

      F.     Damages ................................................................................................. 19

      G.     Superiority. ............................................................................................. 21

II.     PLAINTIFFS SATISFY RULE 23(a) .......................................................... 22

      A.     Whirlpool's Standing Argument is Premature. ..................................... 22

      B.     Plaintiffs Are Adequate Class Representatives. .................................... 24

      C.     Plaintiffs are Typical Class Members ................................................... 25

III.     PLAINTIFFS SATISFY RULE 23(b)(2) ............................................................26

     A.     The Relief Sought is Not Duplicative ......................................................26

     B.     Plaintiffs Have Standing .........................................................................28

     C.     Whirlpool's Authority Is Distinguishable...............................................29

IV.     PLAINTIFFS SATISFY RULE 23(c)(4)..........................................................29

V.     WHIRLPOOL'S BRIEF EXCEEDS THE ALLOTED PAGE LIMITS ...........................30

CONCLUSION.....................................................................................................30

CERTIFICATE OF SERVICE ...................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Addressograph-Multigraph Corp. v. Zink*, 329 A.2d 28 (Md. App. Ct. 1974)........................25

*Adventist Christian Sch., v. Carrier Corp.*, 242 F.R.D. 568 (W.D. Wash. 2007) ..................10

*AES Tech. Sys., Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1978)...........................20

*Alvarez v. Am. Isuzu Motors*, 749 N.E.2d 16 (Ill. App. Ct. 2001) ............................................7

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .................................................................22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ...........................5, 14

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659 (N.D. Ill. 1996)................................................................................................................15

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008)......................................................20, 22, 30

*Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910 (Ill. 2007)............................................17

*Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016)......................................................................................................11

*Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016) ................................19, 20

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013). ...............................2, 5, 21, 30

*Cabral v. Supple, LLC*, No. 12-cv-0085, 2012 WL 4343867 (C.D. Cal. Sept. 19, 2012) ................................................................................................................28

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .....................................16, 20

*Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980).....................20

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426 (7th Cir. 2015) .......................................................................................................14

*Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999) ...........................................19

*Cohan v. Medline Indus.*, No. 14 CV 1835, 2014 WL 4244314 (N.D. Ill. Aug. 27, 2014) ...........................................................................................................22, 23

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ...............................................................20

*Conrad v. Nutramax Labs., Inc.*, No. 13 C 3780, 2013 WL 5288152 (N.D. Ill. 2013).....27, 28

*De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009) .................................................................17

*Elward v. Electrolux Home Prods.*, No. 15 C 9882, ___ F. Supp. 3d ___, 2016 WL 5792391 (N.D. Ill. Oct. 4, 2016).................................................................................12, 13

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ......................................................................28

*Flynn v. FCA US LLC*, No. 15-cv-0855, 2016 WL 5341749 (S.D. Ill. Sep. 23, 2016) ..........12

*Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 42 Ill. Dec. 25 (Ill. App. Ct. 1980).................................................................................................13

*Galoski v. Stanley Black & Decker*, No. 11-cv-269, 2014 WL 4064016 (N.D. Ohio Aug. 14, 2014) ..........................................................................................................26

*Garner v. Boehringer Ingelheim Pharm., Inc.*, 888 F. Supp. 2d 911 (S.D. Ill. 2012) ...............6

*Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill., 1999)..................................................................15

*George v. Kraft Foods Global*, 251 F.R.D. 338 (N.D. Ill. 2008) ...........................................26

*Gerber Prods. Co.*, 178 F.R.D. 493 (N.D. Ill. 1998) ...............................................................28

*Gratz v. Bollinger*, 539 U.S. 244 (2003)..................................................................................23

*Henderson v. Gruma Corp.*, No. 10-cv-4173, 2011 WL 1362188 (C.D. Cal. April 11, 2011) ..............................................................................................................................28

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ...........................................27

*Hurd Millwork Co.*, 249 F.R.D. 316 (E.D. Wis. 2008)...........................................................25

*In Prairie Production, Inc. v. Agchem Division-Pennwalt Corp.*, 514 N.E.2d 1299 (Ind. App. Ct. 1987)......................................................................................................25

*In re Aftermarket Filters Antitrust Litig.*, MDL Docket No. 1957, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009).................................................................................................22

*In re IPO*, 471 F.3d 24 (2d Cir. 2006) .....................................................................................21

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652 (S.D. Cal. 2010) .............15

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.* 155 F. Supp. 3d 772 (N.D. Ill. 2016)................................................................................11, 12, 16, 20

*In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2007 WL 898600 (N.D. Ill. Mar. 21, 2007) .........................................................................................................................8

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*, 722 F.3d 838 (6th Cir. 2013) ..................................................................................................3, 5

*Jacks v. DirectSat USA*, LLC, No. 10-cv-1707, 2015 WL 1087897 (N.D. Ill. Mar. 10, 2015) ......................................................................................................................30

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999)..................................27

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ..............26

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ..........................................................23

*Keith v. Ferring Pharms., Inc.*, No. 15 C 10381, 2016 WL 5391224 (N.D. Ill. Sep. 27, 2016) ......................................................................................................................18

*Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) .........................14

*Lemon v. Int'l Union of Operating Engrs., Local No. 139*, 216 F.3d 577 (7th Cir. 2000) ......................................................................................................................27

*Leonard v. Sears, Roebuck & Co.*, 115 F. Supp. 3d 934 (2015).........................7, 25

*Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944 (N.D. Ill. 2007) .......................8

*Mednick v. Precor, Inc.*, No 14 C 3624, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014) ..........11

*Mejdreck v. The Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002) ................................................................................................................26

*Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329 (Ill. 2008) .....................................7

*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011).........................................23

Mullins v. Direct Digital, LLC, 795 F.3d 654 (7th Cir. 2015) ..........................19, 21

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334 (Ill. App. Ct. 2007) .........................................................................................................................6

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002) ...........................................15

*Ortiz v. Fibreboard*, 527 U.S. 815 (1999) ...............................................................22

*Panache Broadcasting of Penn., Inc. v. Richardson Elecs., Ltd.*, No. 90 C 6400, 1999 WL 342392 (N.D. Ill. May 14, 1999)......................................................................19

*Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002) ..............25

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) .............................................29

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) .......................................................23

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ................................................... passim

*Peterson v. H & R Block Tax Services, Inc.*, 174 F.R.D. 78 (N.D.Ill., 1997)...................15, 16

*Phillips v. Ford Motor Co.*, No. 99-L-1041, 2003 WL 23353492 (Ill. Cir. Ct. Sept. 15, 2003) ...........................................................................................................................16

*Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch.*, 976 N.E.2d 415 (Ill. App. Ct. 2012) ...................................................................28

*Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch.*, 981 N.E.2d 1003 (2012)............................................................................................28

*Rhodes Pharmacal Co. v. Cont'l Can Co.*, 219 N.E.2d 726 (Ill. App. Ct. 1966)...................13

*Rowe v. Bankers Life & Cas. Co.*, No. 09-cv-491, 2012 WL 1068754 (N.D. Ill. Mar. 29, 2012) ...................................................................................................................16

*Scheuler v. Aamco Transmissions, Inc.*, 571 P.2d 48 (Kan. App. Ct. 1977) ..........................24

*Schilke v. Wachovia Mort., FSB*, 820 F. Supp. 2d 825 (N.D. Ill. 2011) .................................27

*Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010)..................................................................19

*Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ......................................................17

*Sunny Indus. v. Rockwell Int'l Corp.*, 175 F.3d 1021 (Table), 1999 WL 220109 (7th Cir. 1999) ....................................................................................................................20

*Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742 (7th Cir. 2008)....................................18

*Tylka v. Gerber Prod. Co.*, 178 F.R.D. 493 (N.D. Ill. 1998)........................................... passim

*Wagner v. NutraSweet Co.*, 95 F.3d 527 (7th Cir. 1996).........................................................25

*Westefer v. Snyder*, Civil Nos. 00-162, 00-708, 2006 WL 2639972 (S.D. Ill. Sept. 12, 2006) ...........................................................................................................................26

## Treatises

Newberg on Class Actions 3d § 4.26.......................................................................................16

# INTRODUCTION

The central, common issue in this litigation is that Whirlpool's Ovens fail when the self-cleaning function is run because the overarching design results in "███████████████████ ████████████████" Ex. 1, Report of Albert deRichemond ("deRichemond Report") at 11. Whirlpool's opposition to class certification is essentially an effort to obscure this central, common question in a maelstrom of facts about various design changes it made to the Ovens. Whirlpool's obfuscation should be rejected.

As discussed in detail by Plaintiffs' expert, many of the design changes made by Whirlpool, along with the 16 Technical Service Pointers ("TSP") it issued, were failed attempts to prevent the Therm-O-Disc ("TOD") from tripping during self-cleaning. However, ████████████████ ████████████████████████████████████████████████. Ex. 2, Rebuttal Report of Albert deRichemond ("deRichemond Rebuttal") at 1. "████████ ████████████████████████████████████████████████ ████████████████████████████████████████" Ex. 1, deRichemond Report at 11. This "███████████████████████████████" is the design defect ("Defect") that is common to the Ovens. Ex. 2, deRichemond Rebuttal at 1. "███ ████████████████████████████████████████████████ ████████████████████" Ex. 2, deRichemond Rebuttal at 1. Whether this Defect exists, whether Whirlpool failed to disclose its existence to consumers, and whether Whirlpool breached its express and implied warranties by failing to correct it are all common issues that predominate over any individualized issues identified by Whirlpool.

Whirlpool also contends that individualized issues predominate as to IKEA Ovens because of various installation issues, essentially blaming IKEA's installation methods for causing the problem. However, this Court issued an order barring Whirlpool from defending itself by shifting

liability to IKEA.  Order (Dkt. 140) ("The Court accepts Whirlpool's representation that it does not intend to defend this case by blaming IKEA. Based on this representation, the Court precludes Whirlpool from asserting this defense in this case.").  Precluding Whirlpool from blaming IKEA's installations for the problems experienced by Plaintiffs and the putative class members was a key factor in the Court's decision denying leave to file an amended complaint adding IKEA as a defendant.  *See id.*  Consistent with that Order, Whirlpool should not be allowed to defeat certification by blaming IKEA for causing the problem.

In short, central, common issues of liability predominate in this case, and Plaintiffs have satisfied the requirements of Rule 23(b)(3).  Moreover, for the reasons set forth below and in Plaintiffs' original memorandum, the elements of Rule 23(a) are satisfied, and certification of the classes proposed by Plaintiffs is both warranted and appropriate.

## ARGUMENT

## I.      PLAINTIFFS SATISFY RULE 23(b)(3)

### A.      The Defect

#### 1.      *Whether the Ovens contain the same Defect is a single, overriding, and central common issue.*

The Seventh Circuit provides that predominance is satisfied where "[t]here is a single, central, common issue of liability: whether the [defendant's] washing machine was defective" and that "[e]ach defect [was] central to liability."  *Butler v. Sears, Roebuck & Co.* ("*Butler II*"), 727 F.3d 796, 801-02 (7th Cir. 2013).  As in the cases of *Pella*, *Butler*, and *Whirlpool*, Plaintiffs have presented evidence that the single, central, common issue in this case is whether the Ovens "███

███████████████████████████████████████████████████████████████

███████"  Ex. 1, deRichemond Report at 11.  *See Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) (upholding class certification where "the common predominate issue of

whether the windows suffer from a single, inherent design defect leading to wood rot is the essence of the dispute and is better resolved by class treatment"); *Butler II*, 727 F.3d at 801 (certifying a class brought against a washing machine manufacturer and finding predominance where there was "a single, central common issue of liability: whether the Sears washing machine was defective"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.* ("*Whirlpool*"), 722 F.3d 838, 859 (6th Cir. 2013) (finding "that liability questions common to the Ohio class-whether the alleged design defects . . . caused mold to grow in the machines and whether Whirlpool adequately warned consumers about the propensity for mold growth-predominate over any individual issues").

Indeed, the core operative facts underlying Plaintiffs' claims are that the Ovens suffer from the same inherent Defect that cause the Ovens to become unusable when the self-cleaning function is run. Because the key aspects of the Defect do not vary by platform or model, identical evidence regarding the Defect and Whirlpool's pattern or practice regarding the design, manufacture, and sale of the Ovens underlie Plaintiffs' (and all of the proposed class members') case in chief and, therefore, would have to be relitigated in each individual trial if the class here is not certified. *See Pella Corp. v. Salzman*, 606 F.3d 391 (identical evidence required to prove alleged design defect in aluminum clad windows). Accordingly, the resolution of the single, central, common issue will resolve most if not all of the claims of Plaintiffs and class members.

Though Whirlpool identifies an alleged 322 models in the Vision II platform, Whirlpool cannot and does not dispute that all Ovens on the Vision II platform have the same self-cleaning function and are prone to failure when the self-cleaning function is run. *See* Class Cert. Memo. at Section II.A-B. Importantly, Whirlpool admits that the Ovens share several key design features,

*e.g.,* ███████████████████,[1] ████████,[2] and █████████████████████████████████
███████.[3]  Additionally, ███████████████████████████████████████████████████████
████████████████████████████████████████████████,[4] and █████████████████████████
███████.[5]  *See* deRichemond Report at 1, 11.  The longstanding Defect at issue in this litigation

causes the TOD to open, and the Ovens to not operate after a self-clean cycle or to completely stop

during the self-clean cycle.  *See generally* Ex. 5, Technical Service Pointers.

Variations in the Ovens' design and components do not change this.  In fact, Whirlpool's

decision to implement those design changes raises another common issue in this litigation:  did the

changes correct the Defect?  This is because the changes were in fact made in an effort to address

the failures during self-cleaning that Whirlpool had seen.  For example, Whirlpool's December

2005 and March 2007 TSPs provide guidance regarding the Defect at issue.  Ex. 5, Technical

Service Pointers.  In December of 2008, January 2011, and March 2011, a single TSP went out for

all Whirlpool and KitchenAid Built-in Single and Double Ovens built prior to code date XW49

(December 2008) and KitchenAid 24" Built-In ovens (identifying the 91 Model Numbers Effected

plus any and all variations in model number due to color differences).  Ex. 5, Technical Service

Pointers.  This is because all Ovens share the common, inherent characteristic ████████

---

[1] *See* Ex. 11, Deposition of Paul Taylor ("Taylor Dep.) at 225:2-5; Ex. 9, 30(b)(6) Deposition of Whirlpool Corp. at 11:5-10 ("The models would look different, but they're still on that same chassis, because once you take the door off and the console off, they're the literally the same; not necessarily exactly the same, because they would have different lighting.").

[2] Ex. 8, 30(b)(6) Deposition of Whirlpool Corp. ("Hammes Dep.") at 99:22.

[3] *Id*. at 104:14-19.

[4] "The Self-Cleaning cycle uses very high temperatures, burning soil to a powdery ash." Ex. 12, Cates Oven Use & Care Guide ("Cates Oven Guide") at 20; Ex. 13, Kljajic Oven Use & Care Guide ("Kljajic Oven Guide") at 12.

[5] Ex. 2, deRichemond Rebuttal at 3.

█████████████████████████████████████████████████████████████████

███████████████████████████████████. Ex. 2, deRichemond Rebuttal at 1.

As a result, Whirlpool "does not point to any 'fatal dissimilarity' among the members of the [putative] class[es] that would render the class action mechanism unfair or inefficient for decision-making." *Whirlpool*, 722 F.3d at 859 (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1197 (2013)). In fact, Whirlpool issued 16 different TSPs for its Ovens in futile attempts to remedy the common defect they experienced. *See* Ex. 5, Technical Service Pointers. Of note, ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Ex. 5, Technical Service Pointers; Ex. 20, Memo re Thermal issues-Built in Ovens (instructing "████████████████████████████████████████████████████████████████

███████"). For this reason, the differences in design do not create insurmountable individual issues but instead raise issues common to Plaintiffs' claims that Whirlpool failed to correct the Defect in violation of its express warranties and sold unmerchantable Ovens in violation of its implied warranties.

Whirlpool argues that its Ovens are not defective or that the inherent Defect simply does not manifest itself in most Ovens. But Judge Posner rejected this very argument in *Butler II* when he wrote that the argument "that *most* members of the plaintiff class *had not* experienced any mold problem . . . was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears – a course it should welcome." *Butler II*, 727 F.3d at 799. No matter how the parties characterize (or mischaracterize) the Defect at issue,

it does not change the fact that the resolution of this issue will resolve most, if not all, of Plaintiffs' and the putative class members' claims.

### 2. *Plaintiffs need only prove the Ovens do not function as intended.*

Plaintiff Kljajic alleges that Whirlpool breached its express warranties promising "'to correct defects in materials or workmanship." Ex. 3, Whirlpool Limited Warranties; Ex. 4, IKEA Warranties. To succeed on this breach of express warranty claim, she "must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain.'" *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) (quoting *Hasek v. DaimlerChrysler Corp.,* 745 N.E.2d 627, 634-35 (Ill. App. Ct. 2001). *See also* Table of Breach of Express Warranty State Law Survey ("Express Warranty Table") (Dkt. 117-1) (summarizing express warranty laws of states included in Multi-State and IKEA Multi-State Classes). Whirlpool complains that some warranties have a one-year term and others a five-year term, but Plaintiff Kljajic has already addressed this issue by proposing a Multi-State Class subject to the one-year term and an IKEA Multi-State Class subject to the five-year term.

To prove her implied warranty claim on behalf of the Illinois Class and IKEA Illinois Class, Plaintiff Kljajic must prove the following:

> (1) a sale of goods, (2) that the seller of the goods is a merchant with respect to those goods, and (3) that the goods were not of merchantable quality." A product that is not of merchantable quality is one that is unfit for the ordinary purposes for which the goods are used.

*Garner v. Boehringer Ingelheim Pharm., Inc.*, 888 F. Supp. 2d 911, 927-28 (S.D. Ill. 2012) (citations omitted). Here, Plaintiff Kljajic will attempt to prove a lack of merchantability on a class-wide basis by showing that Whirlpool's Ovens fail when the self-cleaning function is run because the overarching design results in "████████████████████████████████████." Ex. 1, deRichemond Report at 11. This is common evidence that the self-cleaning function does not

function as intended, meriting class certification of Plaintiff Kljajic's implied warranty claim. *See Leonard v. Sears, Roebuck & Co.*, 115 F. Supp. 3d 934, 939 (2015) (certifying Illinois implied warranty claims alleging 20 different models of washing machines were defective).

To prevail on her ICFA claim, Plaintiff Kljajic must offer proof of "'(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce.'" *Tylka v. Gerber Prod. Co.*, 178 F.R.D. 493, 498-99 (N.D. Ill. 1998) (quoting *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992)).

Nowhere in these claims is a requirement that Plaintiffs identify a solution to the underlying problem or even the precise underlying defect. *Alvarez v. Am. Isuzu Motors*, 749 N.E.2d 16, 22 (Ill. App. Ct. 2001); *cf. Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 347 (Ill. 2008), *opinion modified on denial of reh'g* (Dec. 18, 2008) (refusing to adopt a "feasible alternative design" element for strict liability claims). Instead,

> [a] *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed "to perform in the manner reasonably to be expected in light of [its] nature and intended function."

*Alvarez*, 749 N.E.2d at 23 (quoting *Tweedy v. Wright Ford Sales, Inc.*, 357 N.E.2d 449, 452 (Ill. 1976).

> Such a malfunction need not manifest immediately upon purchase of the product. Rather, "[e]vidence of reasonable and proper handling of a product between the time it left the possession and control of the defendant manufacturer or seller and the time of the occurrence of the injury is an indication that the defect alleged to have existed at the time of the injury did not come into being in the interim, but existed prior thereto."

*Alvarez*, 749 N.E.2d at 24 (citations omitted). As such, Plaintiffs must simply prove that that Ovens fail when used under normal conditions and that Whirlpool failed to correct the Defect (or

for the ICFA claim, that Whirlpool failed to disclose the problem).  Herein lies the relevance of Mr. deRichemond's reports and their utility for class certification.

Whirlpool has designed a product that it admits presents a "████████████ ██████████" because of its tendency to fail during the self-cleaning cycle.  Ex. 1, deRichemond Report at 12.  Plaintiffs' expert has identified the common problem with the Ovens' design that causes this failure, *i.e.* "██████████████████████████████."  Ex. 1, deRichemond Report at 11.  At the same time, common evidence shows that Whirlpool has known about this defect for over 10 years but is unable to correct it.  Ex. 5, Technical Service Pointers.  Instead, █ █████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████.  Ex. 2, deRichemond Rebuttal at 1.  This failure to correct the underlying problem, a failure of the Oven when the self-cleaning cycle is run, goes to the heart of Plaintiffs' express and implied warranty claims and is the common issue that predominates over any individual issue.  Whirlpool's knowledge of the Defect and its failure to disclose that information to consumers is the common issue that predominates over Plaintiff Kljajic's ICFA claim.

### 3. *Plaintiffs offer common evidence in support of their claims.*

Whirlpool's assertion that there is no common proof to support Plaintiffs' breach of warranty and ICFA claims is both wrong, in that Plaintiffs have come forward with such evidence, but also is a matter for trial, not class certification.  *See Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 946-47 (N.D. Ill. 2007) (no authority "require[s] the court to reach the ultimate issue in the case on a Rule 23 motion"); *Fournigault v. Independence One Mortg. Corp.*,, 234 F.R.D. 641, 644-645 (N.D. Ill. 2006) ("At this point, investigating whether or not certain prospective class members will fit the criteria goes too far in the direction of judging the merits."); *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2007 WL 898600, at *8 (N.D. Ill. Mar. 21, 2007) (recognizing

that courts "must consider only whether plaintiffs have made a threshold showing that what proof they will offer will be sufficiently generalized in nature that . . . the class action will provide a tremendous savings of time and effort") (internal citations omitted).  Whirlpool cannot dispute that Plaintiffs and the putative class members are all damaged at the point-of-sale: they all purchased a defectively designed Oven without knowledge of its latent Defect as Whirlpool materially failed to inform Plaintiffs and putative class members about the design defect.  *See Tait v. BSH Home Appliance Corp.*, 289 F.R.D. 466, 479 (C.D. Cal.2012) ("Plaintiffs need only prove that Defendant's products had a common design and the design created a propensity for the products to develop an undesirable condition; Plaintiffs need not prove that every product actually developed this undesirable condition.").

Plaintiffs' expert witnesses are not the sole source of this common evidence.  For example, proof of Whirlpool's inability to correct the Defect is found, among other evidence,



." "

" Ex. 21, E-mail from M. Mayerhoff at 2.  Similarly,

.  Ex. 5, Technical Service Pointers; Ex. 2, deRichemond Rebuttal at 2.  For example,

.  Ex. 1, deRichemond Report at 11.

.  *Id.*

.  Ex. 2, deRichemond Rebuttal at 3.  Finally, the inspections of Plaintiffs' Ovens prove that Whirlpool's suggested repairs are inadequate.



. Ex. 1, deRichemond Report at 9. Similarly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. As Plaintiffs' expert will testify, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 1, deRichemond Report at 11. In short, Whirlpool's claim that it magnanimously complied with its warranty (or went beyond its warranty obligations) falls flat because it simply replaced Plaintiffs' (and other putative class members') Ovens with identically defective Ovens and therefore did not correct the problem.

In sum, all of this evidence bolsters Plaintiff's assertion that the common, central issues are whether the Ovens are Defective and Whirlpool cannot correct the Defect in breach of its warranties. *See* Ex. 3, Whirlpool Limited Warranties (promising "to correct defects in material and workmanship"); Ex. 4, IKEA Warranties (same). Plaintiffs have, therefore, met the predominance requirement of Rule 23(b)(3). *See Pella*, 606 F.3d at 395 ("The class jury will be asked to decide only if there was an inherent design defect present in the [products] when they left the factory, [and] whether [the defendant] had a duty to disclose the defect."); *Adventist Christian Sch., v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (finding predominance of issues such as "whether Carrier's furnaces are defective by design, regardless of any individual factors such as installation, maintenance, or type of fuel used[,] . . . whether and when Carrier knew about the defect, and whether it had a duty to disclose that fact to consumers").

## B. The Warranty Claims

The express warranty claims Plaintiff Kljajic seeks to certify fall within three exceptions to Illinois's privity requirement: (1) labels, advertisements, or warranty of a manufacturer; (2) direct dealing; and (3) the third-party beneficiary exception to privity. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.* ("*Rust-Oleum*"), 155 F. Supp. 3d 772, 806-07 (N.D.

Ill. 2016) (citation omitted). Whether these claims fall within these exceptions further demonstrates that common liability issues will predominate over individualized issues.

### 1. *Privity is not required.*

The first exception arises when the plaintiff relies on written labels or advertisements of a manufacturer or is given a written warranty with the purchase. *See id.* at 807 (denying motion to dismiss based on lack of privity for implied warranty and express warranty because plaintiff had relied on written labels, advertisements, and had been given a limited warranty with his purchase).[6] Indeed, under Illinois law, a manufacturer may be liable to a buyer for breach of an express warranty for representations or promises made on the manufacturer's documents or other materials. *Mednick v. Precor, Inc.*, No 14 C 3624, 2014 WL 6474915, at *5 (N.D. Ill. Nov. 13, 2014). *See also Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 WL 1011512, at *4 (N.D. Ill. Mar. 15, 2016) (applying exception to express warranty claims at motion to dismiss stage where plaintiffs alleged that the manufacturer made statements directly on the defective product's packaging). Whirlpool does not dispute that it made representations regarding its Ovens' self-cleaning capabilities and provided a warranty, so this exception applies.

Plaintiff Kljajic can also rely on the direct dealing exception for privity because of her direct dealing with Whirlpool, its agent IKEA, and its authorized dealers. Each Oven came with a self-cleaning function and button (a representation made by Whirlpool prior to sale), a Use & Care Guide, and warranty forms, and each Oven was sold by an authorized Whirlpool dealer or

---

[6] At the point of sale, each Oven bears buttons or knobs that represent the Oven has a "Clean" or "Self-Clean" function. *See*, *e.g.*, Ex. 12, Cates Oven Guide at 6 ("Clean"); Ex. 6, Deposition of Beth Kljajic ("Kljajic Dep.") at 222:8-10, 15-16 ("they put on the knob self-clean" and withheld "That if I actually did self-clean, I might lose the oven"); Ex. 7, Deposition of Kathleen Cates ("Cates Dep.") at 271:18-25 ("The misrepresentation is that the oven cleans and is not -- when it's not capable of cleaning."); *id.* at 272:11-12 (omission is "the oven has that capability of not working, of not working on the self-cleaning cycle").

partner.  In *Rust-Oleum*, remote customers alleged that they had relied on the manufacturer's misrepresentations in brochures and advertisements prior to purchasing a deck resurfacing product and that they had direct dealings with the manufacturer's agents.  155 F. Supp. 3d at 806-07.  This Court held that such allegations were sufficient to allege that the direct relationship exception to the privity requirement applied.  *Id.* (citing *TRW, Inc. v. Dart Indus., Inc.*, No. 84 C 3049, 1986 WL 3327, at \*10 (N.D. Ill. Mar. 7, 1986) (applying Illinois law)).  *See also Elward v. Electrolux Home Prods.*, No. 15 C 9882, \_\_\_ F. Supp. 3d \_\_\_, 2016 WL 5792391, at \*4 (N.D. Ill. Oct. 4, 2016) (denying manufacturer defendant's motion to dismiss implied warranty on ground that plaintiff sufficiently pled direct relationship exception to privity based on direct dealings in the form of advertisement, warranty forms, and an expectation that the dishwasher would last longer than it did).[7]

Similar to this exception and a corollary to direct dealing, lack of explicit privity does not doom an implied warranty claim if the seller was an agent of the defendant.  *Flynn v. FCA US LLC*, No. 15-cv-0855, 2016 WL 5341749, at \*7 (S.D. Ill. Sep. 23, 2016) (citing *Rothe v. Maloney*

---

[7] Kljajic directly registered her Oven with Whirlpool.  Ex. 6, Kljajic Dep. at 117:12-14.  Afterward, Whirlpool started sending her emails directly regarding "their care program."  *Id.* at 117:12-17, 23-25.  Customers who need assistance are directed in the Use and Care Guide to contact a Whirlpool owned company.  *See* Ex. 12, Cates Oven Guide at 23; Ex. 13, Kljajic Oven Guide at 15.  Also, when problems arise with the Ovens, Whirlpool directly deals with the consumer.  *See* Ex. 10, Deposition of Catherine Damato at 58:11-15 (IKEA@whirlpool.com is an email address maintained by an escalations group maintained by Whirlpool); *id.* at 59:4-12 (testifying that when a complaint comes to IKEA regarding a Whirlpool product, an e-mail is sent to IKEA@Whirlpool.com, who were responsible to follow up and resolve the issue, to let them know the issue.); *id.* at 86:7-23 (self-cleaning complaint "could have already been at Whirlpool and then came to us."); Ex. 6, Kljajic Dep. at 84:10-14 (testifying that she "called Ikea because I didn't realize they do not deal with the customer, that you have to call Whirlpool directly" and that Ikea said "to call Whirlpool directly" when she called them.); Ex. 7, Cates Dep. at 134:18-19 ("I had several phone calls with Whirlpool. Many phone calls with Whirlpool.").

*Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988)) (plaintiff sufficiently pled an agency relationship between Chrysler and the sellers to invoke the privity exception to avoid dismissal).[8] Whirlpool cannot dispute that it is not just an agent but a partner with IKEA and its dealers when it comes to selling these Ovens.[9]

Finally, Plaintiff Kljajic falls within the third-party beneficiary exception to privity, which applies "where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412, 42 Ill. Dec. 25 (Ill. App. Ct. 1980); *Rhodes Pharmacal Co. v. Cont'l Can Co*., 219 N.E.2d 726, 732 (Ill. App. Ct. 1966). *See also Elward*, 2016 WL 5792391, at *4 (applying third party beneficiary exception to privity requirement where plaintiffs alleged the manufacturer was aware of remote customers' requirement that their dishwashers function without overheating, catching fire, and causing floods; that Electrolux delivered dishwashers in order to satisfy that requirement; and that remote customers are third-party beneficiaries of contracts between Electrolux and their dealer-agents). Whirlpool knew it was selling Ovens to individuals for in-home use and that they expected to run

---

[8] Also, Whirlpool claims on its website "All service calls and repair are performed by factory authorized Whirlpool technicians." *See* Ex. 7, Cates Dep. at 172:13-17 (Advanced Major Service slogan states "Factory service for Whirlpool, KitchenAid, Maytag, Jenn-Air, Bosch, and Frigidaire.") *See* 12/3/2007 article indicating A&E Factory Service is "a joint venture held by Whirlpool and Sears Holdings.")

[9] *See* Ex. 23, Partnership to bring reach millions worldwide, *available at* http://www.businesswire.com/news/home/20030624005350/en/Whirlpool-IKEA-Global-Agreement-Reach-Millions-Customers; Ex. 24, Authorized Dealer Agreement *available at* http://imgweb.charlestoncounty.org/CMSOBView/Service1.asmx/StreamDocAsPDF?viewertype=cms&ctagency=10002&casenumber=2013CP1006065&docseq=P1A17 (outlining the degree of control Whirlpool exercises over its dealers).

the self-cleaning function without rendering the Oven unusable.  Thus, the third-party exception to the privity requirement applies here.

## 2.    *Notice is not required.*

Whirlpool greatly exaggerates the notice requirements of the states identified by Plaintiffs in their Express Warranty Table.  As set forth therein, Plaintiffs were careful to only include states where: (1) the filing of a lawsuit suffices (Colorado, Kansas, New York, North Carolina, Vermont); (2) constructive notice or knowledge of the defect suffices (District of Columbia, Indiana, North Carolina, Pennsylvania, Wisconsin); or (3) notice is not required (Maryland, Missouri, Nebraska, New Hampshire, New Jersey, New York, Pennsylvania, Virginia, West Virginia).  In the instant case, the first two are easily proven with common evidence, and this issue does not defeat class certification.

## C.    The ICFA Claim.

As to the merits of Plaintiff's Illinois causes of action, Whirlpool misses the point by focusing on the merits of these claims, and not whether common issues predominate.  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (quoting *Amgen*, 133 S. Ct. at 1191.  "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'method' best suited to adjudication of the controversy 'fairly and efficiently.'"  *Id.* (quoting *Amgen*, 133 S. Ct. at 1191).  *See also Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 931 (7th Cir. 2016) ("Defendants' experts' reports will be important, we assume, at the merits stage, but the fact that class certification decisions must be supported by evidence does not mean that certification is possible only for a party who can demonstrate that it will win on the merits.").

### *1. Reliance cannot defeat certification of Plaintiff Kljajic's ICFA claim.*

Predominance can be shown where there is evidence of uniform omissions and misrepresentations. *See Tylka*, 178 F.R.D. at 498-99 (finding predominance in ICFA claim).[10] *See also Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 665 (N.D. Ill. 1996) (holding where there is a uniformity of or standard written representations the court can presume individual reliance); *Peterson v. H & R Block Tax Services, Inc.*, 174 F.R.D. 78, 83 (N.D. Ill. 1997) (availability of rapid refund loans); *Garner v. Healy*, 184 F.R.D. 598, 602 (N.D. Ill. 1999) (whether Turtle Wax was a wax.); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 665 (S.D. Cal. 2010) ("Finding that reliance is a common question in this case is logical. Consumers are nearly certain to rely on prominent (and prominently marketed) features of a product which they purchase."). "[I]t is well-established that individual issues of reliance do not thwart class actions." *Peterson*, 174 F.R.D. at 84.

Proof of actual reliance on the part of each Plaintiff is not required under the ICFA. *Tylka*, 178 F.R.D. at 499 (citing *L.R.J. Ryan v. Wersi Elec. GmbH and Co.*, 59 F.3d 52, 53 (7th Cir. 1995)). Instead, materiality under the ICFA is decided using an "objective standard." *Id*. (citing *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997)). Moreover, there is no requirement in the ICFA that the Oven's self-cleaning function be the only reason for Plaintiff Kljajic's purchase. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002) (question posed is whether at the time of purchase the plaintiff was deceived in "some manner"); *Tylka*, 178 F.R.D. at 500 (in assessing typicality, "[i]t does not matter...that [plaintiff and class members] bought for a variety of reasons"). Also, "[n]umerous courts have inferred or presumed

reliance in omissions cases." *Phillips v. Ford Motor Co.*, No. 99-L-1041, 2003 WL 23353492, at *6 n.8 (Ill. Cir. Ct. Sept. 15, 2003) (collecting cases).

Even if reliance were relevant, this Court could still "certify a class to determine the question 'of whether they were indeed misrepresentations * * * with the question of reliance, and damages suffered, by individual class members left for satellite proceedings.'" *Rowe v. Bankers Life & Cas. Co.*, No. 09-cv-491, 2012 WL 1068754, at *12 (N.D. Ill. Mar. 29, 2012) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 662 (7th Cir. 2004)) (alteration in original). *See also Peterson*, 174 F.R.D. at 84 (certifying class while rejecting assertion that ICFA requires actual reliance by plaintiff). Therefore, whether a plaintiff believes a misrepresentation is material cannot defeat class certification. *Tylka*, 178 F.R.D. at 499. *See also* Newberg on Class Actions 3d § 4.26 ("Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.").

### 2. *Materiality and causation will be proven on a class-wide basis.*

Plaintiff Kljajic and the putative class members purchased Ovens that bore the label "Self-cleaning" or "Cleaning." *See Rust-Oleum*, 155 F. Supp. 3d at 809 (allegations that every can of Restore was substantially similar and contained the same affirmations of fact regarding Restore's intended use, superiority, and durability, that these affirmations were consistent with Rust-Oleum's advertising campaign, and general reliance on the statements sufficient to withstand motion to dismiss). In fact, they could not have even started the self-cleaning process if they did not locate the word "self clean" or "clean," so *ipso facto*, they read it if they pushed it.

Finally, common evidence shows that Whirlpool knew of the Defect and therefore failed to disclose it to Plaintiff Kljajic or the putative class members at the point of sale. *See* Ex. 5,

Technical Service Pointers at 13 (Dec. 2008) ("Oven does not operate after a Self-Clean cycle" and "Oven completely stops during the Self-Clean cycle").  Substantially similar language is found in TSPs issued in January 2000, May 2000, June 2000, October 2000, April 2002, December 2005, March 2007, January 2011, March 2011, April 2013, November 2013, and May of 2014.  *See also* Ex. 19, Service Update UD-20 at 17 ("

"); Ex. 14, E-mail from E. Dee at 1 ("

"); Ex. 15, E-mail from J. Casella at 1 ("

"); Ex. 16, E-mail from V. Romito at 1 ("

"); Ex. 17, E-mail from J. Casella at 1 ("

"); Ex. 18, E-mail from M. Page ("

").
As a result, materiality can be proven on a class-wide basis.

Whirlpool's authority is irrelevant to the facts of the *instant* litigation.  *Compare Barbara's Sales, Inc. v. Intel Corp*., 879 N.E.2d 910, 926 (Ill. 2007) (a deceptive advertising case that involved puffing, noting a "general statement that one's products are best is not actionable"); *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (dismissing because plaintiff filed a consumer-fraud action against a pharmaceutical company, based on the company's advertising, but plaintiff failed to allege that her doctor was misled by any of the advertising); *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (in an antitrust case, plaintiffs paid higher prices because of manipulation of gas prices but no evidence that plaintiff and class had any idea of price hike at the time of purchase and also bought gasoline because of other factors).

Accordingly, because of this uniform conduct and evidence as to material omission and deceptive representation, Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) for the Illinois and IKEA Illinois Classes.

### 3. *Whirlpool's authority is distinguishable.*

In *Thorogood v. Sears, Roebuck & Co.*, a plaintiff brought a consumer fraud suit based on Sears' representation that its driers included a stainless steel drum because the drum was not made entirely of stainless steel, but there was no evidence that other class members understood the label to mean that the drum was 100 percent stainless steel and rust resistant. 547 F.3d 742, 747-48 (7th Cir. 2008). By comparison, there is no serious argument that the label "self-cleaning" has differing interpretations with respect to the Ovens, and the failure to disclose that the Oven will fail when that function is used is undoubtedly material. *See Pella*, 606 F.3d at 393 (recognizing that Seventh Circuit has "not opine[d] that class certification [i]s never appropriate in consumer fraud cases, only that it was inappropriate in the circumstances before it"). As such, Plaintiff Kljajic's ICFA claim is appropriate for certification.

### D. The Magnuson-Moss Warranty Act Claims

Plaintiffs will also be able to use common evidence to prove each of their Magnuson Moss Warranty Act ("MMWA") claims. It is well-settled that the MMWA "'allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.'" *Keith v. Ferring Pharms., Inc.*, No. 15 C 10381, 2016 WL 5391224, at *8 (N.D. Ill. Sep. 27, 2016) (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)). Thus, the same evidence that will be used to prove Plaintiff Kljajic's warranty claims will be used to prove her MMWA claims.

### E.    Unjust Enrichment

The individualized inquiries identified by the district court in *Clay v. American Tobacco Co.* do not apply to the facts of this case. The *Clay* court did not find typicality or predominance for a 50-state class because variances existed in the state's unjust enrichment laws. 188 F.R.D. 483, 500-01 (S.D. Ill. 1999). But Plaintiff Cates is only bringing an unjust enrichment claim under the common law of South Carolina on behalf of the South Carolina Class. Inquiries into whether Whirlpool unjustly retained a benefit are not required because relief is not based on whether the Ovens have tripped. It is based on whether Plaintiff Cates and the putative class members purchased self-cleaning Ovens with an inherent Defect that makes them prone to failure during self-cleaning. Also, Whirlpool's Ovens had a uniform defect, it had actual knowledge of this Defect, it did not tell Plaintiff Cates and the putative class members about this defect, and it profited from Plaintiff Cates and the putative class members as a result of that behavior. These are all common questions that will be proven with common evidence and merit certification.

### F.    Damages

"It has long been recognized that the need for individual damages determinations at this later stage of the litigation does not itself justify the denial of certification." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) (collecting cases). *See also Pella*, 606 F.3d at 394 (recognizing "that the inability prove damages on a class-wide basis is not fatal to class certification" and collecting cases); *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) (same); *Panache Broadcasting of Penn., Inc. v. Richardson Elecs., Ltd.*, No. 90 C 6400, 1999 WL 342392, at *7 (N.D. Ill. May 14, 1999) (same). "*Comcast* did not alter th[is] black-letter rule." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1239 (11th Cir. 2016). There, the Supreme Court found that "the [damages] model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability. . . [wa]s premised." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426,

1435 (2013). "[T]he Supreme Court did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model." *Brown*, 817 F.3d at 1239.

Judge Posner has made clear that "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie*, 376 F.2d at 661. *See also Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues . . . the need for individual damages determinations does not, in and of itself, require denial of [plaintiff's] motion for class certification."). Here, individual damages inquiries are not necessary, and if such inquiries were necessary, they can be managed by such "imaginative solutions."

Additionally, since all warranties of class members fail of their essential purpose,[11] the damages limitation provision should not be enforced. *See*, *e.g.*, *Rust-Oleum*, 155 F. Supp. 3d at 794 (denying motion to dismiss regarding enforcement of a damage limitation warranty because plaintiff's limited lifetime warranty failed of its essential purpose). Plaintiff anticipates Whirlpool will dispute this fact, thereby creating another common question that will predominate.

---

[11] "From the buyer's perspective, the essential purpose of the repair or replace remedy is to 'provide goods that conform to the contract for sale and do so at an appropriate time.'" *Sunny Indus. v. Rockwell Int'l Corp.*, 175 F.3d 1021 (Table), 1999 WL 220109, at *10 (7th Cir. 1999) (quoting *Chatlos Sys., Inc. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1085 (3d Cir. 1980)). A warranty fails of its essential purpose if, "after repeated efforts by a seller to place a product into warranted condition, and the seller cannot or will not do so, the remedy of repair or replacement may be deemed to have failed of its essential purpose." *AES Tech. Sys., Inc. v. Coherent Radiation*, 583 F.2d 933, 939 (7th Cir. 1978). (internal citations omitted). Whether Whirlpool's warranties fail of their essential purpose can easily be proven on a class-wide basis because the evidence shows that none of the repairs they attempted over the course of a decade corrected the problem. *See supra* Section I.A. *See also* Ex. 22, E-mail from C. Meyer at 3 ("██████████████████████████████████████████████████████████████████████████████████████████████████████").

At bottom, while there is no requirement that all class members have the same cause of action or even identical injury, it is plain that these class members do and that their injury can be quantified on a class-wide basis.

## G.    Superiority

There is a well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns. *Mullins*, 795 F.3d at 663 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (noting that failure to certify a class action under Rule 23(b)(3) solely on manageability grounds is generally disfavored), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006).  In any event, the class structure proposed by Plaintiffs aligns with that of several other consumer product cases recently certified in the Seventh Circuit, and there is no reason this Court should have manageability concerns that were dismissed in *Pella*.  *See* 606 F.3d at 395-96 (approving certification and management of six state subclasses with nearly identical consumer protection acts).

In addition, Plaintiffs have already detailed that the material terms and conditions of Whirlpool and IKEA's warranties are identical.  *See* Class Cert. Memo. at 7-8.  The cost of the litigation far outweighs the cost of an Oven. Additionally, Whirlpool's material omissions, Whirlpool's material misrepresentations, and the inherent design defect in the Ovens are the same. Each of these common issues is something that would have to be relitigated over and over again, instead of being resolved "in one stroke" that would efficiently and materially advance the litigation because subsequent courts would be spared from having to adjudicate the common issues anew in each case.  *Butler II*, 727 F.3d at 801.

## II.     PLAINTIFFS SATISFY RULE 23(a)

### A.     Whirlpool's Standing Argument is Premature.

Defendant's argument conflates Article III standing with Rule 23's typicality and adequacy requirements, something the Seventh Circuit has cautioned against:

> [T]he inherent problem with the idea of "standing to bring a class action" is that it "conflat[es] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative[.]"  Though we recognize that prior decisions of this and other courts have sometimes used this kind of terminology, nothing has turned on it.  In our view, it is best to confine the term "standing" to the Article III inquiry and thus to keep it separate from the plaintiff''s . . . ability to satisfy the Rule 23 criteria.  We accordingly conclude that Arreola did have standing to pursue his lawsuit.  Whether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions.

*Arreola*, 546 F.3d at 795 (citations omitted).  There is no requirement, in Rule 23 or otherwise, that a class representative be a member of each subclass he seeks to represent, and any such suggestion would undermine the efficiency goals of Rule 23.  *Id.*

In any event, Article III standing requirements, in the Rule 23 context, are addressed to the class as a whole, not with reference to individually named plaintiffs, and Whirlpool's argument is premature.  Class certification is "logically antecedent" to standing, and "class certification should be decided before reaching the question of Article III standing."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 612 (1997); *Ortiz v. Fibreboard*, 527 U.S. 815, 831 (1999).  *See also Cohan v. Medline Indus.*, No. 14 CV 1835, 2014 WL 4244314, at *2, n.1 (N.D. Ill. Aug. 27, 2014) ("Standing in the class action context can and should be evaluated with respect to the individual named-plaintiff and later—in the event a class is certified—with respect to the class as a whole."); *In re Aftermarket Filters Antitrust Litig.*, MDL Docket No. 1957, 2009 WL 3754041, at *5 (N.D. Ill. Nov. 5, 2009) ("[T]he name[d] plaintiffs' capacity to represent other individuals from other states depends upon

obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states").

The Seventh Circuit emphasized the same distinction between Article III standing and class standing as early as *Payton v. County of Kane*, in which it identified the inherent problem with "'standing' to bring a class action," which is that it "conflat[es] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." 308 F.3d 673, 677 (7th Cir. 2002). In *Payton*, carefully avoiding the term "standing," the court held that assuming they were otherwise adequate under Rule 23, two named plaintiffs who were imprisoned and alleged to have paid an unconstitutional bond fee were able to represent a class of plaintiffs that had paid bond fees to prisons operated by counties other than their own. *Id*. at 678-80.

Standing exists if a litigant has been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision—nothing more is required. *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). Furthermore, it is settled that Plaintiffs, who have individual standing, will have standing on behalf of the putative class members. The plaintiff must be part of the class. That is, "he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). As the Supreme Court explained in *Gratz v. Bollinger*, a named plaintiff has standing to represent absent class members who may have different claims as long as the alleged misconduct does "not implicate a significantly different set of concerns" among the different class members. 539 U.S. 244, 265 (2003).

Here, Plaintiff Kljajic was subject to a one-year warranty and a five-year warranty. The class members from the 16 states that Plaintiff Kljajic seeks to represent all have the materially identical one-year warranty and some also have the materially identical five-year warranty (where the Oven was bought at IKEA). The injury common to the multistate warranty classes for Plaintiff Kljajic and the putative class members is the sale of Ovens built on the same chassis with the same inherent Defect. Since Plaintiff Kljajic has the same interests as the class members in these 16 states, to vindicate her rights for the same injury under a one-year warranty or a five year warranty, they have the requisite standing to represent a multistate class.

**B.     Plaintiffs Are Adequate Class Representatives**

Plaintiff Kljajic seeks to represent Rule 23(b)(3) Multi-State Class and the IKEA Multi-State Class for class members in 16 states. The Express Warranty Table shows that, because the elements of the breach of express warranty and MMWA claims are materially the same in these states, common issues of law and fact exist with respect to these classes. *See* Express Warranty Table.

Whirlpool attempts to poke holes in the uniformity of the law for express warranty and MMWA set out in Plaintiffs' Express Warranty Table using 42 single-spaced pages beyond their 50-page limit. For example, it contends that the states of Indiana, Kansas, and Maryland, like Illinois, require privity (meaning Whirlpool agrees that 13 states do not require privity). Next, as to Kansas, Whirlpool cites the express warranty case of *Scheuler v. Aamco Transmissions, Inc.*, 571 P.2d 48, 51 (Kan. App. Ct. 1977), which holds that lack of privity between a buyer and a manufacturer who advertises is no hurdle, and Plaintiffs agree. Furthermore, Whirlpool makes a semantic distinction because, if the state allows an exception to privity for warranty claims as explained *supra* for the state of Illinois, the state does not require privity between a manufacturer and buyer in a buyer's warranty claim against that manufacturer. This is the case with Indiana. *In*

*Prairie Production, Inc. v. Agchem Division-Pennwalt Corp.*, 514 N.E.2d 1299, 1302-3 (Ind. App. Ct. 1987). Finally, Maryland allows a buyer to sue a remote manufacturer even if not in privity if the manufacturer does the warranty work for that buyer. *Addressograph-Multigraph Corp. v. Zink*, 329 A.2d 28 (Md. App. Ct. 1974).

Ultimately, Plaintiffs stand by their table summarizing the various states' express warranty laws and showing their uniformity for purposes of establishing Rule 23(b)(3) predominance. In 42 single-spaced pages, Whirlpool points out variances, but none are sufficient to defeat class certification. Moreover, it is not uncommon for courts in this Circuit to certify multi-state classes without having a class representative from each state. *See, e.g.*, *Pella*, 606 F.3d 391 (affirming class certification of six-state (b)(3) class and national (b)(2) class); *Hurd Millwork Co.*, 249 F.R.D. 316, 321-322 (E.D. Wis. 2008) (certifying a multistate warranty class). However, if the Court prefers a class representative for each state, Plaintiffs ask for leave to present additional representatives. It can also certify express warranty subclasses by state.

### C. Plaintiffs are Typical Class Members

As Plaintiffs explained in their opening brief, the typicality requirement is satisfied where Plaintiffs' claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002); Class Cert. Memo. at 16. Typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). As indicated *supra*, the claims of Plaintiffs and class members arise out of a uniform Defect. *See supra* Section I.A. Whirlpool has not disputed that the self-cleaning system is different for any Ovens on the Vision II. And even if Defendant so claimed, the Seventh Circuit has already dispensed of a similar argument in *Butler*. *See Leonard*, 115 F. Supp. 3d at 945

(repeating finding that typicality exists, despite differing designs, because "claims are all based upon the same court of Sears conduct: the sale of a washer *type* that is alleged to be *unduly prone to the problem*"); *Galoski v. Stanley Black & Decker*, No. 11-cv-269, 2014 WL 4064016, at *4 (N.D. Ohio Aug. 14, 2014) ("[A] finding of typicality is not barred by the inclusion of products, never purchased by the class representative, as long as the products were similar enough and the alleged defect or misrepresentation about the products' efficacy is uniform across the Defendant's product line") (citations omitted). Here too, Plaintiffs' claims are premised on the sale of a *type* of Oven that is *prone* to a Defect, and they satisfy Rule 23(a)'s typicality requirement.

## III.    PLAINTIFFS SATISFY RULE 23(b)(2)

Whirlpool's assertion that the request for monetary relief is the primary purpose of the litigation such that a Rule 23(b)(2) class cannot be certified is unsupported. A Rule 23(b)(2) class and a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy. *Pella*, 606 F.3d at 392-93. *See also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011) (acknowledging same). Moreover, Plaintiffs seek to certify Rule 23(b)(2) classes only in the alternative. Class Cert. Memo. at 9-10, 34-35.

### A.  The Relief Sought is Not Duplicative

This Court is no stranger to certifying class actions under multiple subsections within Rule 23(b). *See Mejdreck v. The Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002) (finding that plaintiffs have satisfied Rule 23(b)(3) and, alternatively, subsections 23(b)(1) and 23(b)(2)); *Tylka*, 178 F.R.D. at 501 (recognizing that classes can be certified under both 23(b)(2) and 23(b)(3)). *See also George v. Kraft Foods Global*, 251 F.R.D. 338, 352-353 (N.D. Ill. 2008) (certifying 23(b)(1) and (2) class alleging ERISA violations); *Westefer v. Snyder*, Civil Nos. 00-162, 00-708, 2006 WL 2639972 (S.D. Ill. Sept. 12, 2006) (same).

First, Plaintiffs seek certification of a Rule 23(b)(2) class only in the alternative. Second, one of Plaintiffs' goals in bringing this lawsuit is to obtain injunctive relief and force Whirlpool to remedy the Defect and fully inform putative class members and the public regarding problems with the Ovens. *See*, *e.g.*, *Tylka*, 178 F.R.D. at 501 (Rule 23(b)(2) class to proceed when plaintiffs sought to remedy false and misleading advertising campaign). Third, the ICFA specifically allows for injunctive relief even when seeking monetary damages; in fact, a plaintiff cannot obtain injunctive relief unless they are also seeking money damages. *See Schilke v. Wachovia Mort., FSB*, 820 F. Supp. 2d 825, 838 n.5 (N.D. Ill. 2011) ("It is well established under Illinois law that private rights of action for injunctive relief under the ICFA require damages.").

Plaintiffs' monetary claims can proceed separately under Rule 23(b)(3) classes, thereby eliminating any concerns regarding whether the monetary relief is "incidental." *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898-99 (7th Cir. 1999) (discussing certification of a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages). Unlike Rule 23(b)(3), a Rule 23(b)(2) class action does not require giving class members notice of the suit and a chance to opt out and bring their own, individual suits. This distinction results from the fact that declaratory or injunctive relief will usually have the same effect on all the members of the class. *Lemon v. Int'l Union of Operating Engrs., Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000); *Jefferson*, 195 F.3d at 897; *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1157 (1lth Cir. 1983).

Numerous courts have found that Plaintiffs are allowed to seek injunctive relief to correct misrepresentations even though they can no longer be fooled by the misrepresentation. *See*, *e.g.*, *Tylka*, 178 F.R.D. at 501; *Conrad v. Nutramax Labs., Inc.*, No. 13 C 3780, 2013 WL 5288152, at *3 (N.D. Ill. 2013); *Henderson v. Gruma Corp.*, No. 10-cv-4173, 2011 WL 1362188, at *8 (C.D.

Cal. April 11, 2011); *Cabral v. Supple, LLC*, No. 12-cv-0085, 2012 WL 4343867, at *2 (C.D. Cal. Sept. 19, 2012). Whirlpool seeks to maintain the misleading representation on its label in direct contradiction to the ICFA - a point not lost on the court in *Henderson* in rejecting the same argument advanced by that defendant. Accordingly, the Court should, in the alternative, certify the Injunctive Multi-State and Injunctive IKEA Classes under Rule 23(b)(2) as well.

### B. Plaintiffs Have Standing

Whirlpool has not presented evidence that it has notified Plaintiffs and the putative class members of the Ovens' Defect, and permitting Plaintiffs' claims for injunctive relief does not run afoul of any standing rules. Under the *Erie* doctrine, this Court, sitting in diversity, is required to apply Illinois law as if it were an Illinois court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). As injunctive relief is expressly permitted by statute, Illinois courts applying Illinois law allow plaintiffs with damages claims under the ICFA to seek injunctive relief. *See Tylka*, 178 F.R.D. at 501; *see also Conrad*, 2013 WL 5288152, at *3; *Henderson*, 2011 WL 1362188, at *8; *Cabral*, 2012 WL 4343867, at *2. Accepting Whirlpool's interpretation, federal courts would not be able to enjoin false advertising under consumer fraud laws "because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." *Henderson*, 2011 WL 1362188, at *7. Such a construction would write the injunctive relief provisions out of the ICFA. Moreover, the ICFA permits Plaintiffs to plead and prove individual damages and gives the Court discretion, regardless if Plaintiffs are aware of a misleading representation or omission, to enter an injunction. *See* 815 Ill. Comp. Stat. Ann. 505/7. This, of course, makes sense, since the purpose of the ICFA is to eradicate consumer fraud. *See Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch.*, 976 N.E.2d 415, 425 (Ill. App. Ct. 2012), *appeal denied*, 981 N.E.2d 1003

(2012) ("The [ICFA] is to be interpreted liberally and is meant to 'eradicate[e] all forms of deceptive and unfair business practices.'").

### C.   Whirlpool's Authority Is Distinguishable

In *Parko v. Shell Oil Co.*, the Seventh Circuit held that the district court abused its discretion in certifying a class because of a disconnect between the class's damages model and its liability theory. 739 F.3d 1083 (7th Cir. 2014). The class alleged nuisance and related torts on the basis of alleged groundwater contamination occurring over a 90-year period. *Id.* at 1084. The court, in finding a lack of predominance, did note that the plaintiffs had presented nothing more than "unsubstantiated allegation." *Id.* at 1086. But the unsubstantiated allegation was not whether the groundwater was actually contaminated, but the plaintiffs' claim that they "intend[ed] to rely on common evidence and a single methodology to prove both injury and damages" that was sound and plausible. *Id.* Thus, the Seventh Circuit reversed class certification because the district court had not "investigated the realism of the plaintiffs' injury and damage model in light of the defendants' counterarguments." *Id.* Specifically, the plaintiffs proposed to measure damages "by the effect of the groundwater contamination on the value of the class members' properties," but the defendants pointed out that the plaintiffs did not own the groundwater underneath their property and that their water supply did not come from that groundwater. *Id.* at 1084, 1086. Thus, it was not clear how contamination in the groundwater could affect property values. *Id.* at 1086. It was this disconnect between the plaintiffs' damages model and their liability theory that led the Seventh Circuit to deny class certification. No such disconnect exists here. Plaintiffs' damages follow directly from Whirlpool's deceptive conduct related to the Ovens' Defect.

## IV.   PLAINTIFFS SATISFY RULE 23(c)(4)

"[A] class may be certified as to particular issues concerning liability even if the claim as a whole does not meet the predominance requirement of Rule 23(b)(3)." *Jacks v. DirectSat USA*,

LLC, No. 10-cv-1707, 2015 WL 1087897, at *6 (N.D. Ill. Mar. 10, 2015). Because Plaintiffs have identified several common and easily certifiable issues, notably the existence of a defect and Whirlpool's knowledge thereof, such certification is appropriate here. *Butler II*, 727 F.3d at 800; *Arreola*, 546 F.3d at 800-01.

## V.    WHIRLPOOL'S BRIEF EXCEEDS THE ALLOTED PAGE LIMITS

Whirlpool has also attempted to subvert this Court's strict page-length requirements, despite being afforded 35 additional pages for briefing, by attaching 3 appendices containing an additional 42 pages of legal argument, charts, and other slides. Appendix I presents 29 pages of additional facts regarding the design of Whirlpool's Ovens, and Appendices II and III go far beyond merely summarizing the laws of various states warranty laws and statutes of limitations, instead making substantive arguments regarding the elements of those laws and their application to Plaintiffs' claims over the course of 42 single-spaced pages. Plaintiffs therefore request that the Appendices be stricken for failure to comply with the Court's order of October 11, 2016 granting it 50 pages to respond to Plaintiffs' class certification motion (Dkt. 124).

## CONCLUSION

Plaintiffs have demonstrated that they satisfy all of the elements of Rule 23(a), 23(b)(3), and 23(b)(2). The class action mechanism is not only the best and most efficient way to adjudicate the putative class members' claims, it is also the only viable method of doing so. For all of the foregoing reasons and the reasons set forth in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court grant their class certification motion in its entirety.

Dated: December 16, 2016

Respectfully submitted,

*/s/ Michael J. Flannery*
Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314-226-1015
Email:  mflannery@cuneolaw.com

Katrina Carroll
LITE DEPALMA GREENBERG
211 W. Wacker Drive, Suite 500
Chicago, IL  60606
Telephone: 312-750-1265
Facsimile: 312-212-5919
Email: kcarroll@litedepalma.com

Charles J. LaDuca
Katherine Van Dyck
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., Suite 200
Washington, DC 20016
Telephone:  202-789-3960
Email: charles@cuneolaw.com
Email: kvandyck@cuneolaw.com

Corey D. Sullivan
SULLIVAN LAW LLC
1814 E Eagle Bay Drive
Bloomington, Indiana 47401
Telephone: 314-971-9353
Email: sullivcd@gmail.com

Francis Joseph Flynn , Jr.
LAW OFFICE OF FRANCIS J. FLYNN, JR.
6220 W. 3rd Street, #415
Los Angeles, CA 90036-3173
Telephone:  855-805-9005
Email: francisflynn@gmail.com

Jasper D. Ward IV
Alex C. Davis
(Seeking Pro Hac Vice Admission)
JONES WARD PLC
312 S. Fourth Street 6th Floor
Louisville, KY 40202

Telephone: 502-882-6000
Email: jasper@jonesward.com
Email: alex@jonesward.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2016, I caused the foregoing to be served through the Court's ECF system, to be served on all counsel of record who are participants in the Court's CM/ECF system.

*/s/ Michael J. Flannery*

Michael J. Flannery